**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIAJIA LUO, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>SOGOU INC., SOHU.COM INC., TENCENT HOLDINGS LIMITED, XIAOCHUAN WANG, CHARLES (CHAOYANG) ZHANG, YUXIN REN, JOANNA (YANFENG) LU, BIN GAO, JOSEPH CHEN, JANICE LEE, JAMES (XIUFENG) DENG, CHI PING MARTIN LAU, DONALD J. PUGLISI, J. P. MORGAN SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN SACHS (ASIA) L.L.C., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LTD.,<br><br>        Defendants. | CASE No.: 1:19-cv-00230-JPO |

**DEFENDANT SOGOU INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 3

    A.   Sogou's Business ..................................................................................................... 3

    B.   Sogou's IPO & Disclosures .................................................................................... 4

    C.   Smart Hardware ...................................................................................................... 7

ARGUMENT ........................................................................................................................... 9

I.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 11 ....................... 10

    A.   Plaintiffs Fail to State a Section 11 Claim as to Sogou's Disclosures Regarding its
        Compliance Procedures ........................................................................................ 12

        1. Plaintiffs fail to allege facts showing that Sogou's Internet content procedures were
           inadequate at the time of the IPO ................................................................... 12

        2. Sogou's extensive disclosures concerning its Internet content procedures render
           Plaintiffs' Section 11 claim invalid as a matter of law .................................. 15

    B.   Plaintiffs Fail to Allege Facts Showing that Sogou Omitted Material Information about
        its Smart Hardware .............................................................................................. 17

        1. There are no facts showing Sogou made the phase-out decision prior to the IPO ....... 17

        2. Sogou could not have disclosed the impact of its phase-out decision before that
           decision was made ......................................................................................... 19

CONCLUSION ........................................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 10

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 9

*Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC*,
No. 08 CIV. 7062 PAC, 2010 WL 4642554 (S.D.N.Y. Nov. 17, 2010) ................................ 14

*Denny v. Barber*,
576 F.2d 465  (2d Cir. 1978) ................................................................................. 11, 21

*Elite Aviation LLC v. Credit Suisse AG*,
588 F. App'x 37 (2d Cir. 2014) ................................................................................ 16

*Halperin v. eBanker USA.com, Inc.*,
295 F.3d 352 (2d Cir. 2002) .................................................................................... 16

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014) ....................... 16

*In re CIT Grp., Inc. Sec. Litig.*,
349 F. Supp. 2d 685 (S.D.N.Y. 2004) ...................................................................... 19

*In re IAC/InterActiveCorp Sec. Litig.*,
695 F. Supp. 2d 109 (S.D.N.Y. 2010) ................................................................. 10, 18

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) ................................................................................. 3, 10

*In re ProShares Tr. Sec. Litig.*,
889 F. Supp. 2d 644 (S.D.N.Y. 2012), *aff'd*, 728 F.3d 96 (2d Cir. 2013) ....................... 15, 16

*In re TVIX Sec. Litig.*,
25 F. Supp. 3d 444 (S.D.N.Y. 2014) ................................................................... 16, 21

*In re Ultrafem Inc. Sec. Litig.*,
91 F. Supp. 2d 678 (S.D.N.Y. 2000) ........................................................................ 10

*In re Wachovia Equity Sec. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011) ...................................................................... 17

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016) ...................................................................................... 11

*Lin v. Interactive Brokers Grp., Inc.*,
    574 F. Supp. 2d 408 (S.D.N.Y. 2008)................................................................... 12

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
    761 F.3d 245 (2d Cir. 2014)................................................................................ 14

*Panther Partners, Inc. v. Ikanos Comm., Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009).............. passim

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)................................................................... 10, 20, 21

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
    75 F.3d 801 (2d Cir. 1996)............................................................................... 18

*Scott v. Gen. Motors Co.*,
    46 F. Supp. 3d 387 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 52 (2d Cir. 2015)......... 9, 11, 18, 19

*Singh v. Schikan*,
    106 F. Supp. 3d 439 (S.D.N.Y. 2015).................................................... 10, 12, 13, 19

*Sodhi v. Gentium S.P.A.*,
    No. 14 Civ. 287 (JPO), 2015 WL 273724 (S.D.N.Y. Jan. 22, 2015) ..................................... 22

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15-CV-8954 (KMW), 2016 WL 7373799 (S.D.N.Y. Dec. 19, 2016) ............................. 21


**Rules**

15 U.S.C. § 77k............................................................................................... 1

15 U.S.C. § 77k(a) ...................................................................................... 11, 12

15 U.S.C. § 77o............................................................................................. 21

17 C.F.R. § 229.303(a)(3)(ii) ............................................................................. 11

17 C.F.R. § 239.31 ........................................................................................ 11

Fed R. Civ. P. 9(b) ....................................................................................... 10

Fed. R. Civ. P. 12(b)(6)................................................................................... 1

## PRELIMINARY STATEMENT

The Court should dismiss the Third Amended Complaint ("Complaint" or "Compl.")

under Fed. R. Civ. P. 12(b)(6) because Plaintiffs[1] have failed to state a claim under Section 11 of

the Securities Act of 1933, 15 U.S.C. § 77k.

Plaintiffs allege that Sogou Inc. ("Sogou" or the "Company") omitted information related

to two aspects of its business from the November 6, 2017 Registration Statement ("Registration

Statement") filed in connection with the Company's Initial Public Offering ("IPO"): (1)

Plaintiffs claim Sogou failed to disclose that the procedures it used to comply with Chinese

censorship laws were purportedly inadequate; and (2) Plaintiffs claim Sogou failed to disclose

that it had decided to phase out non-AI enabled smart watch models in favor of smart hardware

products with greater artificial intelligence ("AI") capabilities and the adverse impact of that

decision.  Neither of these alleged omissions is actionable as a matter of law.

Plaintiffs' Section 11 claim as to Sogou's alleged inadequate compliance procedures is

deficient for two reasons.  First, Plaintiffs fail to allege any facts showing how or why Sogou's

compliance procedures were inadequate **at the time of the IPO in November 2017**.  Instead,

Plaintiffs rely solely on Sogou's decision **over seven months later** to modify its content

monitoring practices in response to a one-time alleged violation of the Law on the Protection for

Heroes and Martyrs (the "Heroes and Martyrs Act"), which was not enacted until **five months**

**after the IPO.**  The fact that Sogou changed its procedures to address compliance with a later-

enacted law in response to a post-IPO violation plainly does not demonstrate the inadequacy of

the procedures at the time of the IPO.  *See infra*, Section I.A.1.

---

[1] The Combined Investor Group, consisting of Lizhen Zhang, Juean Xu, Yuehua Ding, Maggie Xu, Mark S. Frater, and Ketan Patel, was appointed Lead Plaintiff in this action on April 2, 2019.  *See* Order Appointing Lead Plaintiff and Approving Selection of Co-Lead Counsel, Docket No. 20, 1:19-cv-00230-JPO (Apr. 2, 2019).

<u>Second</u>, the Registration Statement contains extensive warnings that Sogou could have difficulty complying with Chinese censorship laws like the subsequently adopted Heroes and Martyrs Act and might suffer penalties as a result.  This clearly disclosed risk is exactly what occurred seven months after the IPO.  The law is clear that where a registration statement warns of the precise risk that later materializes, a Section 11 claim fails.  *See infra*, Section I.A.2.

Plaintiffs' Section 11 claim as to Sogou's smart hardware likewise is deficient.  Plaintiffs allege no facts showing that **at the time of the IPO** Sogou had plans to phase out older smart watch models.  Rather, the only fact alleged in the Complaint concerning the timing of the Company's decision is that in mid-2018 Sogou announced it had then decided to phase out older model watches that were not AI-enabled due to market acceptance of new AI products the Company launched in the first and second quarters of 2018—**again well after the IPO**.  There is nothing in the Complaint to support the inference that Sogou had made this decision at the time of the IPO or, consequently, could have disclosed the future financial impact of that decision in the Registration Statement.  *See infra*, Sections I.B.1 and B.2.

Given the absence of any facts contemporaneous with the IPO to support Plaintiffs' Section 11 claims against Sogou, the Complaint must be dismissed.

## FACTUAL BACKGROUND[2]

### A.    Sogou's Business

Sogou provides Internet search and search-related services in the People's Republic of China ("PRC" or "China"). *See* Declaration of Joshua M. Looney filed in Support of Sogou's Motion to Dismiss ("Looney Decl."), ¶ 3, Ex. A (Sogou Inc., Reg. Statement (Form F-1/A) with Preliminary Prospectus attached (Nov. 6, 2017) at 7–8).[3] Sogou has unique Chinese-language input software, cross-language Internet search services, and AI capabilities, which it believes distinguish it from other Internet search engines in China. *See id.* The vast majority of Sogou's revenue comes from search-related advertising. *See id.* at 8 (search-related advertising contributed 87.9% ($554.3 million) of Sogou's revenue in the nine months prior to the IPO and 90.4% in 2016 ($597 million)). Sogou's other businesses, which comprise the rest of its revenue, consist of Internet value-added services (primarily the operation of Web games and mobile games) and other products and services, including smart hardware products. *See id.* at 19, 95 ("Other revenues" comprised $63.2 million in 2016 and $76.2 million for the nine months ended September 30, 2017).

The Teemo Watch is one of the smart hardware products that Sogou sells. *See id.* at 123–24. Sogou also began selling the Sogou Travel Translator and the Sogou Smart Recording

---

[2] The facts in this section are taken from the Complaint and the documents cited therein, including the Registration Statement and Preliminary Prospectus, which are attached to Looney ex. as Exhibit A. *See* Looney Decl. at ¶ 3. These documents are integral to the Complaint. They are a proper subject for judicial notice and may be considered by the Court in determining the merits of Sogou's Motion to Dismiss. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 354 n.5 (2d Cir. 2010) ("[Courts] may take judicial notice of the full contents of the SEC's filings relat[ed] to this enforcement action because plaintiffs rely upon portions of them in their pleadings and, in any event, these proceedings are a matter of public record.").

[3] All references to "Ex." refer to exhibits attached to the Declaration of Joshua M. Looney filed in Support of Sogou's Motion to Dismiss. The Registration Statement and Preliminary Prospectus are attached as one exhibit, Exhibit A. All citations to Exhibit A will cite to the pagination in the lower right-hand corner of the page, rather than the separate pagination of the Registration Statement or the Preliminary Prospectus.

Translator after the IPO in 2018.  *See* Ex. B (Sogou Announcement of Second Quarter 2018 Results (July 30, 2018)) at 3.

### B.    Sogou's IPO & Disclosures

Sogou conducted an IPO on November 9, 2017 pursuant to the Registration Statement and a prospectus filed with the Securities and Exchange Commission ("SEC").[4]  Compl. ¶ 6–7. Sogou disclosed thirty-six pages of risk factors in the Registration Statement.  *See* Ex. A at 21– 57.  One major risk it disclosed was the possibility that Chinese authorities would shut down Sogou's search engine for violating Internet content regulations or otherwise penalize Sogou: "If content accessed through our search services includes information that PRC governmental authorities find illegal or inappropriate, we may be required to curtail or even shut down our search services, and we may be subject to other penalties," which include "monetary damages," and "ceasing certain aspects of our business, which could have an adverse effect on our business and results of operations."  *Id.* at 29.

The Company was further explicit that the PRC's Internet content and advertising regulations—existing at the time of the IPO or in the future—could directly impact its business: "If we are found to be in violation of current or future PRC laws and regulations regarding Internet-related services and telecom-related activities, we could be subject to penalties or restrictions on our business activities."  *Id.* at 38 (emphasis omitted).

Sogou was especially clear about this risk in light of the fact that specific PRC regulations had **already** negatively affected Sogou's business:

---

[4] On October 13, 2017, Sogou filed a registration statement with the SEC on Form F-1.  Compl. ¶ 6.  The SEC declared an amended registration statement effective on November 8, and Sogou filed its prospectus on November 9, the day it conducted the IPO.  Compl. ¶ 6–7.  The Company listed American Depository Shares, or ADSs, on the New York Stock Exchange under "SOGO."  Compl. ¶ 7.  Including the portion of the underwriters' over-allotment option that was exercised, Sogou sold a total of 50,643,856 million ADSs in the offering.  Compl. ¶ 7.

4

> **PRC regulations relating to sponsored search have had, and may continue to have, an adverse effect on our results of operations.**
>
> . . . . In order to comply with [Internet content] regulations [issued in 2016], we have established more stringent standards for selecting advertisers for our pay-for-click services and have turned down certain existing advertisers, and have lowered the percentage that pay-for-click search results represent of results on our search pages, which had an adverse impact on our search and search-related revenues and overall results of operations for 2016 and, along with the tax on advertising, are likely to continue to have such an impact.

*Id.* at 36 (emphasis in original).

Moreover, Sogou stressed that "PRC laws and regulations relating to the liability of providers of online products and services for activities of their users are undeveloped, and their current and future reach are unclear." *Id.* at 29.  Sogou cautioned investors that it "**may have difficulty determining the type of content that may result in liability for us** and, if we are wrong, we may be prevented from operating our Internet platforms." *Id.* at 42 (emphasis added). Indeed, at the time of the IPO, Sogou also warned investors of the very risk that later materialized in July 2018 in connection with the violation of the Heroes and Martyrs Act: "We cannot assure you that the PRC governmental authorities will not issue new laws or regulations specifically regulating sponsored search services, which could further impact our revenues." *Id.* at 36.

On April 27, 2018, the PRC government adopted the Heroes and Martyrs Act, which took effect on May 1, 2018—**over five months after the IPO**—to protect the "names, portraits, fame, or hono[r] of heroes and martyrs" from being "insult[ed] or defam[ed] . . . in a public place or on the internet[.]" Ex. C (the Heroes and Martyrs Act), Art. 22.  In or about June 2018, a third-party video platform company named Douyin, which was accessible via Sogou's search results, ran advertisements that offered "jokes" about the Chinese hero Qiu Shaoyun, who is said to have

5

burned to death from incendiary bombing in the Korean War (the "Douyin Incident"). *See* Compl. ¶¶ 54–64; *see also* Ex. E (Q2 2018 Sogou Inc. Earnings Conference Call – Transcript) at 3. This led to an investigation of Douyin and Sogou by Chinese authorities in June 2018. *See* Compl. ¶¶ 54–61. In responding to the investigation, Sogou suspended part of its advertising business for ten days in July 2018. *See* Compl. ¶ 12; Ex. B (Sogou Announcement of Second Quarter 2018 Results (July 30, 2018)) at 4.

Sogou announced that the suspension was "expected to result in a one-time reduction in revenues in the third quarter of 2018." Compl. ¶ 63 (emphasis omitted); Ex. E at 3. Sogou's management further stated in a conference call with investors on July 30, 2018 that its "search-related advertising has completely recovered, and its revenue growth will return to normal in Q4." Compl. ¶ 65; Ex. E at 6. On the call, Sogou elaborated on new measures put in place for compliance with the new Heroes and Martyrs Act, comparing them with its prior measures:

> [B]efore that incident, we had a stringent review mechanism that includes multiple steps. So once an ad is submitted to Sogou, the system will automatically fill the keywords that are blacklisted. After the ad [is] uploaded to Sogou's database, the system will do another round of auto inspection and we will perform manual inspection on [a] sample basis. So after the incident, we have implemented a range of measures to prevent this from happening again.
>
> So we have established a dedicated team to monitor relevant new regulations and any changes of regulations as well as ensure timely implementation of such new regulations or changes accordingly. And we strengthened our auditing procedures by leverag[ing] AI to upgrade [our] automated system and expand[ing] our manual inspection team to extend the scope of manual inspection.
>
> Compl. ¶ 88; Ex. E at 6.

Although the Complaint asserts that Sogou was required to have these new measures in place at the time of the IPO (Compl. ¶ 53), it does not identify any PRC law or regulation that mandated the implementation of the new procedures at the time of the IPO, or allege any reason

6

why Sogou's already "stringent review mechanism" in place prior to the Douyin Incident was somehow then "inadequate." Moreover, the Heroes and Martyrs Act—which as stated above did not exist at the time of the IPO—does not require these compliance measures. *See* Ex. C.

### C.    Smart Hardware[5]

Sogou described two smart hardware products in the Registration Statement: the Teemo Watch and the Teemo Hero Watch. *See* Ex. A at 123–24. Sogou launched these smart watches in 2014 and 2017, respectively. *See id.* The Hero Watch, a later generation model of the original Teemo Watch, used AI-enabled technology, such as Sogou's question-and-answer technology. *See id.* at 124 ("We frequently upgrade Teemo Watch features, and offer unique content-based services to differentiate our product from those of competitors.").

In its IPO disclosures, Sogou stated that it had begun integrating its AI capabilities into smart hardware: "We have applied our AI capabilities to a wide variety of products and services. Our voice and image recognition technologies have been integrated into Sogou Search, Sogou Input Method, and smart hardware developed in-house and by third parties." *Id.* at 113; *see also* Compl. ¶ 71 (emphasis omitted). Sogou also stated its intention to produce more AI-related products. *See* Compl. ¶¶ 71–72 ("We have a clear roadmap for AI, focusing on natural interaction and knowledge computing. . . . We have applied our AI capabilities to a wide variety of products and services. . . . AI is a key enabler for smart hardware.") (emphasis omitted); *see*

---

[5] Smart hardware is, and was at the time of the IPO, a small part of Sogou's business. In the Registration Statement, revenue from smart hardware was included in "Other Revenues" along with Internet value-added services like Web and mobile games, and other products and services. *See* Ex. A at 95. All of "Other Revenues" accounted for about 12% of Sogou's total revenues for the nine months ending September 2017, *see id.* at 19 (about $76 million out of $630.5 million total), and smart hardware, as only one component of "Other Revenues," would have been an even smaller percentage. Also, the legacy models of Sogou's Teemo Smart Watch were not the entirety of Sogou's smart hardware. At the time of the IPO, Sogou had recently launched an updated, AI-enabled smart watch, the Teemo Hero Watch. *See id.* at 124. Indeed, when certain legacy models of the Teemo Smart Watch were discontinued in 2018, the "Other Revenues" from 2017 to 2018 dropped $5.8 million, or less than 1% of Sogou's total revenues in 2018. *Compare* Ex. H (Announcement of Fourth Quarter and Full Year 2017 Results (Jan. 29, 2018)) at 4 *with* Ex. I (Sogou Announcement of Fourth Quarter and Full Year 2018 Results (February 1, 2019)) at 5.

*also* Ex. A at 115–16 ("**We intend to grow our business and improve our results of operations by . . . . [c]ontinu[ing] to pursue innovations in AI technologies. . . . We also plan to broaden the application of our AI technologies**.") (emphasis added).  There are, therefore, no grounds for Plaintiffs' assertion that Sogou "failed to disclose that, at the time of the IPO, Sogou had determined to adjust its smart hardware strategy by transitioning to products that are better connected with AI capabilities."  Compl. ¶ 10 (internal quotations omitted).

After the IPO, Sogou launched two AI-enabled translation devices—the Sogou Travel Translator and the Sogou Smart Recording Translator—in March and May 2018.  *See* Ex. E (Q2 2018 Sogou Inc. Earnings Conference Call – Transcript) at 2; Compl. ¶ 86.  As Sogou stated during a conference call with investors on July 30, 2018, the success of these two devices encouraged Sogou to focus on hardware better able to take advantage of Sogou's AI-enabled technology:

> These [two translation] products have been well received in the market and created a strong brand recognition among customers.
>
> **Encouraged by this development towards [the] end of the second quarter**, we accelerated an adjustment of our smart hardware strategy.  **Now, we are transitioning to products that better leverage our AI capabilities** to improve products' competitiveness and . . . plan to scale the business as quick as possible.
>
> We already have a few more products in the pipeline that we plan to launch before the end of this year.
>
> Compl. ¶ 86; *see also* Ex. E (Q2 2018 Sogou Inc. Earnings Conference Call – Transcript) at 2.

Thus, contrary to Plaintiffs' assertion that Sogou had decided before the IPO to phase out smart hardware products that were not AI-enabled (Compl. ¶ 10), the underlying facts alleged in the Complaint state the opposite: this decision was made after the IPO based on the success of its two translation devices released in 2018.  *See* Compl. ¶¶ 74, 82 ("The [smart hardware strategy]

8

adjustment **followed the recent launch of two translation devices** that were well-received in the market. . . . **As a result of the change in strategy,** Sogou will phase out hardware products that are not AI-enabled, such as some legacy models of Teemo Smart Watch, and transition to products that integrate the Company's leading AI technologies.") (quoting Sogou's **2018 2Q Earnings Release**) (emphasis omitted; emphasis added); *see also* Ex. B at 4 (Sogou Announcement of Second Quarter 2018 Results (Jul. 30, 2018)).

Similarly, because Sogou made the decision to transition its smart hardware in 2018, the Company could not have known at the time of the IPO in November 2017 about the adverse impact such a transition would have on revenue in the second half of 2018. *See* Compl. ¶ 10 (alleging that the new hardware strategy caused "Sogou to impair smart hardware inventory . . . impacting the Company's 2018 financial results materially"). It is not until Sogou began transitioning its smart hardware in 2018 that this adverse impact became apparent. *See* Compl. ¶ 86 ("**Now, we are transitioning to products that better leverage our AI capabilities** . . . . As a result of the change in strategy, we will phase out hardware products that are not AI-enabled, such as some of the legacy models of the Teemo Smart Watch. . . . [W]e expect this will result in a reduction of hardware revenues **in the second half of 2018**[.]" (quoting 2Q 2018 Earnings Conference Call Transcript) (emphasis added); *see also* Ex. E (Q2 2018 Sogou Inc. Earnings Conference Call – Transcript) at 2–3.

## ARGUMENT

The Complaint cannot survive this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) because it does not plead "enough facts to state a claim to relief that is plausible on its face." *Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 393 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 52 (2d Cir. 2015) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). Merely concluding that Sogou's Registration Statement violated

9

Section 11 does not make it so. *See id.* ("A pleading that offers 'labels and conclusions' or a formulaic recitation of elements of a cause of action will not do." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).  The Court should therefore dismiss the Complaint. *See In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 117–21 (S.D.N.Y. 2010) (dismissing Section 11 claims of material omissions for failing to meet *Twombly*'s requirement of factual pleading).[6]

I.    **THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 11**

"When pleading an actionable omission, plaintiffs must, at a minimum, plead facts to demonstrate that **allegedly omitted facts both existed, and were known or knowable, at the time of the offering**." *Singh v. Schikan*, 106 F. Supp. 3d 439, 446 (S.D.N.Y. 2015) (citation and internal quotation marks omitted; emphasis added).

Here, Plaintiffs' Section 11 claim fails because they allege no facts showing that **at the time of the IPO** Sogou (i) had inadequate compliance procedures or (ii) had made the decision to phase out non-AI Teemo Watches and could predict the financial impact of that decision. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358–59 (2d Cir. 2010) (affirming dismissal; "To state a claim under section 11, the plaintiff must allege that . . . the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact

---

[6] Because Plaintiffs' claims sound in fraud, they must also satisfy the heightened pleading requirements of Fed R. Civ. P. 9(b). *See Rombach v. Chang*, 355 F.3d 164, 170–72 (2d Cir. 2004) (applying Rule 9(b)'s particularity pleading standard to a Section 11 claim sounding in fraud even though the plaintiff purported to state only a negligence claim).  The Complaint is replete with explicit claims of fraud: (i) "[T]he Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading" (Compl. ¶ 25); (ii) "Defendants were aware . . . [that] these adverse, undisclosed facts would, and ultimately did, have an unfavorable impact on Sogou's sales, revenues, and income from continuing operations" (Compl. ¶ 27); and (iii) "[w]hether defendants knew or recklessly disregarded that their statements were false and misleading" predominates Plaintiffs' claims (Compl. ¶ 99).  Plaintiffs cannot avoid Rule 9(b) with their generic disclaimer of "any allegation of fraud, recklessness or intentional misconduct." Compl. ¶¶ 103, 111. *See In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000) (applying Rule 9(b) to a Section 11 claim despite the plaintiffs' "boilerplate disclaimer" of fraud).

required to be stated therein or necessary to make the statements therein not misleading.'") (quoting 15 U.S.C. § 77k(a)).  Nor have Plaintiffs alleged any facts showing that Sogou **actually knew** this information at the time of the IPO and was therefore required to disclose it under applicable SEC regulations.  *See Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016) (interpreting SEC regulations that mandated disclosure of any "known trends or uncertainties" in registration statement as requiring "actual knowledge" of such trends or uncertainties when registration statement is filed).[7]

Instead, Plaintiffs impermissibly base their alleged omissions on two events that occurred **after** the IPO—the Douyin Incident and Sogou's decision in 2018 to phase out non-AI Teemo Watches.  As detailed below, these Section 11 claims based on hindsight are not actionable.  *See Scott*, 46 F. Supp. 3d at 396 (dismissing Section 11 claim that improperly attempted to show false statements based on subsequent events; a plaintiff "may not state a claim for Section 11 liability based on mere hindsight"); *see also Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.) (affirming dismissal of securities fraud claims because "the complaint . . . alleg[ed] fraud by hindsight").

---

[7] Because Sogou filed the Registration Statement on Form F-1, *see* 17 C.F.R. § 239.31, the Company was required to disclose, "for at least the current financial year, any **known** trends, uncertainties, . . . or events that are reasonably likely to have a material effect on the company's net sales or revenues[.]"  *See* Part I, Item 5.D of Form 20-F at 16, Sec. & Exch. Comm'n (exp. July 31, 2021) (emphasis added).  *See also* Part I, Item 4.a of Form F-1, Sec. & Exch. Comm'n (exp. July 31, 2021) (requiring that the information specified by Part I of Form 20-F be included in Form F-1).

Plaintiffs miscite the applicable disclosure requirements, claiming that Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(a)(3)(ii) applies to Sogou's Registration Statement.  (Compl. ¶ 26.)  But Item 303 does not apply to registration statements filed on Form F-1, which is what Sogou filed.  *See* Compl. ¶ 6; Form F-1, Sec. & Exch. Comm'n (exp. July 31, 2021) (requiring information listed in Items 512 and 701 of Regulation S-K, but not Item 303).

11

**A.    Plaintiffs Fail to State a Section 11 Claim as to Sogou's Disclosures Regarding its Compliance Procedures**

The sole basis for Plaintiffs' allegation that Sogou failed to disclose that its compliance procedures were "inadequate" is that Sogou modified its procedures in July 2018 following the Douyin Incident.  Compl. ¶¶ 9, 53–61, 64.  Plaintiffs allege that these procedures as modified were "required" by PRC law at the time of the IPO.  *Id.* at ¶ 53.  But they do not cite any PRC law requiring these procedures, nor do the post-IPO events they describe in the Complaint support their claims.  Moreover, Plaintiffs wholly ignore Sogou's extensive disclosures that it may not be able to comply with existing and future PRC laws, which could result in an adverse impact on its business.  *See* Compl. ¶¶ 51–52; *see also* Ex. A at 42 ("We may have difficulty determining the type of content that may result in liability for us and, if we are wrong, we may be prevented from operating our Internet platforms.").

1.    <u>Plaintiffs fail to allege facts showing that Sogou's Internet content procedures were inadequate at the time of the IPO</u>

There is no actionable omission regarding Sogou's compliance procedures because Plaintiffs have failed to plead that such procedures were inadequate at the time of the IPO.  *See Lin v. Interactive Brokers Grp., Inc.*, 574 F. Supp. 2d 408, 421 (S.D.N.Y. 2008) ("To be actionable under Section 11, the registration statement must contain an untruth or material omission '**when such part became effective**.'") (quoting 15 U.S.C. § 77k(a)) (emphasis added).  Plaintiffs merely allege their conclusion that Sogou's compliance procedures were inadequate.  But they fail to identify any "known or knowable" facts supporting the alleged inadequacy of those procedures.  *Singh*, 106 F. Supp. 3d at 446.

The court's decision in *Panther Partners, Inc. v. Ikanos Comm., Inc.* is apposite here. 538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009).  There, Panther Partners claimed that Ikanos failed to disclose that its quality assurance program was inadequate

12

at preventing microchip defects during its September 2005 IPO. *See id.* at 671. As evidence, Panther Partners identified a quality-control problem that occurred after the IPO in January 2006, when some of the Ikanos microchips began failing. *Id.* at 671–72.

The *Panther Partners* court dismissed the Section 11 claim because, among other things, Panther Partners had failed to (i) "enumerate exactly how and why Ikanos's quality control program" was inadequate, or (ii) allege any facts which were known or knowable and therefore should have been disclosed at the time of the IPO. *Id.* at 671–72 (holding that Panther Partners "[was] engaging in retrospective pleading [by] . . . question[ing] the accuracy of the offering statement in light of the much-later materialization of a quality control problem."); *id.* at 672 ("It is obvious, of course, that a defect problem which does not emerge until January 2006 (at the earliest) cannot be disclosed in September 2005."); *see also Singh*, 106 F. Supp. 3d at 447–49 (dismissing a Section 11 claim that a pharmaceutical defendant did not disclose that an ongoing drug study would fail after the IPO because plaintiffs "made no allegations suggesting that defendants could have known that the study would in fact produce worse results [than a prior study].").

Like in *Panther Partners*, Plaintiffs have failed to allege any facts showing "how [or] why" Sogou's compliance procedures were inadequate at the time of the IPO in 2017. They offer no basis for their assertion that Sogou was "required" to have the additional procedures it adopted after the Douyin incident in place earlier.[8] The mere fact that Sogou improved its compliance procedures in 2018 to address the new Heroes and Martyrs Act, which was enacted months after the IPO, does not mean the procedures in place at the time of the IPO were inadequate. *See* Compl. ¶ 64 (quoting Sogou's CEO as stating during a conference call on July

---

[8] *See supra*, Factual Background, Section B.

30, 2018 that Sogou "establish[ed] . . . a dedicated team **improvement** to our advertisement section mechanisms" in response to the Douyin Incident) (emphasis added); *see also* Ex. E (Q2 2018 Sogou Inc. Earnings Conference Call – Transcript) at 3.  Indeed, Plaintiffs do not identify any law or regulation existing at the time of the IPO or otherwise that required Sogou to implement these additional procedures.  *Cf. Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 251 (2d Cir. 2014) (vacating dismissal of a Section 11 claim where the defendants had failed to disclose that their environmental waste treatment procedures were inadequate to comply with regulations that, unlike here, existed at the time of the IPO, and had already resulted in violations).  Even the post-IPO enacted Heroes and Martyrs Act—which forms the sole basis for Plaintiffs' claim—does not require the additional procedures adopted by Sogou.  *See* Ex. C.

All Plaintiffs have done is list Sogou's post-IPO improvements and claimed that Sogou was somehow required to have these procedures in place at the time of the IPO.  *Compare* Compl. ¶ 53 *with* Compl. ¶¶ 64–65.  Sogou's procedures are not rendered inadequate because of a "much-later materialization" of a compliance issue—*i.e.*, the subsequent Douyin Incident. *Panther Partners*, 538 F. Supp. 2d at 671-72.  Because such "retrospective pleading" is impermissible, Plaintiffs' Section 11 claim as to Sogou's compliance procedures should be dismissed.  *See Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC*, No. 08 CIV. 7062 PAC, 2010 WL 4642554, at *16 (S.D.N.Y. Nov. 17, 2010) (dismissing Section 11 claims in part because plaintiffs' claims were based on hindsight derived from the subprime mortgage crisis, and plaintiffs had failed to allege facts showing defendant's awareness of inability to refinance when its registration statement became effective).

14

2.    Sogou's extensive disclosures concerning its Internet content procedures render Plaintiffs' Section 11 claim invalid as a matter of law

Sogou warned investors of the risk that the Company might be unable to comply with existing or later-adopted Chinese Internet-content regulations—which is the exact risk that later materialized.  The law is clear that Plaintiffs cannot base their Section 11 claim on that materialized risk.  *See In re ProShares Tr. Sec. Litig.*, 889 F. Supp. 2d 644, 653 (S.D.N.Y. 2012), *aff'd*, 728 F.3d 96 (2d Cir. 2013) ("When a registration statement warns of the exact risk that later materialized, a Section 11 claim will not lie as a matter of law."); *Panther Partners*, 538 F. Supp. 2d at 672 ("An accurate statement coupled with the precise disclosure of a risk later realized cannot adequately form the basis for a securities claim.").

Sogou fully disclosed the risk posed by existing and possible future PRC Internet content laws that could negatively impact Sogou's business:

- "We cannot assure you that the PRC governmental authorities will not issue new laws or regulations specifically regulating sponsored search services, which could further impact our revenues."  Ex. A at 36.

- "PRC laws and regulations relating to the liability of providers of online products and services for activities of their users are undeveloped, and their current and future reach are unclear."  *Id.* at 29.

- "We may have difficulty determining the type of content that may result in liability for us and, if we are wrong, we may be prevented from operating our Internet platforms."  *Id.* at 42; *see also* Compl. ¶ 51 (emphasis omitted).

Courts regularly dismiss Section 11 claims that are thinly-disguised assertions that a risk fully disclosed in the offering documents later occurred.  *Panther Partners*, 538 F. Supp. 2d at 672 ("Panther's allegation that Ikanos failed to disclose that it lacked an adequate in-house quality assurance program flies in the face of the disclosure actually made: Ikanos's disclosure covers the exact risk later realized, namely, the potential manifestation of a quality control problem at the site of its subcontractor's overseas production plant."); *In re ProShares*, 889 F.

15

Supp. 2d 644, 654 (dismissing Section 11 claim that registration statement omitted risk that exchange-traded funds "could lose substantial value in a relatively brief period" because, among other things, the registration statement clearly stated that the funds' "objectives were daily only" and that their value could "diverge significantly" when "held for longer than one day"); *In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 452 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC v. Credit Suisse AG* 588 F. App'x 37 (2d Cir. 2014) (dismissing Section 11 claim that the registration statement omitted computations and details of the long-term risk for holding onto short-term exchange-traded notes because, among other things, there was a clear disclosure that the "daily rebalancing [of the notes] would impair performance if there was any volatility").

A reasonably prudent investor would have understood the PRC regulatory risks from Sogou's disclosures at the time of the IPO—the risks that, in fact, came to fruition more than half a year later. *See In re ProShares*, 889 F. Supp. 2d 644, 654 (dismissing Section 11 claim; "[t]he plain language of the registration statements addressed the relevant risk directly, and a reasonably prudent investor would have understood that [risk]," which materialized after the IPO) (citing *Halperin v. eBanker USA.com, Inc.* 295 F.3d 352, 360–61 (2d Cir. 2002)) (internal quotations omitted). Furthermore, even if Sogou's risk disclosures did not specify the precise infraction that occurred here—an advertiser's jokes about a national war hero that appeared in search results during the Douyin Incident—Sogou's risk disclosures were sufficient to put a reasonably prudent investor on alert. *See In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014) (dismissing securities claim that defendant had failed to disclose a specific risk of a potential lawsuit when defendant had made "ample disclosure of the broader risk" of litigation). [9]

---

[9] Plaintiffs also allege that Dr. Liyun Ru, Sogou's former Chief Operating Officer, resigned "in the midst of Sogou's troubles with its controls over advertising content." Compl. ¶ 67. Yet they do not connect Dr. Ru's

**B.    Plaintiffs Fail to Allege Facts Showing that Sogou Omitted Material Information about its Smart Hardware**

In addition to alleged omissions concerning the Company's compliance procedures, Plaintiffs mistakenly claim that Sogou omitted information concerning its smart hardware strategy from the Registration Statement.  Specifically, Plaintiffs contend that Sogou failed to disclose (i) its decision to phase out non-AI enabled models of the Teemo Watch, and (ii) the impact of that decision on revenues, sales, and inventory.  Compl. ¶¶ 10, 73.  These assertions fail as a matter of law.

1.    <u>There are no facts showing Sogou made the phase-out decision prior to the IPO</u>

Plaintiffs allege no facts showing that Sogou made the decision to phase out non-AI enabled smart watch models **by the time of the IPO in 2017**.  The Complaint alleges only a single fact regarding the timing of this decision—that Sogou made the phase-out decision as a result of the market success of its two AI-enabled translation devices launched in 2018, well after the IPO:

> In March and in May [of 2018], we successfully launched two translation products, the Sogou Travel Translator and the Sogou Smart Recording Translator. . . . These two products have been well received in the market. . . . **Encouraged by this development towards [the] end of the second quarter [of 2018]**, we accelerated an adjustment of our smart hardware strategy. **Now, we are transitioning to products that better leverage our AI capabilities** to improve products' competitiveness. . . . **As a result of the change in strategy, we will phase out hardware products that are not AI-enabled**, such as some of the legacy models of the Teemo Smart Watch.

Compl. ¶ 86 (quoting **July 30, 2018** Conf. Call, Ex. E. at 2–3).[10]

---

resignation in any way with the Douyin Incident.  This allegation is irrelevant to this claim and cannot save it from dismissal.  *Cf. In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 366 (S.D.N.Y. 2011) ("[T]he resignations of Individual Defendants—without factual allegations linking the resignations to the alleged fraud—[are not] sufficient to raise the inferences required to establish fraud.").

[10] The Complaint also quotes from other 2018 transcripts and press releases that confirm that Sogou made the decision to phase out older smart hardware products in or around mid-2018.  *See* Compl. ¶ 74 (quoting a July 30,

17

The only fact alleged by Plaintiffs, therefore, is that Sogou made the decision to phase out older smart hardware products in or around mid-2018.

There are no other facts alleged as to the timing of this decision, let alone any facts showing the decision was made at the time of the IPO in 2017.  Accordingly, accepting the Complaint's allegation that Sogou's decision was made in mid-2018 as true, there was no omission by Sogou and therefore no actionable claim under Section 11.[11]  *See Scott*, 46 F. Supp. 3d at 393–94 ("[T]he relevant inquiry . . . [is] whether the defendant knew or had reason to know, at the time the offering documents were filed, that the statement was untrue.") (citation and internal quotation marks omitted); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.* 75 F.3d 801, 811 (2d Cir. 1996) (Statements of the company's goal to narrow the price difference between premium and discount cigarette brands "simply reflected company policy at the time; they were not promises to maintain that policy in the future, and thus were not rendered misleading by the company's subsequent consideration of an alternative plan.").

The court's decision in *Scott* is highly relevant.  In *Scott*, General Motors ("GM") had high dealership inventory levels at the time of its IPO and stated in its registration statement that GM would "improv[e] inventory management."  46 F. Supp. at 389–90, 391.  But GM's dealership inventory levels continued to increase after the offering.  *Id.* at 392–93.  The plaintiff brought a Section 11 claim, alleging, among other things, that GM had not intended to improve

---

2018 press release stating that Sogou "**recently**" made the decision after the market acceptance of two new AI-enabled language translation products in 2018) (emphasis added); Compl. ¶ 91 (quoting a Third Quarter 2018 Conference Call describing the 2018 implementation of the smart hardware phase-out).

[11] Moreover, Plaintiffs allege no facts showing that Sogou "failed accurately to describe" its smart hardware products in the Registration Statement.  *See* Compl. ¶¶ 10, 79.  The court should therefore dismiss this claim.  *See In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 120 (S.D.N.Y. 2010) (dismissing conclusory Section 11 claim because plaintiffs did not allege "concrete facts" to support their claim).

its inventory management at the time of the offering given its post-offering dealership inventory increase. *See id.* at 396. The court dismissed this claim: "Lead Plaintiff proffers **no non-conclusory factual allegations** showing that GM did not intend to improve inventory management at the time the Registration Statement went effective. . . . Instead, the Amended Complaint relies on backward-looking logic to argue that the statements were false, claiming that GM must have intended to manage its inventory poorly because, after the IPO, its inventory continued to increase." *Id.* (emphasis added).

Like *Scott*, Plaintiffs rely on hindsight in an attempt to manufacture a Section 11 claim. The pleaded facts show only that Sogou made the decision to drop certain non-AI enabled hardware, such as the older Teemo Watch models, in mid-2018. Those facts therefore contradict plaintiffs' unsupported assertion that Sogou made its decision in 2017 at the time of the IPO.[12]

>        2.       Sogou could not have disclosed the impact of its phase-out decision before that decision was made

Plaintiffs' contention that Sogou failed to disclose the adverse impact of the Company's decision (Compl. ¶¶ 10, 73) is also insufficient to plead a Section 11 violation. Put simply, Sogou could not have made disclosures in 2017 concerning the financial consequences of a decision that Plaintiffs allege the Company did not make until 2018. *See supra* Part I.B.1; *see also In re CIT Grp., Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690–91 (S.D.N.Y. 2004) (dismissing

---

[12] Even if Sogou had known of the decision to phase out old Teemo watches at the time of the IPO, which it did not, Plaintiffs' section 11 claim would still fail because the Registration Statement disclosed that the Company was pursuing greater adoption of AI technology. *See* Ex. A. at 115–16 ("We intend to grow our business and improve our results of operations by . . . . [c]ontinu[ing] to pursue innovations in AI technologies. . . . [and] broaden[ing] the application of our AI technologies."); *see also* Compl. ¶¶ 71–72 ("We have a clear roadmap for AI, focusing on natural interaction and knowledge computing. . . . We have applied our AI capabilities to a wide variety of products and services. . . . AI is a key enabler for smart hardware.") (emphasis omitted). A reasonable investor would have understood the risk that the Company might phase out non-AI enabled devices in the future. Sogou was not required to spell out every reasonable inference in detail. *See Singh*, 106 F. Supp. 3d at 447 ("[W]hat plaintiffs allege is lacking in the Registration Statement is essentially an extra level of disclosure spelling out inferences and drawing conclusions for investors. However, defendants were not required to draw out such inferences or to make such forecasts in order to provide complete and accurate disclosures.") (citation omitted).

19

Section 11 claim where Plaintiffs merely pointed to Defendants' revision of their loan loss reserves three weeks after the IPO but failed to provide any facts showing Defendants believed their reserves were inadequate at the time of the IPO).[13]

The 2018 disclosures that Plaintiffs attempt to rely on only undercut their claim.[14]   Those disclosures merely confirm that the Company had made the decision to adjust its strategy in 2018 and was attempting to assess the adverse impact of the phase-out:

- **Now, we are transitioning to products that better leverage our AI capabilities** . . . . **As a result of the change in strategy, we will phase out hardware products that are not AI-enabled**, such as some of the legacy models of the Teemo Smart Watch. While **we expect this will result in a reduction of hardware revenues in the second half of 2018**, we are confident that this will further differentiate Sogou as a strong player with the smart hardware over the long term." Compl. ¶ 86 (quoting Q2 2018 Earnings Conference Call) (emphasis added); *see also* Ex. E (Q2 2018 Sogou Inc. Earnings Conference Call – Transcript) at 2–3.

- "On November 5, 2018, publicly disclosing its results in an earnings press release . . . Sogou disclosed that . . . . 'other revenue[s]' continued to decline, 'primarily due to **lower sales of smart hardware products following a decision to upgrade the smart hardware strategy** to better leverage Sogou's AI capabilities and improve product competitiveness.'" Compl. ¶ 77 (quoting Q3 2018 Earnings Release) (emphasis added); *see also* Ex. F (Sogou Announcement of Third Quarter 2018 Results (Nov. 5, 2018)) at 5.

- "In terms of smart hardware, **we continued to implement our upgraded strategy in the third quarter**, replac[ing] out the updated version of the Teemo

---

[13] Plaintiffs have also failed to show that the impact of the smart hardware transition on revenue was "material" information.  Indeed, they cannot allege materiality because Sogou's revenues from smart hardware are a small fraction of the company's overall results.  *See supra*, Footnote 5 (describing Sogou's revenues from smart hardware and how the smart hardware transition impacted less than 1% of Sogou's overall revenue in 2018); *see also Rombach*, 355 F.3d at 172 n.7 ("The test for whether a statement is materially misleading under . . . Section 11 is whether the defendants' representations, taken together and in context, would have misled a reasonable investor.") (quotation omitted); *Panther Partners*, 538 F. Supp. 2d at 674 (dismissing Section 11 claim that defendant failed to disclose acquisition of non-saleable inventory because "inventory constituting . . . a $700,000 write-off within a $30 million dollar acquisition, is immaterial").

[14] Plaintiffs claim that Sogou "revised guidance for its third quarter 2018 financial results" in its disclosures on July 30, 2018.  Compl. ¶ 12.  This is demonstrably false.  July 30, 2018 is the day that Sogou **first announced** its third quarter guidance—there was no prior guidance to revise.  *See* Ex. B. (Sogou Announcement of Second Quarter 2018 Results (July 30, 2018)) at 4.  Nor did Sogou revise that guidance at any point afterwards.  *See, e.g.*, Ex. F. (Sogou Announcement of Third Quarter 2018 Results (Nov. 5, 2018)) at 4 (describing the third quarter 2018 results).

Smart Watch with less integrated AI capabilities. We also shifted our R&D and sales capabilities to new products and better utilize[d] our core AI competencies. **This . . . key decision will have a short-term impact on our smart hardware sales in the second half of this year**." Compl. ¶ 78 (quoting Q3 2018 Earnings Conference Call) (emphasis added); *see also* Ex. G (Q3 2018 Sogou Inc. Earnings Conference Call – Transcript) at 2.

*See Denny*, 576 F.2d at 470 (affirming dismissal of securities claim where "plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones"). [15]

Accordingly, Plaintiffs' Section 11 claim as to Sogou's smart hardware disclosures should be dismissed. *See In re TVIX Sec. Litig.*, 25 F. Supp. 3d at 450 ("Plaintiffs are not allowed to plead Section 11 claims with the benefit of 20/20 hindsight because Section 11 claims cannot be based on a backward-looking assessment of the registration statement.") (citation and internal quotations omitted). [16]

---

[15] Moreover, it is clear from the second and third quarter 2018 statements the Complaint cites (Compl. ¶¶ 82, 85–88) that Plaintiffs are exaggerating the impact Sogou's smart hardware strategy was having on revenue. First, Sogou's second and third quarter 2018 earnings statements are generally **positive** news about the Company's growth. *See* Ex. E at 3 ("We achieved solid financial results in the second quarter of 2018. Our total revenues increased by 43% year-over-year to $301 million."); Ex. G at 1, 3 ("During the third quarter of 2018, we recorded healthy business growth. . . . Third quarter revenues reached $277 million, which was in line with our prior guidance.").

Second, while the Plaintiffs cite to a statement in the third quarter 2018 earnings call that attributes a decrease in guidance "in other [not all] revenues due to the upgrade of our smart hardware strategy, some macro uncertainties and regulatory headwind for certain sectors," (Compl. ¶ 92 (citing 3Q 2018 Earnings Conference Call – Transcript); *see also* Ex. G at 5), they omit the subsequent sentence about the decreased value of the Chinese currency: "Please note that for the fourth quarter 2018 guidance, we have presumed an exchange rate of RMB 7 to the dollar as compared with the actual exchange rate of approximately RMB 6.61 to the dollar for the first quarter of 2017, and RMB 6.81 to the dollar for the third quarter of 2018." Ex. G at 5. Taken in context, Sogou's statements attribute the decline in its "other revenues" to many factors, only one of which is "the upgrade of [the Company's] smart hardware strategy." Plaintiffs ignore that these factors—the devaluation of Chinese currency and other "macro uncertainties and regulatory headwind"—would materially and adversely impact Sogou's "other revenues."

[16] Count II, "Violation of Section 15 of the Securities Act Against the Individual Defendants," is not pleaded against Sogou. *See* Compl. ¶¶ 111–15. Therefore, Count II does not affect dismissal of the Complaint against the Company. However, a claim under Section 15 (15 U.S.C. § 77o) for control person liability requires an underlying violation of federal securities laws. *See Rombach*, 355 F.3d at 177–78. Given the plaintiffs' failure to plead a primary violation under Section 11, their Section 15 claim must also be dismissed. *See, e.g.*, *Vaccaro v. New Source Energy Partners L.P.*, No. 15-CV-8954 (KMW), 2016 WL 7373799, at *9 (S.D.N.Y. Dec. 19, 2016) (dismissing Section 15 claim after finding plaintiffs had failed to state Sections 11 or 12(a) claims) (citing *Rombach*, 355 F.3d at 177–78).

21

**CONCLUSION**

For the foregoing reasons, Sogou respectfully requests that the Court dismiss the Third Amended Complaint.  Considering Plaintiffs have had four opportunities to file a complaint alleging sufficient facts to support a plausible claim against Sogou and have been unable to do so, the Third Amended Complaint as against Sogou should be dismissed with prejudice in its entirety.  *See, e.g.*, *Sodhi v. Gentium S.P.A.*, No. 14 Civ. 287, 2015 WL 273724, at *9 (S.D.N.Y. Jan. 22, 2015) (denying plaintiff leave to amend after having had opportunity to do so).

Dated:  November 26, 2019

**GOULSTON & STORRS PC**

/s/ Nicholas Cutaia

Nicholas Cutaia
885 Third Avenue, 18th Floor
New York, New York 10022
Tel: (212) 878-6900
Fax: (212) 878-6911
Email: ncutaia@goulstonstorrs.com

Richard J. Rosensweig (admitted *pro hac vice*)
Joshua M. Looney (admitted *pro hac vice*)
400 Atlantic Avenue
Boston, Massachusetts 02110
Tel: (617) 482-1776
Fax: (617) 574-4112
Email: rrosensweig@goulstonstorrs.com
Email: jlooney@goulstonstorrs.com

*Counsel for Defendant Sogou Inc.*