**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIAJIA LUO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SOGOU INC., SOHU.COM INC., TENCENT HOLDINGS LIMITED, XIAOCHUAN WANG, CHARLES (CHAOYANG) ZHANG, YUXIN REN, JOANNA (YANFENG) LU, BIN GAO, JOSEPH CHEN, JANICE LEE, JAMES (XIUFENG) DENG, CHI PING MARTIN LAU, DONALD J. PUGLISI, J.P. MORGAN SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN SACHS (ASIA) L.L.C., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LTD.,<br><br>Defendants. | No. 19-cv-00230 (JPO) |

**MEMORANDUM OF LAW OF DEFENDANTS J.P. MORGAN
SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, AND
GOLDMAN SACHS (ASIA) L.L.C. IN SUPPORT OF MOTION
TO DISMISS THIRD AMENDED CLASS ACTION COMPLANT**

**MORGAN, LEWIS & BOCKIUS LLP**

101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000

One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000

*Attorneys for Defendants J.P. Morgan
Securities LLC, Credit Suisse Securities
(USA) LLC, and Goldman Sachs (Asia)
L.L.C.*

## PRELIMINARY STATEMENT

Defendants J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, and Goldman Sachs (Asia) L.L.C. (the "Underwriter Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Third Amended Class Action Complaint (the "Complaint" or "TAC"). The Court should dismiss the Complaint for the reasons set forth below and in the memorandum of law submitted by defendant Sogou Inc. ("Sogou" and "Sogou MOL"),[1] in which the Underwriter Defendants join. The Underwriter Defendants submit this memorandum to underscore the compelling arguments for dismissal set forth in Sogou's submission, which apply with equal force to them.

## ARGUMENT

This action arises from Sogou's November 9, 2017, initial public offering (the "IPO"). The Underwriter Defendants, together with China International Capital Corporation (a fourth defendant that has not been served with the Summons and Complaint in this case), served as underwriters in connection with Sogou's IPO. The Complaint appears to assert a single claim against the Underwriter Defendants under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, although even that is uncertain.[2]

Under Section 11, several classes of persons are potentially liable if a registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading[.]" 15 U.S.C. § 77k(a). Underwriters and other specified persons may be liable if the registration statement contains "materially misleading statements or omissions." *In re Morgan Stanley Info.*

---

[1] Other terms not specifically defined herein have the same meaning as in Sogou's memorandum of law.

[2] The heading of Count I, which contains a Section 11 claim, states that the claim is being brought against "All Defendants," but the allegations of Count I (TAC ¶¶ 103-110) refer only to the "Individual Defendants." *See, e.g.*, TAC ¶ 109 ("By reason of the conduct alleged herein, each *Individual Defendant* violated and/or controlled a person who violated Section 11 of the Securities Act.") (emphasis added). Count II—a control person claim under 15 U.S.C. § 77o—is brought only against the "Individual Defendants." (TAC ¶¶111-115).

*Fund Sec. Litig.*, 592 F.3d 347, 358-59, 359 n.7 (2d Cir. 2010) (stating that Section 11 "provides for a cause of action . . . against both the security's issuer, [and] its underwriter," and that "[i]ssuers are subject to 'virtually absolute' liability under section 11, while the remaining potential defendants under section[] 11 . . . may be held liable for mere negligence").[3]

Despite the length of the Complaint, plaintiffs' claim that the offering materials for Sogou's IPO contained material misstatements for which the Underwriter Defendants are potentially liable boils down to two discrete allegations. Neither states a claim under Section 11.

First, plaintiffs allege that Sogou failed to disclose that its "controls over advertising content[] . . . [were] materially inadequate to meet its obligations to review the content for which it was responsible and to prevent Sogou from allowing dissemination of prohibited content" under the law of the People's Republic of China ("PRC"). TAC ¶ 53. But plaintiffs fail to identify any specific PRC law or regulation existing at *the time of the IPO* that even arguably mandated the measures plaintiffs claim were required. Instead, they rely solely on an incident that occurred *months after* the IPO. Specifically, the Complaint recounts that, in June 2018, PRC regulators, including the Beijing Municipal Cyberspace Affairs Commission ("CAC"), announced an investigation of Sogou and Douyin, a third-party video platform accessible by searches on Sogou's search engine, for their alleged role in disseminating "illegal information insulting heroes and martyrs" (TAC ¶ 54)—a potential violation of the PRC's newly-enacted Heroes and Martyrs Act, which did not take effect until May 1, 2018, more than *five months after the IPO*.[4]

---

[3] The negligence standard derives from the fact that Section 11 provides a due diligence defense to underwriters. The defense applies if the underwriters demonstrate that they "had, after reasonable investigation, reasonable ground to believe and did believe, at the time … the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. §77k(b)(3).

[4] *See* Declaration of Joshua Looney dated November 21, 2019, submitted by Sogou ("Looney Decl." or "Looney Declaration"), Exhibits C and D; *see also* Chun Han Wong, *China Guards Its Historical Heroes With New Law*, Wall St. J. (Apr. 27, 2018 6:00am ET), https://www.wsj.com/articles/china-moves-to-police-its-history-with-new-law-1524758002.

Douyin allegedly ran an advertisement the CAC considered to be an insult to a Korean War hero named Qiu Shaoyun. That advertisement could be located using Sogou's search engine. TAC ¶¶ 54-61. As is established in Section I(A) of Sogou's memorandum of law, the allegations concerning the Douyin incident fail because they are classic misstatement-by-hindsight claims that overlook the fact that the law invoked by the CAC was not even enacted until well after the IPO. Hindsight allegations like these are insufficient to state a claim under Section 11. *See* Sogou MOL, Section I; *see also In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557 (CM), 2013 WL 6233561, at *11 (S.D.N.Y. Dec. 2, 2013) (MacMahon, J.) (dismissing Section 11 claim, observing that issuer's duty to disclose is "adjudged by the facts as they existed when the registration statement became effective," and holding that issuer did not violate Section 11 when it failed to disclose a breach of contract claim by third party that was not asserted until "over a month after the Registration Statement became effective") (citation and quotation marks omitted); *Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC*, No. 08-cv-7062 (PAC), 2010 WL 4642554, at *11 (S.D.N.Y. Nov. 17, 2010) (Crotty, J.) ("[P]laintiffs are not allowed to plead Section 11 claims with the benefit of 20/20 hindsight" because "Section 11 claim[s] cannot be based on a 'backward-looking assessment' of the registration statement.") (citation omitted).

The allegations about PRC internet content and advertising regulation are also fatally undermined by the remarkably robust disclosures in the Registration Statement that put investors squarely on notice of the risk that PRC regulations could adversely impact Sogou's internet-based business. Paragraph 51 of the Complaint itself highlights many of these disclosures:

- **The PRC government may prevent us from distributing, and we may be subject to liability for, content that it believes is inappropriate.**

  The PRC has enacted regulations governing Internet access and the distribution of news and other information. *In the past, the PRC government has stopped the distribution of information over the Internet that it believes to violate PRC laws, including content that is obscene,*

*incites violence, endangers national security, is contrary to the national interest or is defamatory.*

- *We are also subject to potential liabilities for content delivered through our services that is deemed inappropriate and for any unlawful actions of users of our products and services under regulations promulgated by the MIIT, such potential liabilities including the imposition of fines or even the shutting down of the Internet platforms.*

  Furthermore, we are required to delete content that clearly violates PRC laws and report content that may violate PRC laws. *We may have difficulty determining the type of content that may result in liability for us and, if we are wrong, we may be prevented from operating our Internet platforms.*

TAC ¶ 51 (emphasis in original).

The Registration Statement is replete with additional, frank disclosures of the risks posed by PRC regulation of internet content:

- "If content accessed through our search services includes information that PRC governmental authorities find illegal or inappropriate, we may be required to curtail or even shut down our search services, and we may be subject to other penalties[,]" which include "monetary damages," and "ceasing certain aspects of our business, which could have an adverse effect on our business and results of operations." Registration Statement at 21.[5]

- **"If we are found to be in violation of current or future PRC laws and regulations regarding Internet-related services and telecom-related activities, we could be subject to penalties or restrictions on our business activities."** *Id.* at 30 (emphasis in original).

- **"PRC regulations relating to sponsored search have had, and may continue to have, an adverse effect on our results of operations."** *Id.* at 28 (emphasis in original).

- "In order to comply with [Internet content] regulations [issued in 2016], we have established more stringent standards for selecting advertisers for our pay-for-click services and have turned down certain existing advertisers, and have lowered the percentage that pay-for-click search results represent of results on our search pages, which had an adverse impact on our search and search-related revenues and overall results of operations for 2016 and, along with the tax on advertising, are likely to continue to have such an impact. *Id.*

_____

[5] The Registration Statement is annexed as Exhibit A to the Looney Declaration.

4

Indeed, the Registration Statement even called out the specific risk that potential new PRC laws—like the later-enacted Heroes and Martyrs Act—could negatively affect Sogou's business operations:

- "We cannot assure you that the PRC governmental authorities will not issue *new laws or regulations specifically regulating sponsored search services*, which could further impact our revenues." *Id.* (emphasis added).

The very risks flagged by Sogou's IPO disclosures materialized when, after passage of the Heroes and Martyrs Act months after the IPO, Sogou was investigated by the PRC government for allegedly violating the new law and it made changes to its procedures to address these changes in PRC law. In light of the Registration Statement's specific disclosures regarding this very risk, however, no reasonable investor can have been misled about the risks to Sogou's business posed by PRC oversight of internet content. Plaintiffs' Section 11 claim based on the Douyin incident therefore fails. "When a registration statement warns of the exact risk that later materialized, a Section 11 claim will not lie as a matter of law." *In re Coty Inc. Sec. Litig.*, No. 14-cv-919 (RJS), 2016 WL 1271065, at *11 (S.D.N.Y. Mar. 29, 2016) (Sullivan, J.), quoting *In re ProShares Tr. Sec. Litig.*, 889 F. Supp. 2d 644, 653 (S.D.N.Y. 2012) (Koeltl, J.), *aff'd*, 728 F.3d 96 (2d Cir. 2013).

The second of the two alleged misstatements identified by plaintiffs concerns Sogou's "Teemo Watch," a smart watch for children that the Registration Statement said was released in 2014, three years before the IPO. As Sogou's memorandum of law establishes (*see* Sogou MOL, Section I(B)), the Registration Statement also told investors that Sogou had launched a more advanced, AI-driven "Teemo Hero Watch," as well as AI-enabled translation devices.

Plaintiffs seize on the unremarkable fact that in 2018—the year following the IPO—and in light of the success of the newer "Hero Watch," Sogou announced that it had decided to "phase out" the older watch—a decision that would have some short-term impact on revenues.

5

TAC ¶ 74. Plaintiffs then claim, without alleging a single supporting fact, that Sogou must have decided to phase out the older watch *before* the IPO, months earlier, and concealed this supposed fact. TAC ¶ 73.

The Complaint provides no factual basis for this sleight of hand, and common sense undermines any suggestion that Sogou had concrete, specific plans to phase out the older watch months before it did so. In an earnings call in late July 2018, which plaintiffs themselves quote at length (TAC ¶ 86), Xiaochuan Wang, Sogou's CEO, explained the evolution of this decision, and tied it to the successful introduction of two new AI-enabled translation products *in the spring of 2018*.[6]

Absent clairvoyance, there is no basis for the argument that Sogou somehow knew, at the time of the 2017 IPO, that it would later successfully introduce products that would trigger its decision to phase out older, non-AI-enabled products. There was, therefore, nothing false or misleading about any statement made by Sogou in the Registration Statement about its earlier generation watches. *See Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (dismissing securities claim where "plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones"); *In re CIT Grp., Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690–91 (S.D.N.Y. 2004) (dismissing Section 11 claim where company revised its loan loss reserves after its IPO, but Plaintiffs failed to plead facts showing Defendants believed their reserves were inadequate at the time of the IPO).

---

[6] Mr. Wang stated: "In March [2018] and in May [2018], we successfully launched two translation products, the Sogou Travel Translator and the Sogou Smart Recording Translator.... These two products have been well received in the market and created a strong brand recognition among customers. Encouraged by this development towards the end of the second quarter [of 2018], we accelerated an adjustment of our smart hardware strategy. Now, we are transitioning to products that better leverage our AI capabilities to improve products' competitiveness and ... plan to scale the business as quick as possible. We already have a few more products in the pipeline that we plan to launch before the end of this year. As a result of the change in strategy, we will phase out hardware products that are not AI-enabled, such as some of the legacy models of the Teemo Smart Watch." (TAC ¶ 86).

The risk that older products could be superseded by newer ones is inherent in any technology-focused company and the way technology companies around the globe operate. That a tech company would introduce new products that made older ones less marketable because they are technologically less advanced cannot have come as a surprise to investors, particularly where the more advanced product is released long after its earlier counterpart. In fact, the Registration Statement discloses that Sogou, as a technology company, would be reliant on developing new products and technologies, which would necessarily replace old ones:

- "Notwithstanding our competitive strengths, we expect to face various challenges, including those presented by . . . [the] importance of innovation and introduction of new products and services[.]" Registration Statement (Looney Decl., Ex. A) at 3.

- "We must adapt our existing products and services and develop new products and product areas that will meet the evolving demands of users, deliver attractive experiences for our users that enhance user engagement, and cause our users to return to our services and increase the frequency of their searches on our platforms." *Id*. at 13.

- "After three years of developing smart hardware products and our supply chain, we have achieved strong research and development and quality-control capabilities and a wide distribution network, which provides a solid foundation for the development and success of new smart hardware products. For example, we plan to launch Teemo Home, a home-based smart device, by the end of 2017." *Id*. at 115.

*See Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 794 (S.D.N.Y. 1997) ("the Prospectus states that American Sensors' success hinges on its ability to 'market new products' and that the Company would continue to emphasize the technological advancement of its product line. Thus, the Company's continuing goal of introducing new improved lines was fully disclosed to potential investors.")

In sum, for the reasons stated above and in Sogou's memorandum of law, plaintiffs' allegations concerning alleged material misstatements or omissions in Sogou's Registration Statement cannot withstand even minimal scrutiny. Those allegations fail as to Sogou and fail as to the Underwriter Defendants as well.

Finally, the current Complaint is plaintiffs' fourth attempt at pleading a securities claim. After defendants filed motions to dismiss the Second Amended Complaint in September 2019, plaintiffs opted to file another amended pleading in an attempt to rectify the deficiencies defendants identified. That effort has failed, and the Court should afford plaintiffs no further opportunity to amend. *Sodhi v. Gentium S.p.A.*, No. 14-CV-287 JPO, 2015 WL 273724, at *9 (S.D.N.Y. Jan. 22, 2015) (Oetken, J.) (dismissing securities class action and holding, "Plaintiff has already had one opportunity to amend his Complaint. He is 'not entitled to an advisory opinion from the Court informing [him] of the deficiencies in the complaint and then an opportunity to cure those deficiencies.'"), quoting *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007).

## CONCLUSION

The Third Amended Complaint should be dismissed with prejudice as to the Underwriter Defendants.

Dated:  November 26, 2019

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

/s Kenneth I. Schacter
Kenneth I. Schacter
kenneth.schacter@morganlewis.com
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Charlene S. Shimada (*pro hac vice*)
Frank B. Kennamer (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendants J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, and Goldman Sachs (Asia) L.L.C*