**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JIAJIA LUO, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

SOGOU INC., SOHU.COM INC., TENCENT HOLDINGS LIMITED, XIAOCHUAN WANG, CHARLES (CHAOYANG) ZHANG, YUXIN REN, JOANNA (YANFENG) LU, BIN GAO, JOSEPH CHEN, JANICE LEE, JAMES (XIUFENG) DENG, CHI PING MARTIN LAU, DONALD J. PUGLISI, J. P. MORGAN SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN SACHS (ASIA) L.L.C., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LTD.,

        Defendants.

**Case No.: 1:19-cv-00230-LJL**

---

**DEFENDANT SOGOU INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

ARGUMENT .................................................................................................................... 1

I.    Plaintiffs Fail to State a Section 11 Claim Regarding Sogou's Internet Content Monitoring Procedures .................................................................................................................. 1

    A.    Plaintiffs Do Not Allege Facts Showing Any Material Deficiencies in Sogou's Content Monitoring Procedures, Let Alone at the Time of the IPO ...................... 1

    B.    Plaintiffs Now Seek to Embellish Their Allegations About Findings by the PRC  3

    C.    Sogou's Content Monitoring Improvements in June 2018 Do Not Support Plaintiffs' Allegations of Known Deficiencies in November 2017 ........................ 5

    D.    Plaintiffs' New Assertion that Sogou Was Aware of the Heroes and Martyrs Act Before the IPO Is Neither Alleged in the Complaint nor Supported in the Opposition .................................................................................................................. 6

    E.    Plaintiffs' Cases Support Dismissal of their Content Monitoring Claim .............. 7

II.    Plaintiffs Fail to State a Section 11 Claim Regarding Sogou's Decision to Phase Out Older Teemo Smart Watch Models ............................................................................................. 9

CONCLUSION ................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Cases**

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 3

*Christine Asia Co., Ltd. v. Ma*,
    718 F. App'x 20 (2d Cir. 2017) ......................................................................................... 9

*Freeman Group v. Royal Bank of Scotland Group PLC*,
    540 F. App'x 33 (2d Cir. 2013) ......................................................................................... 5

*In re Am. Apparel, Inc. S'holder Litig.*,
    No. CV1006352MMMRCX, 2013 WL 10914316, (C.D. Cal. Aug. 8, 2013) .......................... 8

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013) ................................................................................ 9

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
    236 F. Supp. 3d 824 (S.D.N.Y. 2017) ................................................................................ 8

*In re Ply Gem Holdings, Inc.*,
    No. 14-CV-3577 (JPO), 2016 WL 5339541, (S.D.N.Y. Sept. 23, 2016) ........................ 6, 10

*Lin v. Interactive Brokers Grp., Inc.*,
    574 F. Supp. 2d 408 (S.D.N.Y. 2008) ................................................................................ 6

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
    761 F.3d 245 (2d Cir. 2014) .............................................................................................. 7

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d Cir. 2012) .............................................................................................. 8

*Scott v. Gen. Motors Co.*,
    46 F. Supp. 3d 387 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 52 (2d Cir. 2015) .................. 3, 5

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) ................................................................................................ 9

*Yi Xiang v. Inovalon Holdings, Inc.*,
    254 F. Supp. 3d 635 (S.D.N.Y. 2017) ............................................................................. 7, 8

**Rules**

17 C.F.R. § 229.303 ............................................................................................................... 8, 9

Exchange Act Release No. 6835 ................................................................................................ 9

iii

Fed. R. Civ. P. 8(a) ........................................................................................................... 7

Fed. R. Civ. P. 9(b) ........................................................................................................... 7

## ARGUMENT[1]

Relying on mischaracterizations of their own allegations, new facts that are not alleged in the Third Amended Complaint, and inapposite caselaw, Plaintiffs' opposition brief (the "Opposition" or "Opp'n") attempts to rescue their deficient Section 11 claims with respect to Sogou's internet content monitoring procedures and the phase-out of older models of Sogou's Teemo Smart Watch.  Plaintiffs' arguments are without merit, and their claims should be dismissed.

I.    **PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM REGARDING SOGOU'S INTERNET CONTENT MONITORING PROCEDURES**

   A.    **Plaintiffs Do Not Allege Facts Showing Any Material Deficiencies in Sogou's Content Monitoring Procedures, Let Alone at the Time of the IPO**

Plaintiffs argue in the Opposition that Sogou engaged in a "systemic and material failure to monitor and remove" internet content prohibited by PRC law.  Opp'n at 15.  But this argument is not supported by the allegations in the Complaint.  On the contrary, the Complaint alleges that Sogou had a "stringent" (Compl. ¶ 88) multi-step monitoring process in place at the time of the IPO to catch prohibited content:

   i.    First, when an advertisement was submitted to Sogou, Sogou's content control system "automatically filter[ed] keywords that [were] blacklisted." *Id.*

   ii.   Next, the advertisement was "uploaded to Sogou's database, [where Sogou's] system . . . [did] another round of auto inspection[.]" *Id.*

   iii.  Finally, Sogou "perform[ed] manual inspection" of the advertisements "on [a] sample basis" as a final check. *Id.*

Belying their claim of systemic failures, Plaintiffs identify only a single advertisement that slipped prohibited content past these three levels of content controls: a satirical depiction of

---

[1] All capitalized terms not defined herein have the meaning ascribed to them in Defendant Sogou Inc.'s Memorandum of Law in Support of its Motion to Dismiss the Third Amended Complaint filed on November 26, 2019 (Dkt. No. 66).

the Chinese hero Qiu Shaoyun burning to death during the Korean War, which was published by a video application company called Douyin and appeared in Sogou's search results in June 2018 (the "Douyin Incident"). *See* Compl. ¶¶ 55–56. The Douyin advertisement allegedly breached the Heroes and Martyrs Act, a law promulgated five months after Sogou's IPO that created **new** categories of prohibited content—namely, insults or defamation of Chinese "heroes and martyrs." *See* Compl. ¶¶ 42–43, 54; Sogou's Mem. ISO Mot. to Dismiss Third Am. Compl. ("Opening Brief") at 5. The Douyin Incident is the **only** time Sogou's monitoring procedures are alleged to have failed to catch prohibited content. It therefore does not support Plaintiffs' overblown argument that Sogou's procedures were "systemic[ally] and material[ly]" flawed.

Because a single violation of a law passed after the IPO does not show systemic deficiencies before the IPO, Plaintiffs resort to mischaracterizing their own allegations of Sogou's monitoring procedures. First, Plaintiffs contend in the Opposition that Sogou "monitored for illegal content only on a 'sample' or 'random' basis." Opp'n at 15. But this is inconsistent with the Complaint, which alleges that all content on Sogou's platform passed through two levels of automated inspection before Sogou conducted a final manual check on a "sample" basis. *See* Compl. ¶ 88.

Second, Plaintiffs argue in the Opposition that Sogou "failed to update the blacklisted words to include all prohibited subject matters and keywords as required by PRC laws." Opp'n at 15. But in doing so Plaintiffs exaggerate the Complaint's allegations of Sogou's error. The Complaint alleges that Sogou's keyword blacklist did not include a specific three-word combination—"'Qiu Shaoyun,' 'Burned,' and 'Joke'"—that might have caught the Douyin advertisement. Compl. ¶ 60. Even if this could be deemed a failure given the vast amount of content Sogou is responsible for monitoring, it would not support Plaintiffs' contention that

Sogou's procedures were "systemic[ally] and material[ly]" (Opp'n at 15) deficient in June 2018, let alone at the time of the IPO.

Third, Plaintiffs argue in the Opposition that Sogou generally "failed to stay apprised of and in compliance with new laws." Opp'n at 15.  Again, this is an exaggerated portrayal of Sogou's conduct as alleged in the Complaint.  Sogou is alleged to have violated the Heroes and Martyrs Act on a single occasion (Compl. ¶¶ 54–56); this fails to show that the company was not "apprised of" the new law after its promulgation.  Thus, the facts alleged in the Complaint do not support Plaintiffs' argument in the Opposition that Sogou failed with respect to "new laws" on a widespread basis.[2]

### B.    Plaintiffs Now Seek to Embellish Their Allegations About Findings by the PRC

Plaintiffs' "systemic and material failure" argument in the Opposition is not helped by their arguments concerning the PRC's investigation in June 2018.  Opp'n at 16.  Indeed, while Plaintiffs argue in their Opposition that the PRC's "Commission ultimately discovered" and "disclosed" pervasive problems with Sogou's content controls,[3] no such discoveries or disclosures are alleged in the Complaint.

---

[2] The only other PRC laws that the Complaint alleges were inadequately addressed by Sogou's procedures are the Cybersecurity Law and the Advertising Law.  *See* Compl. ¶ 54.  These laws generally proscribe disseminating content prohibited by other laws.  *See id.* (Under Article 12 of the PRC's Cybersecurity Law, internet content providers "shall comply with . . . laws"); *id.* (Under Article 47 of the PRC's Cybersecurity Law, "[n]etwork operators" must "immediately stop dissemination" of "information . . . prohibited by laws and regulations."); *id.* (Under "Article 9 of [the] Advertising Law of the [PRC], . . . advertisements may not involve 'other circumstances prohibited by laws and administrative regulations.'").  The Complaint lists internet content provider licensing regulations (Compl. ¶¶ 47–50) that also ban disseminating content prohibited by other laws, but Sogou is not alleged to have violated these regulations.

Plaintiffs contend in their Opposition, without any citation or basis, that "Sogou's content controls likely violated five other PRC laws in force prior to and . . . at the time of the IPO." Opp'n at 3.  Absent a well-pleaded allegation in the Complaint to support this vague assertion, it does not help Plaintiffs avoid dismissal.  *See Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 393 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 52 (2d Cir. 2015) ("[T]o survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] *See* Opp'n at 16; *see also id.* at 13 (arguing without citation of any alleged specific facts that the "Commission found that Sogou was not monitoring or removing prohibited content from its internet platform.").

The Complaint alleges only that the Commission investigated Sogou in June 2018 and found that Sogou had violated **one specific law**, the Heroes and Martyrs Act, when the Douyin advertisement eluded Sogou's content controls.[4] *See* Compl. ¶ 54 ("Sogou failed to meet its lawful review obligations[,] . . . resulting in the . . . propagation of illegal information **insulting heroes and martyrs**[.]") (emphasis added); Compl. ¶ 55 (Sogou "carr[ied] out rectifications for . . . **insult[ing] martyrs**[.]") (emphasis added); Compl. ¶ 60 (Sogou "missed blocking . . . Douyin's ads containing this . . . illegal keyword combination [of 'Qiu Shaoyun,' 'Burned,' and 'Joke.']") (emphasis added). Nothing in the Complaint alleges that the Commission made any general findings concerning Sogou's content controls beyond this single infraction.

Perhaps recognizing the insignificance of the Commission's alleged conclusions, the Complaint attempts to prop them up with vague references to purported statements by an unnamed "Deputy Director" about the Commission's investigation. *See* Compl. ¶¶ 57–61. These allegations do not plausibly establish systemic content monitoring issues at the time of the IPO. In addition to failing to identify the Deputy Director or what agency he or she directs, the Complaint does not describe whether his or her purported statements are based on direct interviews or third-party reporting, or state what role the Deputy Director had, if any, in the investigation. More importantly, even if these allegations had any indicia of reliability, nothing the Deputy Director allegedly "understood" or "conveyed" (Compl. ¶¶ 57, 59) about the investigation supports the argument in the Opposition of systemic problems with Sogou's procedures. Rather, his or her alleged statements make clear that the Commission's investigation did not begin until June 2018 and was limited in nature. *See id.* at ¶ 57 ("The complaint [that

---

[4] The Complaint alleges that Sogou had to pay a fine of RMB 1 million as a penalty for this violation in July 2018, as well as "disgorge RMB 475 of its advertising income for the [Douyin] advertisement." Compl. ¶ 61. This amounts to $151,045 and $71.75 respectively. *See July 1, 2018 Chinese Yuan Renminbi to US Dollar Conversion*, OANDA: CURRENCY CONVERTER, https://www1.oanda.com/currency/converter/ (last visited Feb. 19, 2020).

4

initiated the government's investigation] was **mainly about** Douyin and its "Qiu Shaoyun" ads through Sogou.") (emphasis added); ¶ 58 (noting the investigation began "in early June 2018").

### C.    Sogou's Content Monitoring Improvements in June 2018 Do Not Support Plaintiffs' Allegations of Known Deficiencies in November 2017

In their Opposition, Plaintiffs argue that the alleged improvements Sogou made to its monitoring procedures after the Douyin Incident in June 2018 "are further evidence of its noncompliance at the time of the IPO" in November 2017. Opp'n at 17. Not so. As alleged in the Complaint, Sogou refined its content controls in three ways after the Douyin Incident: it (1) "leveraged AI to upgrade [its] automated system"; (2) "expand[ed] [its] manual inspection team to extend the scope of manual inspection"; and (3) "established a dedicated team to monitor relevant new regulations and any changes of regulations as well as ensure timely implementation of such new regulations or changes." Compl. ¶ 88. Plaintiffs argue in their Opposition that these improvements were "required . . . to comply with PRC's Cybersecurity [L]aw and Advertising [L]aw—each of which were in full effect prior to the IPO[.]" Opp'n at 17. But neither the Opposition nor the Complaint cites a single provision from either of these laws that requires the additional measures Sogou implemented in June 2018.

As is abundantly clear, the Heroes and Martyrs Act was promulgated five months after the IPO. *See* Sogou's Opening Brief at 5. Sogou is alleged to have improved its procedures a few weeks after a single violation of this post-IPO law. *See* Compl. ¶ 61, 64. These improvements are not evidence of systemic content control problems; rather, Plaintiffs are impermissibly pleading by hindsight. *See Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 396 (S.D.N.Y. 2014), aff'd, 605 F. App'x 52 (2d Cir. 2015) (cited in Opp'n at 25) ("Plaintiffs may not state a claim for Section 11 liability based on mere hindsight."); *Freeman Group v. Royal Bank of Scotland Group PLC*, 540 F. App'x 33, 37 (2d Cir. 2013) (testimony two years later

"with the benefit of hindsight" that "RBS's risk-management procedures were somehow inadequate" was insufficient to state a Section 11 claim).

> **D.    Plaintiffs' New Assertion that Sogou Was Aware of the Heroes and Martyrs Act Before the IPO Is Neither Alleged in the Complaint nor Supported in the Opposition**

Having failed to support their argument that the Complaint properly alleges that systemic problems with Sogou's content monitoring had materialized before the IPO, Plaintiffs now proffer a new claim, not alleged in the Complaint, that "it was knowable" during the IPO that Sogou "could run afoul" of the Heroes and Martyrs Act in the future because "prior to the IPO, the efforts to pass the Heroes and Martyrs Act became a legislative 'priority' in the PRC and a topic of public debate."  Opp'n at 18.  Aside from being absent from the Complaint, this belated claim cannot survive because it does not show that non-compliance with the Heroes and Martyrs Act was "knowable" (or known to Sogou) before the IPO.[5]  Citing two English-language articles for the first time in their Opposition—one prepared in March 2017 by an intern for the U.S. Library of Congress[6] and the other written in October 2018 by a graduate student at John Hopkins University SAIS[7]— Plaintiffs argue that the Heroes and Martyrs Act was public knowledge before the IPO.  *See* Opp'n at 18.  But Plaintiffs do not provide any basis to suggest that these two obscure articles were available to Chinese audiences under PRC censorship laws, let alone available to Sogou.

---

[5] *See In re Ply Gem Holdings, Inc.*, No. 14-CV-3577 (JPO), 2016 WL 5339541, at \*5 (S.D.N.Y. Sept. 23, 2016) ("A cognizable claim under Section 11 . . . requires plaintiffs to, at a minimum, plead facts to demonstrate that **allegedly omitted facts both existed, and were known or knowable,** at the time of the offering.") (quoting *Lin v. Interactive Brokers Grp., Inc.*, 574 F. Supp. 2d 408, 421 (S.D.N.Y. 2008)) (emphasis added).

[6] *See* Opp'n at 18 n.11 (citing Laney Zhang, *China: First Step Towards Adoption of a New Civil Code*, LIBR. CONG.: GLOBAL LEGAL MONITOR (Mar. 30, 2017), www.loc.gov/law/foreign-news/article/china-first-step-towards-adoption-of-a-new-civil-code/).

[7] *See id.* (citing Lanbiao Zhao, *An Introduction to China's People's Congress System*, CATHAY REV. (Oct. 3, 2018), http://cathaysreview.com/2018/10/03/an-introduction-to-chinas-peoples-congress-system/).

In any event, Plaintiffs' own cited authority makes clear that "purely . . . public information" is insufficient for alleging that an issuer knew a specific fact prior to an IPO. *See Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 644 (S.D.N.Y. 2017) (issuer plausibly alleged to have knowledge of an impending tax change only because, unlike here, plaintiffs had identified a targeted news alert the issuer received from its tax advisor that warned the issuer of the consequences of this tax change) (cited in Opp'n at 18).

E.     **Plaintiffs' Cases Support Dismissal of their Content Monitoring Claim**

The cases cited in the Opposition are distinguishable. In each case, the plaintiffs survived dismissal only because, unlike here, they had alleged facts showing it was plausible that the issuer knew of a specific, pervasive problem that had materialized prior to a public offering but failed to disclose it.[8] For example, in *Meyer v. Jinkosolar Holdings Company, Ltd.*, the plaintiffs identified a report issued by the defendant Jinkosolar a few weeks after its IPO that described company "violations of . . . Chinese [environmental] regulations." 761 F.3d 245, 248, 251 (2d Cir. 2014). The court found that these violations were so "substantial"[9] that they must have existed before Jinkosolar's offering. *See id.* at 251 (holding that the "report . . . describes problems of a nature that is sufficient, if proven, to allow a trier of fact . . . to draw an inference that the problems 'existing' as of [the date of the report], were both present and substantial at the time of the [IPO]"). Here, the Complaint fails to allege that any report or other document exists

---

[8] Plaintiffs claim that defendants "presuppose that this Court will apply an inapplicable heightened pleading standard" as opposed to pleading a "plausible" claim (Opp'n at 14–15), but this is a strawman. As Sogou argued in its Opening Brief, Plaintiffs' allegations fail both Federal Rule of Civil Procedure 8(a) and Federal Rule of Civil Procedure 9(b)'s respective pleading standards. *See* Opening Brief at 9–10, 10 n.6.

[9] The report showed, among other things, that (1) Jinkosolar's tube for discharging chlorine did not meet minimum height requirements; (2) Jinkosolar had not been disposing of hazardous sludge according to PRC's state-approved disposal methods; (3) Jinkosolar's hydrochloride ("HCl") cleaning processes were transferring the risk of HCl pollution on the area surrounding Jinkosolar's factory; and (4) Jinkosolar's emissions resulted in excessively high fluoride levels which could not have gone unnoticed by management. *See Jinkosolar*, 761 F.3d at 248.

evidencing pre-IPO problems with Sogou's content monitoring procedures.

Likewise, in *Panther Partners Inc. v. Ikanos Communications, Inc.*, the plaintiffs claimed that the defendant issuer knew before its offering that it would have to accept returns of many, if not all, of the semiconductor chips sold to its two largest customers.  681 F.3d 114, 121 (2d Cir. 2012).  This claim was based on specific allegations that, **before the offering**, the defendant had received numerous complaints about malfunctioning chips, the defendant's board had met about the problem, the defendant's representatives had met with customers to discuss the defective chips, and the defendant had realized it would have to accept returns of all the chips sold because it could not determine which chips were defective.  *See id.*  Here, no complaints are alleged to have been received by Sogou and no internal meetings and decisions are alleged to have occurred regarding illegal content on its search platform before the IPO.

The other cases cited by Plaintiffs involve similar facts plausibly showing the existence of significant problems prior to the IPO.  *See, e.g.*, *In re iDreamSky Tech. Ltd. Sec. Litig.*, 236 F. Supp. 3d 824, 830–31 (S.D.N.Y. 2017) (Section 11 violation adequately alleged because, among other things, issuer knew but failed to disclose during the IPO that a rift with its gaming code developer would delay the launch of its mobile game application, "Cookie Run") (cited in Opp'n at 22); *In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMRCX, 2013 WL 10914316, at *14 (C.D. Cal. Aug. 8, 2013) (the discharge of a third of a company's workforce for immigration violations "cannot be reconciled with statements that the company was making 'diligent' efforts to comply with the immigration laws 'at all times'") (cited in Opp'n at 17).

Many cases Plaintiffs cite involve 17 C.F.R. § 229.303 ("Item 303"),[10] which requires

---

[10] *See Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 643 (S.D.N.Y. 2017) ("Under Item 303, [public offerors are] required to disclose 'any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.'") (quoting 17 C.F.R. § 229.303) (cited in Opp'n at 18).

that the alleged problem be "both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations."[11]  Clearly Plaintiffs' allegations fail Item 303's requirement that the alleged problems were "presently known" to Sogou's management.  *See, e.g.*, *Christine Asia Co., Ltd. v. Ma*, 718 F. App'x 20, 22–23 (2d Cir. 2017) (Item 303 violation adequately alleged because, among other things, a meeting between defendant and a PRC regulatory authority concerning potential fines for internet marketplace counterfeit goods took place before the defendant's IPO, and therefore defendants had knowledge of the undisclosed potential fines) (cited in Opp'n at 13); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 512–13 (S.D.N.Y. 2013) (Item 303 violation adequately alleged because, among other things, Facebook did not disclose that its internal projections showed negative impacts on revenues because of increased mobile-browser use before its IPO) (cited in Opp'n at 21).  Here, in contrast, no such problems existing at the time of the IPO are alleged; Plaintiffs merely conclude that Sogou's content control procedures were systemically deficient because of one infraction long after the IPO.

## II.    PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM REGARDING SOGOU'S DECISION TO PHASE OUT OLDER TEEMO SMART WATCH MODELS

In its Opening Brief, Sogou demonstrated that the Complaint failed to allege any facts showing that Sogou had decided before its IPO to phase out older Teemo Smart Watches.  *See* Opening Brief at 17–19 (showing that the Complaint alleges that Sogou made the phase-out decision after the success of two other AI-enabled products released in March and May of 2018).  Plaintiffs now argue in their Opposition that Sogou "clearly knew" about the phase-out before

---

[11] *See* Management's Discussion and Analysis of Financial Condition and Results of Operations, Exchange Act Release No. 6835, 43 S.E.C. Docket 1330, 1989 WL 1092885, at *4 (May 18, 1989) (providing guidance concerning Item 303); *see also Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015) (discussing Exchange Act Release No. 6835) (cited in Opp'n at 13).

the IPO because Sogou "emphasized [its] dedication to AI" and "stated that 'AI is a key enabler for hardware.'"  Opp'n at 24–25.  But this does not follow: the fact that Sogou was generally focused on pursuing AI technologies at the time of the IPO does not lead to the conclusion that Sogou had **then** made the specific decision to phase out older Teemo Smart Watches.  Nor could that conclusion be drawn from the fact that one of Sogou's AI-enabled devices "was about to hit the market."  Opp'n at 25.

*In re Ply Gem Holdings, Inc.*, cited by Plaintiffs, supports dismissal of their claims.  *See* No. 14-CV-3577 (JPO), 2016 WL 5339541 (S.D.N.Y. Sept. 23, 2016) (cited in Opp'n at 25).  There, the issuer had entered into an inventory buyback agreement with Home Depot before the IPO.  *Id.* at *3.  Because of that agreement, the court found it was "well within [the issuer's] knowledge" that it could "incur a substantial loss on inventory it was required to buy from Home Depot."  *Id.* at *3, 5.

Unlike the buyback agreement in *Ply Gem*, no fact alleged in the Complaint supports a plausible inference that the decision to phase out older Teemo Smart Watches was "well within" Sogou's knowledge prior to the IPO.  Rather, the Complaint relies on a single post-IPO fact: Sogou's Q2 2018 announcement that it would phase out older Teemo Smart Watches after the success of two AI devices released in March and May 2018.  Compl. ¶¶ 74–75.  Sogou's focus on developing new AI-enabled products is not evidence that it made its decision to phase out non-AI enabled products before the IPO.  Accordingly, Plaintiffs' claims regarding Sogou's smart hardware strategy should be dismissed.

## CONCLUSION

For the reasons stated above and in Sogou's opening brief, Plaintiffs' Third Amended Complaint should be dismissed in its entirety with prejudice.

10

Dated:  February 21, 2020        **GOULSTON & STORRS PC**

/s/ Nicholas Cutaia

Nicholas Cutaia
885 Third Avenue, 18th Floor
New York, New York 10022
Tel: (212) 878-6900
Fax: (212) 878-6911
Email: ncutaia@goulstonstorrs.com

Richard J. Rosensweig (admitted *pro hac vice*)
Joshua M. Looney (admitted *pro hac vice*)
400 Atlantic Avenue
Boston, Massachusetts 02110
Tel: (617) 482-1776
Fax: (617) 574-4112
Email: rrosensweig@goulstonstorrs.com
Email: jlooney@goulstonstorrs.com

*Counsel for Defendant Sogou Inc.*

11