**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIAJIA LUO, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>  vs.<br><br>SOGOU INC., SOHU.COM INC., TENCENT HOLDINGS LIMITED, XIAOCHUAN WANG, CHARLES (CHAOYANG) ZHANG, YUXIN REN, JOANNA (YANFENG) LU, BIN GAO, JOSEPH CHEN, JANICE LEE, JAMES (XIUFENG) DENG, CHI PING MARTIN LAU, DONALD J. PUGLISI, J.P. MORGAN SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN SACHS (ASIA) L.L.C., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LTD.,<br><br>       Defendants. | No. 1:19-cv-00230-LJL |

## REPLY MEMORANDUM OF LAW OF DEFENDANTS J.P. MORGAN SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, AND GOLDMAN SACHS (ASIA) L.L.C. IN FURTHER SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT

**MORGAN, LEWIS & BOCKIUS LLP**

101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000

One Market, Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000

*Attorneys for Defendants J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, and Goldman Sachs (Asia) L.L.C.*

## PRELIMINARY STATEMENT

Defendants J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, and Goldman Sachs (Asia) L.L.C. (the "Underwriter Defendants") respectfully submit this reply memorandum of law in support of their motion to dismiss the Third Amended Class Action Complaint (the "Complaint" or "TAC"). This memorandum is intended to underscore the compelling arguments for dismissal set forth in defendant Sogou Inc.'s reply memorandum of law ("Sogou" and "Sogou Reply"),[1] which apply with equal force to the Underwriter Defendants and in which the Underwriter Defendants join.

Plaintiffs' Opposition ("Opp.") (Dkt. 74) brings into sharp focus the fundamental defect of both prongs of their Section 11 claim against the Underwriter Defendants: they are premised on events occurring months after the November 2017 IPO and allege that Defendants should have predicted them in the Registration Statement. The Opposition does not, and cannot, cure this basic deficiency.

Plaintiffs' first claim—that the Registration Statement allegedly misled investors by not disclosing that Sogou would later violate an internet content control law—fails because the law that Plaintiffs say Sogou violated was not enacted until *five months after the IPO*. Plaintiffs try to obscure this fundamental flaw by mischaracterizing the Complaint, but the gist of their pleading is that, in a single instance, Sogou allegedly failed to comply with a law that was not yet on the books. Although Plaintiffs now assert that other laws of the People's Republic of China ("PRC") "likely" regulated content—laws that Sogou itself flagged in the Registration Statement—the only statute that PRC authorities asserted Sogou violated is the post-IPO Heroes and Martyrs Law.

---

[1] Other terms not specifically defined herein have the same meaning as in the Underwriter Defendants' opening memorandum of law (Dkt. 71) and the Sogou Reply.

The second prong of Plaintiffs' claim—that the Registration Statement misled investors about Sogou's plan to introduce new smart, or "AI-enabled," hardware products and phase out an older model of the Teemo Smart Watch—is another example of impermissible hindsight pleading. This is because Sogou announced its smart hardware plans *nine months after the IPO*. To make the argument that this later announcement means that statements in the November 6, 2017 Registration Statement about smart hardware were false, Plaintiffs misleadingly cherry pick the word "accelerate" from a July 2018 earnings call and say this word must mean that the product transition had been underway for months. Not only do Plaintiffs ignore what the speaker actually said during the earnings call, but the cited statement sheds no light on what Sogou was planning in November 2017.

The Complaint is Plaintiffs' fourth attempt to plead a claim. It should be dismissed with prejudice.

## ARGUMENT

### A.      The Claim Based on Alleged Shortfalls in Advertising Controls Fails

Plaintiffs' principal theory of liability fails because Sogou's November 6, 2017 Registration Statement could not have misled investors about the company's potential exposure to a Chinese internet control law that was not enacted until April 2018. The Complaint alleges that a PRC investigation in June 2018 found that Sogou was not in compliance with the new Heroes and Martyrs Law because its search engine showed results for a single, satirical advertisement published by another company. TAC ¶¶ 42, 54-61; Opp. at 6-8, 20, 24. Plaintiffs allege the Registration Statement should have told investors this was going to happen. As a matter of simple logic, the November 2017 IPO Registration Statement could not have disclosed that Sogou might be found in violation of a law that was not enacted until April 2018.

The Opposition calls Defendants' arguments based on this central fallacy in the Complaint a "red herring" (Opp. at 18), but Plaintiffs' fatal pleading defect cannot be brushed aside so readily. Plaintiffs try to explain away the undeniable fact that the Heroes and Martyrs Act did not exist at the time of the IPO by arguing that their claim rests on an allegation that "Sogou failed to establish adequate content controls to prevent dissemination of prohibited conduct—obligations that well pre-dated the IPO." Opp. at 18.[2] This argument disregards the Complaint's own allegations about Sogou's monitoring practices, i.e., that, "before that incident, [Sogou] had a stringent review mechanism that includes multiple steps." TAC ¶ 88; see also Sogou Reply at 2. It also ignores that the thrust of the Complaint is its allegation that Sogou should have disclosed in its Registration Statement that it lacked controls that would prevent it from violating a law that did not exist until long after the IPO, or should have created "content controls" that would satisfy future regulatory action by the Chinese government. That the new Heroes and Martyrs Law is at the heart of the Complaint is evident from the fact that it is the *only* PRC law Plaintiffs claim Sogou violated. Indeed, paragraphs 54 through 67 of the Complaint—which comprise the Complaint's core allegations on this topic—are *entirely* about the new law and PRC actions against Sogou under it. The Complaint contains no allegations about how any other internet content law adversely affected Sogou.

Recognizing that this defect is fatal, Plaintiffs raise new factual allegations in support of the novel argument that the possibility of a new law was a "priority" and "topic of public debate" at the time of the IPO and that it was "knowable" that Sogou was going to be found in violation

---

[2] Plaintiffs also assert that "Sogou's content controls *likely* violated five other PRC laws in force prior to and . . . at the time of the IPO." Opp. at 3 (emphasis added). As tenuous as this allegation is, it appears nowhere in the Complaint and is thus improper. The Complaint cites the Advertising Law of the People's Republic of China, but, according to the Complaint itself, that law provides that "advertisements may not include material that PRC laws and regulations *otherwise prohibit.*" TAC ¶ 44. It was not until the Heroes and Martyrs Law was enacted in April 2018 that advertisements deemed to be "insulting [to] heroes and martyrs" were prohibited. *See* TAC ¶54 (quoting June 2018 PRC government publication accusing Sogou of violating the new law).

of this forthcoming law.  Opp. at 6, 18 n.11.  The Court should disregard these new allegations, which are absent from the Complaint.  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (dismissing securities action where plaintiff raised new factual allegations in opposition because "a party is not entitled to amend its complaint through statements made in motion papers") (internal citations omitted).  Even if such allegations had been properly pled, Plaintiffs would fare no better because the Complaint concedes that the Registration Statement *did* warn investors that new internet content control laws may be enacted that could impact Sogou:

- *"We cannot assure you that the PRC governmental authorities will not issue new laws or regulations specifically regulating sponsored search services*, which could further impact our revenues."  Registration Statement at 28 (Looney Decl. (Dkt. 67), Ex. A) (emphasis added).[3]

- **"The PRC government may prevent us from distributing, and we may be subject to liability for, content that it believes is inappropriate. . . .** *We may have difficulty determining the type of content that may result in liability for us and, if we are wrong, we may be prevented from operating our Internet platforms."*  TAC ¶ 51 (emphasis in original).

Plaintiffs' authorities only underscore the problems in the Complaint.  In *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 643–44 (S.D.N.Y. 2017), a Section 11 case, the complaint alleged that the company had not disclosed tax law changes that would adversely impact it.  The court denied a motion to dismiss where the complaint alleged that the company had received a *pre*-IPO memorandum from its accountant explaining that the State of New York had already changed its tax laws and the City of New York was about do the same.  *Id.* at 644

---

[3] The Registration Statement is included as Exhibit A to the Declaration of Joshua M. Looney filed November 26, 2019.  Dkt. 67-1.

(finding that defendants failed to disclose "known trends and uncertainties" required to be disclosed in registration statement). The issuer thus had "actual knowledge" of the tax law changes. *Id.* Here, by contrast, the Complaint does not allege that Sogou had "actual knowledge" in November 2017 that the Heroes and Martyrs Act would be enacted months later.

The Complaint includes no factual allegations showing that Sogou or the Underwriter Defendants had actual knowledge at the time of the IPO of the yet-to-be-enacted law or the specific ways in which it might affect Sogou the following year. Instead of an accountant's memorandum sent to the issuer describing changes in the law, the Opposition points to two obscure English-language articles—both conspicuously absent from the Complaint—indicating a new internet content law was first proposed in 2017 and then enacted in 2018. Opp. at 18, n.11 (citing articles). These allegations, even if they had been pled in the Complaint, are insufficient to establish actual knowledge. Setting aside that one of the articles was published in October 2018, nearly a year after the IPO, and that the other contains only a passing reference to a potential law concerning "heroes and martyrs," this type of generic public information is exactly what the court in *Yi Xiang* held would be insufficient to show a defendant's *actual* knowledge of relevant changes in the law.[4] *Yi Xiang*, 254 F. Supp. 3d at 644 (explaining that it is insufficient for "plaintiffs [to] rel[y] purely on public information to allege that defendants had actual knowledge"); *see Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 48 (2d Cir. 2016) (affirming dismissal of complaint where plaintiffs relied solely on public information to allege that defendants had actual knowledge of potential issues).

---

[4] *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014), is even further afield and is entirely inapposite because the relevant environmental laws that the issuer purportedly violated in that case existed long before the company's IPO.

In short, the first prong of Plaintiffs' claim against the Underwriter Defendants fails because the Complaint lacks allegations showing that Defendants knew at the time of the November 2017 IPO that the Heroes and Martyrs Law would be enacted or that Sogou would later be accused of violating that law.

## B.     The Claim Based on New AI-Enabled Products Fails

Plaintiffs' second claim—that the Registration Statement misled investors about a purported plan to phase out older non-AI enabled watches in favor of new smart hardware—fails for the same basic reason. The Opposition makes the conclusory argument that "Sogou clearly knew at that time [of the IPO] that it would be phasing out hardware that was not AI-enabled." Opp. at 25 (citing TAC ¶ 73). Plaintiffs' only factual support for this argument is that Sogou announced in July 2018 (nine months *after* the IPO) that it was adjusting its smart hardware strategy by discontinuing certain legacy models of its Teemo watch (TAC ¶¶ 74-75), which accounted for a *de minimis* amount of Sogou's revenues.[5] Nothing about this announcement, long after the IPO, shows that Sogou had already decided at the time of the IPO to change its smart hardware strategy. Mere hindsight—which is all that Plaintiffs have pled—is not sufficient to state a claim against the Underwriter Defendants. *See Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 396 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 52 (2d Cir. 2015) (cited in Opp. at 25) ("Plaintiffs may not state a claim for Section 11 liability based on mere hindsight.").

---

[5] According to Sogou's opening Memorandum of Law (Dkt. 66), the discontinued legacy models of the smart watch accounted for less than 1% of Sogou's revenues. *Id.* at 7 n.5. The Opposition makes the unconvincing argument that this trivial contribution to the bottom line is outweighed by supposed "qualitative" factors (Opp. 25-26), but the case Plaintiffs cite on this point undermines their argument. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 720 (2d Cir. 2011) (qualitative materiality turns on "whether the misstatement or omission relates to a segment that plays a 'significant role' in the registrant's business.") (internal quotations omitted). Sogou was an internet search company, not a watch manufacturer, and its sales of hardware represented, at most, a collateral revenue source.

Here again, Plaintiffs ignore key disclosures in the Registration Statement, which explained to investors that Sogou, as a technology company, was continually developing new products and technologies, and phasing out old ones. *See* Underwriters' opening Memorandum of Law (Dkt. 71) at 7 (citing relevant disclosures in the Registration Statement). Plaintiffs focus on a statement by Sogou's management in a July 2018 earnings call—nearly nine months after the IPO—that the company had "started to accelerate the adjustment of our hardware strategy by transitioning to products that are better connected with AI capabilities." TAC ¶ 75. Plaintiffs suggest that the use of the word "accelerate" must mean the plan to phase out older, non-AI-enabled products had been fully developed months earlier. Opp. 4, 9. This argument not only places undue weight on the word "accelerate," but also ignores that what the company actually said in July 2018: that it had "***started*** to accelerate" this adjustment (TAC ¶ 75), thus negating any suggestion that the decision regarding older products had been made months earlier.

Further, Plaintiffs' argument that Sogou must have planned to phase out certain earlier-generation products at the time of the IPO is based on statements in the Registration Statement itself, and thus fully disclosed to investors. Opp. 24-25 (citing TAC ¶¶ 70, 72, 73). Because the Registration Statement accurately disclosed information about Sogou's strategy of continually "develop[ing] . . . new smart hardware products" (Registration Statement at 115), this second prong of Plaintiffs' claim against the Underwriter Defendants also fails.

## C.    The Complaint Should Be Dismissed with Prejudice

The current Complaint is Plaintiffs' ***fourth*** attempt at pleading a securities claim in this case. On January 9, 2019, plaintiff Jiajia Luo filed the first complaint in this case and the matter was assigned to Judge Oetken. Dkt. 1. After appointment of lead plaintiff and counsel, Plaintiffs filed an Amended Complaint July 12, 2019 (the second complaint). Dkt. 33. On July 22, 2019,

Plaintiffs filed a letter-motion to amend the complaint to change the case caption, which Judge Oetken granted, and Plaintiffs then filed another "Amended Complaint" on August 8, 2019. Dkt. 34, 37. On September 12, 2019, Plaintiffs filed a notice of voluntary dismissal as to certain defendants and a Second Amended Complaint (the third complaint). Dkt. 44-45. On September 17, 2019, defendants moved to dismiss. Dkt. 48-54. Rather than filing an opposition, on October 22, 2019, Plaintiffs withdrew the Second Amended Complaint and filed the Third Amended Complaint (the fourth complaint). Dkt. 60. On November 26, 2019, defendants moved to dismiss again. Dkt. 65-71. On January 17, 2020, Plaintiffs filed their Opposition, and on February 4, 2020, this matter was reassigned to this Court.

This case has been pending for more than a year. Plaintiffs have had ample to time to investigate the facts and have filed four separate complaints (plus a fifth with an amended caption). Nevertheless, all Plaintiffs have been able to proffer is a weak hindsight-based pleading that seizes on post-IPO announcements made in mid-2018 and alleges that Defendants should have told investors about these events as part of the 2017 IPO. Never mind, Plaintiffs say, that the Registration Statement *did* disclose the risk that these events might occur.

At this point, the only conclusion that can be drawn is that Plaintiffs cannot state a claim under Section 11. Because any further amendment would plainly be futile, the Complaint should be dismissed with prejudice. *See In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (holding that "where amendment would be futile, denial of leave to amend is proper").

## CONCLUSION

The Complaint should be dismissed with prejudice as to the Underwriter Defendants.

Respectfully submitted,

Dated: February 21, 2020

**MORGAN, LEWIS & BOCKIUS LLP**


/s Kenneth I. Schacter
Kenneth I. Schacter
kenneth.schacter@morganlewis.com
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Charlene S. Shimada (*pro hac vice*)
Frank B. Kennamer (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendants J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, and Goldman Sachs (Asia) L.L.C.*