**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIAJIA LUO, Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiffs,<br><br>     vs.<br><br><br>SOGOU INC., SOHU.COM INC., TENCENT HOLDINGS LIMITED, XIAOCHUAN WANG, CHARLES (CHAOYANG) ZHANG, YUXIN REN, JOANNA (YANFENG) LU, BIN GAO, JOSEPH CHEN, JANICE LEE, JAMES (XIUFENG) DENG, CHI PING MARTIN LAU, DONALD J. PUGLISI, J.P. MORGAN SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN SACHS (ASIA) L.L.C., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LTD.,<br><br>                         Defendants. | No. 1:19-cv-00230-LJL<br><br><br><br>**DECLARATION OF PAUL MULHOLLAND REGARDING ADMINISTRATION COSTS AND NOTICE AND CLAIMS ADMINISTRATION PROCEDURES** |

I, Paul Mulholland, declare and state as follows:

1.    I am the President of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm.  I have over twenty-eight (28) years of experience specializing in litigation support services principally in the area of administration of securities class action settlements.  I have also testified as an expert witness in securities and other class action matters. Attached as Exhibit A is my curriculum vitae and SCS brochure.

2.    At the request of Class Counsel, I am providing this declaration to inform the Court and the parties to the above-captioned action about the administrative costs and the procedures and methods that SCS will use to provide (i) notice of the proposed Settlement to the investors who make up the Settlement Class, and (ii) the administration of the claims process.[1]  I have personal knowledge of the facts set forth herein, and if called on to testify I could and would do so to the best of my ability.

3.    SCS was retained by Class Counsel, subject to Court approval, to provide notice and claims administration services in the above-captioned action ("Action').  The proposed Settlement Class consists of all persons and entities that purchased or otherwise acquired Sogou ADSs pursuant and/or traceable to Sogou's Registration Statement issued in connection with the IPO and were damaged thereby.  SCS understands that the class period is November 9, 2017 through March 14, 2018. Excluded from the Settlement Class are Defendants, Sogou's officers and directors and their immediate family members, Sogou's officers and directors and their immediate family members, Tencent's officers and directors and their immediate family members, and entities in which such excluded persons hold a majority ownership interest.  Also excluded from the Settlement Class is any Person who timely and validly seeks exclusion from the Settlement Class.

---

[1] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated November 16, 2020 (the "Stipulation").

4.    SCS has successfully administered over five hundred (500) class action cases since it was established in April 1999.  SCS specializes in administering security class action settlements and has distributed over $3 billion in settlement funds.  SCS is considered one of the leading claims administrators in the United States.  More information about SCS is included in our website at www.strategicclaims.net.

5.    Sogou ADSs purchased or otherwise acquired pursuant and/or traceable to Sogou's Registration Statement totaled 281 million, including approximately 50.6 million in the IPO and open market trade volume of approximately 230.4 million ADSs after the IPO through March 14, 2018. Based on this and SCS experience in administering hundreds of security class actions settlements, SCS  estimates a Class size of approximately 60,000 Class Members; a claims filing ratio of 25%  (15,000 claims); and 70% of claims (10,500 claims) will be valid.

6.    The proposed notice plan in this matter uses procedures that have been designed to provide direct mail notification to every investor who is a member of the Settlement Class and who can be identified with reasonable effort.   In addition, direct mail notification will be provided to thousands of financial institutions, whether brokerage firms, banks, and other third-party nominees, that regularly monitor proposed securities class action settlements.  Subject to Court approval, all persons and entities identified as potential Settlement Class Members will be sent a Postcard Notice.  The Postcard Notice provides a limited description of the Settlement and directs the recipient to the case-specific website dedicated to this Settlement, www.strategicclaims.net/Sogou (the "Settlement Website")  to access the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") as well as the Proof of Claim and Release Form (the "Claim Form") and other Settlement documents.  The Settlement Website allows Class Members to either file claims directly on-line or download a Claim Form for filing.  The  Postcard Notice will also notify potential Settlement Class Members that they can request to receive by mail a hard copy of the Notice and/or Claim Form.  The Notice, Claim Form, and Settlement Website will include instructions for on-line and mail-in claims submission.

7.      SCS estimates the Postcard Notice will reduce printing and postage costs by at least $25,000.  Over the past few years, approximately one-half of security settlements administered by SCS, representing over twenty-five security settlements, district courts have approved postcard notice to provide direct mail notification to potential class members.  See **Exhibit B** for a list of recent security settlements administered by SCS where district courts have approved a postcard notice.  SCS has experience no apparent decline in the percentage of claims filed in cases in which it mailed postcards instead of long form notices.  In cases with small settlements and a large class size, such as this Settlement, a postcard notice is common.  In addition, with postcard mailings, SCS has experienced a higher percentage of on-line claims filings further reducing administration costs.  SCS is estimating at least 60% of the claims will be filed electronically in this matter.

8.      The proposed notice plan also calls for publication of a summary version of the Notice (the "Summary Notice") in *Investor's Business Daily* and to be transmitted once over the *Globe Newswire*.  Details of the complete proposed notice plan are outlined below.

9.      If SCS is appointed by the Court as Claims Administrator, and subject to the Court's approval of the notice plan set forth in the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order"), SCS will, after cleanup and de-duplication, initially send a copy of the Postcard Notice by First-Class Mail to all persons and entities identified as potential Settlement Class Members by Sogou's stock transfer agent.  The stock transfer agent will only have the contact information for the small number of investors that hold their securities in their own names.   These investors typically make up a very small percentage of a class, as the vast majority of investors hold their securities through a brokerage firm, bank, institution, or other third-party nominee ("Nominees") as these potential Settlement Class Members are beneficial purchasers whose securities are held in "street name" – *i.e.*, the securities are purchased and held by one of the Nominees on behalf of the beneficial purchasers.  The names and addresses of these beneficial purchasers are known only to the Nominees.   In SCS's experience, the class members who hold their securities in their own name, and are therefore known to the stock transfer agent, make up less than 1% of a class in a typical securities settlement.

10.     To obtain the contact information for investors at the beneficial purchaser level, SCS uses a procedure designed to get the contact information from the Nominees that actually hold the securities for the beneficial holders of the securities.  In the 20 years that SCS has been notifying potential class members of actions involving publicly traded securities, SCS has found the large majority of potential class members as the beneficial owner are reached through the Nominees.

11.     For this matter, SCS will send mailings and an appropriate cover letter to each entity included on a proprietary master list consisting of 734 banks and brokerage companies ("Nominee Account Holders"), as well as 601 mutual funds, insurance companies, pension funds, and money managers ("Institutional Groups").  In SCS's experience, these 1,335 Nominee institutions represent nearly all beneficial holders of the securities in most settlements involving publicly-traded companies.  The cover letter accompanying the mailing would notify the Nominees of the proposed settlement and inform them of their obligation to either provide the names and addresses of their clients who may be Settlement Class Members or request copies of the Postcard Notice to provide directly to their customers and clients.

12.      SCS has developed ongoing relationships with the appropriate contacts within each Nominee institution.  SCS supports the Nominees throughout the process, and provides additional services such as: coordinating with Nominees to submit claims accurately and efficiently; reviewing the requirements and procedures for submitting claims; explaining the Plan of Allocation; answering questions on recognized loss calculations; updating Nominees on the status of claims and the settlement; coordinating with Nominees for an efficient disbursement; and answering all investor inquires in a professional, knowledgeable, and timely manner.

13.     Subject to Court approval, SCS will promptly mail the Postcard Notice directly to all potential Settlement Class Members identified by Nominees.  SCS will also send copies of the Postcard Notice directly to Nominees who indicate they will directly forward copies to their customers and clients who may be Settlement Class Members.  Each of these requests will be completed in a timely manner.

14.     All name and address data obtained by SCS will be reviewed to identify and eliminate exact name and address duplicates and incomplete data prior to mailing.  Any Postcard Notices that are returned as undeliverable mail will be reviewed to determine if an alternative or updated address is available from the Postal Service and will be re-mailed to the updated or alternative address.

15.     SCS will supplement the direct mailing program described above by publishing the Summary Notice in *Investor's Business Daily*.  The Summary Notice will also be posted with the *GlobeNewswire*, an online newswire service, where it will be available throughout the administration process.  News outlets often use posted notices as the basis for their own stories about litigation settlements involving publicly traded companies, thereby creating added awareness of the proposed settlement among investors.

16.     SCS will also send the Depository Trust Company ("DTC") a Notice and Claim Form for the DTC to publish on its Legal Notice System ("LENS").  LENS provides DTC participants the ability to search and download legal notices as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted.

17.     Throughout the notification and claims processing period, SCS will maintain a toll-free telephone helpline to answer potential Settlement Class Member's inquiries.

18.     SCS  will  also  maintain  and  update  the  Settlement  Website, www.strategicclaims.net/Sogou, where key documents will be posted, including the Stipulation, the Notice and Claim Form, and the executed Preliminary Approval Order.  The Settlement Website will also provide summary information regarding the case and the Settlement and highlight certain important dates, including the date of the Settlement Hearing.  All documents posted to the Settlement Website will also be available for download.

19.     Because of the street name system under which most securities are held, even Defendant Sogou does not know the identity of the vast majority of its shareholders, and it is usually not possible to meaningfully project the exact total number of class members prior to implementing the notice plan.  By taking certain information regarding the volume of trading

during the proposed Settlement Class Period and comparing that to similar information collected in other cases SCS has administered, we are able to estimate the number of potential Settlement Class Members that will be identified, within a very broad range.

20.   Given Sogou's IPO and trading history during the relevant period for ADSs acquired pursuant and/or traceable to Sogou's Registration Statement issued in connection with the IPO, we estimate we will mail Postcard Notices to approximately 60,000 potential Settlement Class Members.  However, this is an estimate only, and the actual number of potential Settlement Class Members identified during the solicitation process may be higher or lower than this estimate.

21.   In SCS's experience, not all class members submit claims, and some of the claims submitted are not valid or eligible to receive distributions according to the plan of allocation. SCS's estimate below are based on our experience.  The actual fees and costs required to complete the administration may be significantly higher or lower, however, depending on how many Class Members are identified, how many claims are filed, how many claims are valid, and how many claims require additional communication with the filer.

22.   Based on SCS's experience with securities settlements of similar size and involving companies with similar market capitalizations and numbers of shareholders, the fees and expenses to administer the notice procedures ("Phase I") in this matter is estimated at $80,000 (see **Exhibit C**).  The majority of Phase I costs are fixed, allowing for a reliable estimate to be made at the outset.  The notice procedures include, but is not limited to: (a) assist in preparing the Plan of Allocation and reviewing of Settlement documents; (b) establishing and maintaining the Settlement Website and organizing the printing and mailing the Postcard Notice; (c) creating an online claim filing system; (d) supplying the Postcard Notice; (e) publishing the Summary Notice as instructed in the Preliminary Approval Order; (f) notifying brokerage firms and other nominee accounts of the appropriate manner to provide individual notice to potential Class Members, both individually and on a published basis; (g) tracking requests for exclusion; (h) tracking returned Postcard Notices; (i) forwarding a new Postcard Notice if a new address was provided by the U.S.P.S.; (j) skip tracing returned undeliverable Postcard Notices and re-mailing a new Postcard

Notice if a new address was obtained; (k) follow-up communication with brokers and nominees to identify beneficial holders; and (l) preparation of declarations for the Court and periodic status reports for Class Counsel.    In addition to Phase I, SCS will perform claims processing and distribution services (Phase II).  The majority of Phase II costs are variable costs.  SCS estimates 60% or 9,000 claims will be filed electronically and approximately 40% or 6,000 claims will be filed as paper claims. Claims processing includes but is not limited to: (a) programing an electronic calculation sheet pursuant to the Plan of Allocation; (b) processing and reviewing claims; (c) curing deficient claims; (d) mailing acknowledgement letters to confirm receipt of claims; (e) communicating with Class Members by phone, email and fax; (f) rejecting invalid claims; (g) applying fraud detection procedures; (h) performing quality assurance and audit reviews; (i) preparation of declaration(s) for the Court and status reports for Class Counsel; (j) project management; (k) website monitoring; (l) verification of scanned documents; and (m) preparation of income tax returns.

23.    Institutional investors and third-party filers[2] file a majority of all claims, but typically file during the last few weeks before the claims filing deadline. As such, SCS will incur a majority of the claims administration costs during that period.  Prior to the large influx of these claims,  SCS will program an electronic calculation sheet and process claims filed during the early and middle part of the claims filing period.  For the beginning and middle of the claims period, SCS will incur  approximately 40% of its claims processing charges or an estimated $60,000 prior to the final approval hearing.  Together with the proposed Phase I allowance of $80,000, and $3,000 for preparation and filing of one year of income tax returns,  SCS estimates total proposed initial notice and administrative allowance of $143,000 to pay for administration costs without Court approval.  At the final approval hearing, SCS will update the Court with a revised estimate

---

[2] Third party claims filer, or claims filing service, is an entity that seeks out class members (often institutions such as custodial banks, mutual funds, brokerage firms, hedge funds, etc.) and files claims on their behalf.

of fees and expenses for claims processing based on the institutional and third party claims it receives in the final few weeks of the claims period.

24.    Distribution costs are principally variable costs and will be based on the actual number of claims filed and the actual percentage of claims determined to be valid.  Distribution charges will be determined at the end of the administrative process. SCS is estimating 70% or 10,500 of the claims filed will be valid.   SCS is estimating distribution costs to be $17,850.[3] Preparation and filing of income tax returns for the Settlement Fund account are fixed costs charged at rate of $3,000 per year. SCS estimates that it will complete administration of this Settlement in 2021, requiring only two years' tax preparation (2020 and 2021).

25.    In SCS's experience, the outlined notice process, claims process and estimated fees and expenses outlined above are reasonable and consistent with those incurred in other securities settlements of similar size and complexity.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.  Executed on December 4, 2020, in Media, Pennsylvania.

Paul Mulholland

---

[3]  Distribution costs include bank charges, printing, postage (domestic and international), distribution setup, quality assurance, and allocation of net settlement funds at a per unit charge of $1.70 totaling $17,850 (10,500 times $1.70 per unit).

Case 1:19-cv-00230-LJL   Document 97-1   Filed 12/04/20   Exhibit A

## CLAIMANT COMMUNICATION

*Phone Calls*
We tailor our Call Center to the needs of each settlement, we can provide an automated approach using the latest IVR technology or, if counsel perfers, we offer a more personal approach and have one of our highly trained staff answer the phone and help the Class member with any issue they may have. We also offer call tracking for each case, detailing the claimants question, and reporting on the total number of calls received.

*Email*
If a client requests it, we can provide a dedicated email address for each settlement where Class members can correspond and recieve prompt answers from one of our highly trained staff.

*Website*
On request, we can provide a dedicated website for a settlement where all pertinent data and forms can be easily accessed by class members. Using these websites Class Counsel can quickly and easily communicate to the class with ongoing updates and status changes in the Settlement.

## DISTRIBUTION

*Checks*
We have handled distributions of all sizes and values, ranging from a few hundred checks, to hundreds of thousands of checks worth millions of dollars. We monitor all our bank accounts on a daily basis using a Postive Pay system to ensure our clients that only checks we issued will be cashed

*Taxation*
SCS can handle all taxation needs for a settlement. From calculating and paying taxes on the interest earned in the Settlement Fund, to withholding Federal and State taxes on wage cases, our staff of Certified Public Accounts ensure that all filing requirements are met.

## KEY INDIVIDUALS

### Paul Mulholland, CPA, CVA
### President
*As the founder, Mr. Mulholland is the key liaison with counsel on all administrative cases. He holds a BS degree in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a Certified Valuation Analyst. He is a member of the AICPA and NACVA.*

### Matthew Shillady
### Operations Manager
*Mr. Shillady overlooks all areas of operations and systems management. Matthew is an expert in database management and computer systems. Matthew Shillady is a graduate of Penn State University. He holds a BS degree in Information Sciences and Technology Integration with substantial experience in data integration and database systems. Mr. Shillady has been with Strategic Claims since June of 2003.*

### Josephine Bravata
### Quality Assurance Manager
*Ms. Bravata is involved with all areas of claims administration. She supervises the claims processing, database management, notification, bank reconciliations, check distributions and preparation of reports. Ms. Bravata joined the Company in 2001 after graduating from Neumann University. She has a BS degree in Accounting and a Minor in Computer and Information Management.*

"I want to express my appreciation for the excellent work that Strategic Claims Services has provided to-date in administering the Blue Cross settlement. You and your staff have been timely, responsive and have made the claims administration process efficient and effective. Thank you for all your hard work."
Mike Karnuth, Esq.
Krislov & Associates, Ltd.

# STRATEGIC CLAIMS SERVICES

Strategic Claims Services
600 North Jackson Street
Suite 3
Media, PA 19063

PHONE
866.274.4004
610.891.9852

FAX
610.565.7985

EMAIL
pmulholland@strategicclaims.net

"Your able and conscientious handling of this matter is much appreciated."
Honorable William C. Connor
United States District Judge
Southern District of New York
Administration of the Texaco ERISA
Litigation Settlement

Copyright © 2009 Strategic Claims Services

Case 1:19-cv-00230-LJL   Document 97-1   Filed 12/04/20   Page 11 of 16

## OUR MISSION

*Strategic Claims Services strives to offer high quality claims administration and unmatched solutions to its clients while maintaining exceptional client relationships.*

*» We supply customized reports and detailed reviews of the Administration process so clients can stay well informed and up-to-date on any aspect of the administration process.*

*» We provide unsurpassed customer relations through our fully trained claims administrators who answer each call personally and assist our clients with their knowledge and expertise.*

*» We tailor a solution to each class action to ensure compliance with all the court and settlement documents.*

## OUR HISTORY

Strategic Claims Services (SCS) was established in 1999 to provide support in managing, planning, implementing and administering class action litigations. The highly skilled staff consists of Certified Public Accountants, Information Technology professionals, experienced managers, bookkeepers and support staff.

With over a decade of experience in hundreds of cases involving notification, claims processing and distribution. SCS develops a custom solution for each and every client to ensure the highest quality service at a competitive price. SCS is devoted to offering paramount quality control throughout all dimensions of the claims administration process.

As an innovator in claims administration services, SCS is a technology driven organization with a proven track record to handle cases of all sizes in a cost-effective and efficient manner. The firm also provides tailored proposals, data management, and consultation.

## CLASS NOTIFICATION

Strategic Claims Services offers many different options for both notices and claim forms. Based on the Client's requirements, SCS can compare the notice documents to ensure compliance with the settlement documents and the Court's requirements. SCS can also design Claim Forms to ensure Class Members fully understand and comply with the requirements of each settlement.

We can also provide assistance with publishing Legal Notice through newspapers, press releases, and websites. Using our contacts in the publishing industry we can negotiate favorable rates in most major newspapers, allowing the class to benefit from reduced publication costs.

*Our Services Include:*
*» Direct Mailed Notice*

*» Email Campaigns*

*» Notice Design and Proofing*

*» Claim Form Design*

*» Custom Websites for each settlement*

*» Customize Class Data*

*» Updating Out-of-Date Class Data (National Change of Address, Skip-tracing methods)*

*» Providing compliance affadavits/declarations for publications and direct mailing*

"Strategic Claims Services (SCS) provides excellent customer service, and the best price in the business. SCS's attention to detail, high quality work, quick and accurate turn around are the hallmarks of its true professionalism. Ready access to SCS's president, Paul Mulholland, and his personal involvement assures me everything is done right. You can't beat SCS – they're simply the best in the industry."
John F. Innelli
Innelli & Robertson

## DATA MANAGEMENT

One of the most important steps in class action administration is creating and maintaining accurate class lists. Based on the client's needs, we develop a custom database to hold all the class member's pertinent data.

Our Information Technology Specialists can:
*» Convert most data formats for use in the class database*

*» Database Management and Design*

*» Website Design and Updates*

*» Design custom reports for clients based on class data*

*» Removal of duplicate records*

*» Class-wide loss calculations*

## CLAIMS PROCESSING

Our staff is well trained in all aspects of claims processing, with a focus on quality control and customer service. Each claim is reviewed in detail to ensure compliance with all settlement requirements. Using our custom built software, we ensure each claim is calculated accurately and quickly. The scope of our work includes, but is not limited to the following:

» Determining the validity of each claim filed

» Calculation of losses for each claim

» Communication with claimants to cure invalid claims

» Quality assurance for all high value claims

» Final reporting to Counsel and the Court

» Electronic Claim Processing

During the administration process we are in constant communication with counsel concerning all matters. We provide regular status reports from the initial mailing through the final disposition of funds.

# SUMMARY

## SCS Experience and Qualifications

SCS has been in business since 1999. SCS has administered over 500 class action cases over the last 20 years including over 300 security cases, many of which included settlements with multiple securities. SCS has handled over $2 billion in settlement funds. SCS is considered one of the leading notice and claims administrator in the United States and has never had a claim filed against us in any manner. Please visit our website at www.strategicclaims.net.

## Quality Assurance

SCS has never had a claim filed against it. This is the result of our strong quality control procedures. For example, our database will insert the high and low trading prices and reported trading volume (adjusted for market maker trading or specialist trading) for each day in the class period and verify the information in the claims are within these parameters. Additional quality assurance steps include but are not limited to review of any unusual trading on claims; large claims using a P.O. Box as an address; large transactions by non-institutions claimants; review of suspicious documentation by claimants; follow-up phone calls to brokers to authenticate non-institutional purchasers; as well as various random sampling of claims for additional quality assurance review. SCS operates similar to large public accounting firm where a staff member, supervisor, manager and an executive all are involved in reviewing claims. Our quality control department will then perform statistical sampling and other procedures in reviewing claims before signing off. Besides setting up the database to detect inconsistencies, our fraud prevention procedures consists of several steps including a sampling of claims to verify the supporting documentation is authentic (i.e. contact brokers); performing a sampling of skip tracing to make sure that social security numbers and names are a proper match as well as other procedures. In addition to our list of fraudulent claimants from other cases, we communicate with the FBI for any updated list of fraudulent claimants from previous cases.

SCS has a variety of security measures in place to ensure all personal information is kept safe and secure. These measures include, but are not limited to, SSL encryption of all data submitted through our website; internal monitoring of all computer usage by employees; live antivirus scanning of all files received/sent along with weekly updates and scanning of all servers and computers on our network; password protected and restricted access for employees working with personal data; use of a monitored and secure VPN for remote access; daily, weekly and monthly backups to secure offsite storage; and 24/7 notifications to immediately address any irregularities.

# **PAUL MULHOLLAND, CPA**
## (CURRICULUM VITAE)

Mr. Mulholland is the President and founder of Strategic Claims Services (SCS) in April of 1999. SCS is a litigation support firm specializing in the administration of class action cases and in providing damages analyses in class action matters. SCS has administered over 500 class action settlements and calculated over 150 damage analyses since its inception. The Company also specializes in the preparation and compliance of federal and state income taxes for Qualified Settlement Funds. For more information on SCS visit its website at **www.strategicclaims.net**.

From 1992 to 1999, Mr. Mulholland was Senior Vice President of Valley Forge Administrative Services, Inc. Mr. Mulholland was responsible for overseeing all aspects preparation of damage/expert reports in class action matters and for claims processing and administration of class action settlements. He also was responsible for areas of federal and state income taxes for settlement funds and for compliance with all treasury regulations.

From 1986 to 1992, Mr. Mulholland was Chief Financial Officer of Terramics Property Company, a Philadelphia-based regional commercial real estate company with a $150 million real estate portfolio. He was responsible for asset management, financial reporting, budgets, bank and investor liaison, debt restructurings, refinancings, contract negotiations, tax matters, treasury functions and cash management.

From 1984 to 1986, Mr. Mulholland was Chief Financial Officer of American Health Systems, Inc., a $40 million (revenue) nursing home management company, and was responsible for financial reporting, taxation, budgeting, cash management, cost containment, risk management and regulatory reporting.

From 1980 to 1984, Mr. Mulholland was employed at Coopers & Lybrand. He planned and directed audit engagements in a variety of industries, including preparation of financial statements, SEC reporting, and evaluation of internal accounting systems and supervision of staff accountants.

Mr. Mulholland holds a BS in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a member of the AICPA. He serves on several advisory boards and board of directors for several companies in the Philadelphia area. Mr. Mulholland was an adjunct professor of accounting and finance at Neumann University located in Aston, PA.

PAUL MULHOLLAND, CPA
EXPERT TESTIMONY AND DEPOSITIONS

**Expert Testimony:**

Celia L. Hale., et al., v. Wal-Mart Stores, Inc
Jackson County, Missouri
Case No. 01-CV-218710 (Division 1)                                     June 2008

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                              June 2004

Barter v. Southmoore Golf Associates                         March 21, 2000 and
(Common Pleas of Northhampton County (No. 199-C-1815)        March 22, 2000

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)    March 1995

**Depositions:**

Fosamax Products
Liability Litigation No. 1:06-MD-1789 (JFK)
(MDL No. 1789)
USDC for the Southern District of New York                    June 14, 2007

Aredia and Zometa Products
Liability Litigation No. 3:06-MD-1760
(MDL No. 1760)
USDC for the Middle District of Tennessee
at Nashville                                                  May 31, 2007

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                     June 2004

In Re: Curative Health Services, Inc. Securities Litigation
(Master File No. CV99-2074) United States District Court
Eastern District of New York                                 February 2002

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)    January 1995

**Mediation Presentation:**

Alibaba Group Holding Limited Securities Litigation
Civil Action 1:15-md-02361 (CN)
USDC Southern District of New York
Mediation Presentation to Honorable Layne R Phillips          March 2019

| Case Name | Case Number | District Court |
|---|---|---|
| Castillo IV v. 6D Global Technologies, Inc., et al., | Case No. 15-cv-8061-AJN (S.D.N.Y.) | Southern District of New York |
| Brendon v. Allegiant Travel Company., | Case No. 2:18-cv-01758 (D.Nev.) | District of Nevada |
| Pritchard v. Apyx Medical Corp., et al., | Case No. 8:19-cv-00919-SCB-AEP | Middle District of Florida, Tampa Division |
| In re China Mobile Games & Entertainment Group, Ltd Securities Litigation | Case No. 1:14-cv-04471-KMW (S.D.N.Y.) | Southern District of New York |
| Kachun Wong v. Baker Tilly Hong Kong, Ltd., | Case No. 14-cv-9959-CBM | Central District of California |
| Guangyi Xu v. ChinaCache International Holdings Ltd., | Case No. CV15-07952-CAS(RAOx), (C.D. Cal.) | Central District of California |
| Pepe v. Cocrystal Pharma, Inc., et al., Case No. 2:18-cv-14091 (D.N.J.) | Case No. 2:18-cv-14091 (D.N.J.) | District of New Jersey |
| Norman Healy v. Arben Kryeziu, et. al., | Case Number BC 624918 | Superior Court of the State of California, Los Angeles County |
| In re ForceField Energy, Inc. Securities Litigation | Case No. 15 Civ. 3020 (S.D.N.Y.) | Southern District of New York |
| Hull v. Global Digital Solutions, Inc., | Case No. 3:16-cv-05153-FLW-TJB (DNJ) | District of New Jersey |
| Romero v. Growlife, Inc., et al., | Case No. CV14-3015-CAS (JEMx) | Central District of California |
| In re Jumia Technologies AG Securities Litigation | Case No. 1:19-cv-4397 (S.D.N.Y.) | Southern District of New York |
| Guyer v. MGT Capital Investments, Inc., | Civil Action No. 1:18-cv-09228 | Southern District of New York |
| In re Montage Technolgy Group Limited Securites Litigation | Case No.: 3:2014-cv-0722 (SI) | Northern District of California |
| Lifschitz v. NextWave Wireless Inc., et al., | Case No. 08-cv-1697 (S.D. Cal.) | Southern District of California |
| Allen v. PixarBio Corporation, et al., and Schnieders v. Reynolds, et al., | Case No. 2:17-cv-00496-CCC-SCM (D.N.J.) and Case No. 2:17 | District of New Jersey |
| Too v. Rockwell Medical, Inc. et al. | Case No. 1:18-cv-04253 | Eastern District of New York |
| In re Silver Wheaton Corp. Securities Litigation, | Master File No: 2:15-cv-05146-CAS-PJWx | Central District of California |
| Delarosa v. State Street Corporation, et al., | Case No. 17-cv-11155 (D.Mass) | District of Massachusetts |
| In re Tangoe, Inc. Securities Litigation | Case Number 3:17-cv-00146 (D. Conn.) | District of Connecticut |
| Bai v. TCP International Holdings, Ltd., et al. | Case Number 1;16-cv-00102 | Northern District of Ohio |
| Twitter, Inc. Securities Litigation | Case No. 16-CIV-02228 | Superior Court of the State of California, County of San Mateo |
| UDF IV and UDF V Settlements | Case No. 3:15-cv-4030-M | Northern District of Texas |
| In Re USA Technologies, Inc. Securities Litigation | Case No. 2:19-cv-04565 (E.D. Pa.) | Eastern District of Pennsylvania |
| In re Velti plc Securities Litigation, | Master File No. 3:13-cv-03889-WHO (N.D. Cal.) | Northern District of California, San Francisco Division |
| Byrne v. Westpac Banking Corp., et al. | Case No.: 3:20-cv-00171-AC | District of Oregon |

**EXHIBIT C**

| Notice Procedures | Estimated Adminstration Costs |
|---|---|
| **Fee:** | |
| Review of Settlement documents, assist in preparation of Plan of Allocation | $6,750 |
| Website, phone and case set-up; type-set Long Notice and Summary Notice | $5,000 |
| Communication with brokers and nominees to obtain beneficial holders; review of files submitted by brokers/nominees; follow-up procedures with brokers | $5,500 |
| Skip-tracing, re-mailings, database updated, phone and email communication with Class Members | $6,000 |
| Declarations, periodic reporting handling exclusions | $5,750 |
| Project management | $5,000 |
| **Expenses:** | |
| Publication costs | $5,500 |
| Broker and nominees mailing | $2,100 |
| Postcard printing and postage | $24,900 |
| Broker/nominee charges for providing beneficial holders | $12,000 |
| Re-mailings, phone, website, skip-tracing, copying, overnight charges, NCOA  and P.O. Box | $1,500 |
| **Total** | **$80,000** |