```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARK S. FRATER, et al.,

                Plaintiffs,

          v.                          19 cv 230 (LJL)

SOGOU INC., et al.,

                Defendants.

------------------------------x
                                      New York, N.Y.
                                      November 25, 2020
                                      11:00 a.m.
Before:

                    HON. LEWIS J. LIMAN,

                                      District Judge

                    APPEARANCES

LEVI & KORSINSKY, LLP
BY:  SHANNON LEE HOPKINS
     STEPHANIE BARTONE
        -AND-
POMERANTZ LLP
BY:  CARA JOY DAVID
     Attorneys for Plaintiffs

THE ROSEN LAW FIRM, P.A.
     Attorneys for Movants
BY:  JACOB ALEXANDER GOLDBERG

GOULSTON & STORRS, P.C
     Attorneys for Defendants Sogou Inc. and Sohu, Inc.
BY: RICHARD J. ROSENSWEIG
     NICHOLAS CUTAIA
     JOSHUA LOONEY

MORGAN, LEWIS & BOCKIUS LLP
     Attorneys for Underwriter Defendants
BY:  KENNETH IAN SCHACTER
     CHARLENE S. SHIMADA
     ROBERT O'LEARY
```

THE COURT:  Good morning.  This is the judge.  This is Judge Liman.

I would just like to reiterate two things that my courtroom deputy said or maybe three things.  The first thing is that for any counsel who is going to be identifying herself or himself to the Court speaking to the Court, you should identify yourself before you speak.

Second, please try to speak clearly so that the court reporter and I can pick up what you're saying.  And the third point is the point about muting the phone if you're not going to be addressing the Court.

Who do I have who will be addressing the Court for plaintiffs?

MR. GOLBERG:  Good morning Your Honor.  Jacob Goldberg from The Rosen Law Firm.

THE COURT:  Good morning, Mr. Goldberg.

For defendants?

MR. ROSENSWEIG:  Your Honor, this is Richard Rosensweig from Goulston & Storrs.  I don't plan on making any presentation to the Court for not opposing the motion, but I am available for any questions from the Court.

THE COURT:  Thank you, Mr. Rosensweig.

MR. SCHACHTER:  Your Honor, I'm sorry to interrupt.  This is Kenneth Schachter from Morgan, Lewis representing the underwriter defendants.  Like Mr. Rosensweig, I am available to

answer questions which the Court finds is necessary.  Thank you.

THE COURT:  Do I have counsel for any party who has not been identified?  I don't need to know the name of every counsel who is on the phone.  But if there is a party who is represented who has not had a lawyer for them identify herself or himself, now would be the time.

Hearing nobody, let me go through the questions I have.  The first observation I'd like to make is to congratulate the parties for reaching the settlement.

I do have a couple questions that go to the settlement and to preliminary approval.  Mr. Goldberg, I propose to go through them one by one with you.  But I would ask Mr. Rosensweig and Mr. Schachter obviously to pay close attention.

I may be asking you about provisions of the settlement and whether my understanding is correct.  If you say something that they disagree with, my expectation is that they will pipe up.

The first point has to do with the class definition. I have to confess this is something that I've thought about for a little bit of time.  Let me first ask if my understanding is correct, Mr. Goldberg, which is that as a practical matter, anybody who purchased Sogou ADSs from the time period November 9, 2017, to March 4, 2018, will be permitted to

recover in the settlement.

MR. GOLBERG:  Your Honor, Jacob Goldberg.  That is correct.

THE COURT:  So my question for you has to do with the class definition.  You've tracked Section 11, and I'm not quibbling with that.  But my concern is how a putative class member who bought in the secondary market is to understand whether he or she is a member of the class.

In other words, how are they supposed to parse the language of "traceable to the offering"?  It's language that lawyers puzzle over.  From the perspective of an ordinary shareholder, I'm not sure that they would know whether the shares that they purchased were in or traceable to the offering or not.

So I guess there's a question there about how a shareholder is to understand and maybe also a suggestion that the parties might consider revising the class definition so that it would include anybody who is in the Section 11 class but also would more clearly state, Mr. Goldberg, what you just said, which is that anybody who purchased ADSs from November 9, 2017, to March 14, 2018, would be included.  That might make the notice easier to understand for class members.

MR. GOLBERG:  Your Honor, thank you.  This is Jacob Goldberg.  On page 1 of the long-form notice, we have listed in bold and all caps "THE CLASS."  And it is persons who acquired

the ADSs of Sogou between November 9, 2017, and March 14, 2018.

We believe that expressing the time frame during which an investor acquired her or his shares, ADSs, in Sogou well expresses who should file a claim. I don't think -- we give this constant thought, your Honor.

I don't think that excluding the "pursuant to" or "traceable to" the offering -- I don't think that we can exclude it from the class, given that this is only a 1933(f) case.

I expect that Messrs. Rosensweig, Schachter, and I and our colleagues can discuss whether we can tweak the language. But I don't think we can exclude that phrase from the definition of "THE CLASS."

THE COURT: What did you want me to look at in the long-form notice, Mr. Goldberg?

MR. GOLBERG: Sure, your Honor. Again, Jacob Goldberg, your Honor. It's on page 1 of 29 in docket number 95-3. That is the long-form notice. And as your fee under the heading of Notice of Pendency, it lists if you purchased or otherwise acquired these American Depository Shares between November 9, 2017, and March 14, 2018. And then we have the language from Section 11 itself.

THE COURT: Right. That actually is what I was identifying as a potential issue which is that frankly if I received this notice, I might ask myself a question.

Let's say I purchased shares on January 1, 2018, in the secondary market. I might ask myself whether I was a member of this class or not. I would read that language to say, well, one condition for being a member of the class is I have to have purchased between November 9, 2017, and March 14, 2018. That's very well and good. I satisfy that.

Condition number two is I have to have purchased pursuant and/or traceable to the registration statement.

How do I know whether I have purchased pursuant or traceable to the registration statement?

Maybe if I read deep within your brief, I can see a footnote that says that Sogou issued additional shares after March 14, 2018, and anybody who purchased after March 14, 2018, cannot be ascertained to be a member of the Section 11 class, drawing the negative inference that everybody who purchased before is a member of the Section 11 class.

But short of that -- to put it another way, the purpose of notice and the purpose of a class definition is for people to clearly understand whether they are members of a class and might be bound by it. I am a little bit troubled that just stacking the statutory language does not provide sufficient guidance.

MR. GOLBERG: Your Honor, Jacob Goldberg. May I suggest a tweak? And my friends will chime in if they disagree. One of the things we might be able to do -- and

you'll pardon me for thinking aloud in response to your question -- is to state:  "If you purchased during this period, you purchased pursuant to and/or traceable to Sogou's registration statement."  And then a period after the 27 IPO followed by a new sentence saying:  "If you were also damaged thereby, you may be entitled to payments."

THE COURT:  So, Mr. Goldberg, I'm not going to put the defendants on the spot.  I'm going to identify this as an issue for the two of you to think about and see whether there are revisions that would be acceptable to the parties and to the clients that would address my concern or to tell me my concern is not well-founded.

But I'm not going to make the defendants, who have clients, respond on the spot.  And you've got clients.  So I'm not going to make you respond on the spot.  But you see the point that I'm raising.

MR. GOLBERG:  We do, your Honor, and we will confer.

THE COURT:  The second thing that I wanted to highlight and just make sure that there is no problem from your perspective or the defendants' perspective has to do with how the hearing is to be conducted.

How much time after preliminary approval of the settlement do you suggest the settlement hearing should be?

MR. GOLBERG:  Jacob Goldberg, your Honor. Approximately 100 days.  So I had calculated, for example, that

KCRVL019 REMOTE VIA TELEPHONE

if the Court were to preliminarily approve today, around March 5.  But 100 days I think is sufficient.

THE COURT:  That's kind of what I was thinking also. In line with that, I think we probably will still be in the pandemic situation if let's say the hearing takes place in late March.

Therefore, I'd like to do the hearing telephonically and provide notice, make sure that there's notice, in what's sent to putative class members of the call-in number for the hearing.

Do you see any problem with me doing the hearing entirely telephonically?

MR. GOLBERG:  Your Honor, Jacob Goldberg.  I do not. In paragraph 5 of the proposed preliminary approval order, which is docket number 95-2, you'll see that we had added that: "The Court may conduct the hearing either in person, telephonically, or via videoconference."

Typically what we have been doing, your Honor, in the last eight months is inserting this language in the place where we would normally include the address of the court, insert the Court's ability to choose the method or the venue for the hearing, so to speak, and to then post on the settlement administrator's website and to provide to any class member who may object to the actual form the hearing will take on the day in question.

But if your Honor wants to predetermine telephonically, we can certainly resubmit the proposed preliminary approval order with the means of hearing your Honor prefers.

And then there will be no issue. We will put it in also in both the long-form notice, the postcard notice, and the summary notice.

THE COURT: That's what I would like to do. The dial-in information will be the same dial-in information that the parties used for this conference. We'll fill in the date and the time when you resubmit the settlement papers. But when you resubmit them, please indicate that the hearing will be telephonic and provide this call-in number and pass code.

MR. GOLBERG: Your Honor, Jacob Goldberg. We will do that.

THE COURT: Good. The next question, Mr. Goldberg, has to do with the notice provisions. And I was hoping you could explain to me how the postcard notice is going to work and the long-form notice and as well indicate to me whether there is precedent for only mailing the postcard notice and emailing the long-form notice.

MR. GOLBERG: Your Honor, Jacob Goldberg. There is precedent. Over the last I think two years, we have been submitting to courts postcard notice which materially lowers the costs of administration.

To print and to mail long-form notices is considerably more costly than the postcard notice. So what we do, your Honor, when we receive from an institution their lists of shareholders, we send those persons the postcard notice.

And we tell them if they would like a copy of the long-form notice, that we will then mail that to them or they can find a copy of the notice and the proof of claim and this Court's order on the settlement administrator's website where they can also submit their claim electronically.

So we have provision to send to any individual shareholder who prefers the long-form notice. Or with respect to most cases, your Honor, there are many -- many shares are owned by institutions.

And as such, the institutions submit claims electronically. They get notice electronically. And sending any individual institution a long-form notice is sort of gilding the lily.

So what we have found is response rates have not dropped with a postcard notice informing individual shareholders to seek out the settlement administrator's website to review the long notice and to file a proof of claim.

So because we have not seen a dropoff in response rate and in fact, in some instances -- and this is anecdotal, your Honor -- we've seen them go up, we feel that the postcard notice is the best, most cost-effective way to alert individual

investors with the backup that anyone who requests a paper copy of the notice will receive one as quickly as the settlement administrator can send it.

THE COURT:  Mr. Goldberg, when you resubmit, you might give me some cites for other cases where the postcard notice has been used.

Do you have in front of you the actual postcard notice you submitted it?  It's docket number 95-5.

MR. GOLBERG:  Jacob Goldberg.  I do, your Honor, yes.

THE COURT:  I also have some comments about that which maybe you can discuss with the claims administrator.  The first page that says:  "Court-ordered legal notice forwarding service requested" -- do you have that?

MR. GOLBERG:  I'm on the first page.  Yes, your Honor. I see that.

THE COURT:  I am a little bit concerned that the language there is not completely balanced.  It says:  You may be entitled to a payment.  This notice may affect your legal rights."

In the long-form notice, you have some language in bold that makes it clear to putative class members that the settlement could preclude them.  And you might want to take a second look at the language that you've got on that first page so it's a little bit less of an advertisement and more of a little bit of a warning that this is an important legal notice

that, if they don't act, could affect their legal rights.

And then the second point that I've got is on the second page. The language that I think is pretty critically important begins: "If you do not want to be legally bound by the settlement, you must exclude yourself."

That's a little bit buried placed where it is in the second sentence of the third paragraph. It may require a little bit of engineering, but if you are able to break that out separately or make that a little bit clearer to investors, I think the notice would be better.

MR. GOLBERG: Your Honor, Jacob Goldberg. If we highlighted that section in bold and italic or as the Court directs, do you think that would suffice?

THE COURT: It might to do it in bold. But why don't you take a look at it and talk to your claims administrator and see what you can do to make it a little bit clearer to the investors.

MR. GOLBERG: Jacob Goldberg, your Honor. We will do that.

THE COURT: Okay. The next question has to do with the administrative expenses of $250,000 and how you chose the claims administrator. Let me ask my questions all together with respect to that.

It's how you chose the claims administrator, how you chose the $250,000, and in particular also whether I should

have some say in the expenses that are for the claims administrator.  But the order that you've submitted provides that the claims administrator can spend up to $250,000 without the approval of the Court.

That's a pretty significant portion of the total settlement.  And it concerns me that I don't really know how that number was arrived at, who these folks are, and whether that figure is reasonable

MR. GOLBERG:  Your Honor, Jacob Goldberg.  Because of the size of this settlement, we did not put out for bid the administration in this case.  What we have found -- what my firm has found -- is that Strategic Claims Services, which has been in business I believe since 1999 and has administered, if my memory serves me correctly, several hundred class action settlements, is the most effective and efficient.

However, your Honor, the reason for the $250,000 is even as the amount of this settlement seems small, the number of ADSs outstanding and the potential that some members of the class may not have bought in the initial offering but in the aftermarket but, as we discussed earlier, are still members of the class, there may be many, many proofs of claim in this case.

So the amount reflects the number of claims that we, together with our administrator, discussed it may receive.  So, again, the claims could be fairly many relative to a stock that

potentially had 15 million shares outstanding, your Honor, in a short class period.

THE COURT:  Mr. Goldberg, if that's so, shouldn't there be a provision in the settlement papers that would require the claims administrator to get the approval of the Court to spend at least -- we can figure out what the sum is to provide notice.  But for figures about that, then shouldn't Court approval be required?  Because otherwise, what I'm doing is giving you and the claims administrator a blank check.

I'm not suggesting that you'll misuse the class' money, but I am suggesting that without there being an independent check on it, there is no real incentive to do this as inexpensively as possible and potentially an incentive to use the full $250,000.

MR. GOLBERG:  Understood, your Honor.  This is Jacob Goldberg again.  A certain amount is necessary to ensure some degree of flexibility in the beginning without having to return to the Court within three weeks or four weeks of the notice going out.

So, for example, your Honor, if we put the amount in this order too low, we would be back to the Court very quickly because obviously printing and postcard notices and obtaining lists from institutions, once we receive the names of shareholders, may be a large portion of the initial expense of the settlement administrator.

Another court recently, however, said to us that the $250,000 -- so what we intend, your Honor, is that -- and I think this is what we state -- the administrator may spend up to $250,000 without further order of the Court.

What another court has recently done, your Honor, is said make it $100,000.  Come back to me at $100,000.  And we are absolutely prepared to come back to the Court.

But I don't think it serves anyone's interest to make it so low that we would be coming back to the Court serially.

THE COURT:  Mr. Goldberg, I agree with that.  I'm not sure whether I agree that $100,000 is the right number.  I don't think I've got enough information in front of me to know whether $100,000 would be too much or too little.

But conceptually, I believe that the number should be large enough so that the claims administrator can, without going back to the Court, perform the notice function and send out enough postcards and mailings and do whatever is necessary to address some minimum number of claims that would come in.

I expect that there are some fixed costs that the claims administrator will have no matter what the number of claims are.  And then conceptually, the notion would be for figures above that that will be dependent upon the number of claims that the claims administrator receives, those would be subject to court approval where the claims administrator would have to justify to me why, based upon the number of claims, the

sum that it expects to spend is reasonable.

So you can work on that and get back to me on that.

MR. GOLBERG:  Your Honor, this is Jacob Goldberg.  We will do that, including we will speak with our administrator about submitting a declaration that assists the Court in assessing the reasonability of the figure.

THE COURT:  That would be very helpful.  Thank you, Mr. Goldberg.

The next question has to do with your quick-pay provision and the service awards.  I am not prepared to express an opinion today about whether the quick-pay is appropriate or not.  I think I will want some briefing on that at the time of the final settlement hearing.

But my question to you is whether approval of the settlement and it becoming final is contingent on my agreement with the quick-pay provision, whether if instead I say that attorney's fees should come either entirely or in part when the class gets its money.  That would be independent of the settlement, and settlement would still be binding on the parties.

MR. GOLBERG:  Your Honor, Jacob Goldberg.  We will be pleased to address that when we move for final approval and separately move the Court to approve fees and expenses.

As the Court will see in the stipulation of settlement -- and the provision escapes me, your Honor.  I

don't want to read through the whole thing.

But as we have stipulated, the Court's approving a fee and reimbursement of expenses or any other item that isn't the settlement is severable from whether it's finally approved.

So the Court could issue final approval but consider further whether and what to award counsel. So those things are severable. And we will submit to the Court: One, a motion for final approval; and two, a separate motion for fees and reimbursements of expenses.

THE COURT: Mr. Goldberg, am I right that whether and to what amount to award fees is severable but the question of when fees ought to be paid is also severable?

MR. GOLBERG: Jacob Goldberg, your Honor. Because it is a fee issue, yes. If the Court orders a different payment schedule, the Court will issue an order, and we shall comply.

THE COURT: Good. Mr. Goldberg, does that also apply to the service awards? I was not clear, when the service awards would be paid, whether those would be out of the gross settlement fund or the net settlement fund.

And if I decide it should be as part of the net settlement fund when the class members get their pay, is that also severable?

MR. GOLBERG: It is, your Honor. Everything that is not part of final approval of the settlement qua the settlement is severable. And the Court will decide and issue an order on

those things.

Some courts, your Honor, issue a combined order; other courts issue separate orders. That's up to your Honor. But the issue of fees is severable from final approval. The issue of awards to plaintiffs is severable from final approval.

THE COURT: The next question I have has to do with the Lawyers' Committee for Civil Rights. You should all know that I was a director of the Lawyers' Committee for Civil Rights some time ago.

My guess from looking at this settlement is that it's unlikely that there would be monies left over that would go to the Lawyers' Committee for Civil Rights, but you never know.

The question to you, Mr. Goldberg, is whether under the Second Circuit law it's appropriate for the money to go to the Lawyers' Committee for Civil Rights or whether there needs to be some showing that the organization to which the money goes has a relationship to either the plaintiff class or the objectives of the lawsuit.

MR. GOLBERG: Your Honor, Jacob Goldberg again. With respect to cy-près, you will forgive me. I am right now not as familiar with the Second Circuit's cy-près law as I will be at final approval.

I suspect, as the Court has noted, that there will be very little left. Effectively what happens, your Honor, is when the settlement amount dwindles to an amount that becomes

administratively too expensive where the costs of checks, for example, would exceed the amount that the checks would contain, it is appropriate to donate, based on the cy-près doctrine, the remaining funds to an organization.

We specified that because we did.  It can be a number of organizations, but we're happy to brief that in the final approval brief so that if the Court wishes to issue a prospective order with respect to a remaining sum, it could do so at the time.

THE COURT:  So let me ask you:  Is cy-près severable? If I determine that I can't give any remaining funds to the Lawyers' Committee but it needs to go to -- I don't know -- some shareholder rights organization or something like that, will that necessitate the parties to go back and draft up a new settlement or give either party a right to get out of the settlement?

MR. GOLBERG:  No, your Honor.  The settlement at that point will be effectively finalized.  And this is just a means of distribution when further distribution becomes too expensive.  So this typically occurs when the settlement administrator has attempted at least twice to send checks.

THE COURT:  Mr. Goldberg, let me interrupt you.  I understand the mechanics.  I'm asking about the agreement. It's a term of the agreement that if there is anything left over, as a matter of cy-près, it goes to the Lawyers'

Committee.

It's possible that as a result of looking at Second Circuit cases, I'm going to have to strike out that it goes to the Lawyers' Committee and either say the Court decides where it goes or give the parties the opportunity to suggest some other organization.

My question really is just whether that is the kind of thing that is a material term of the settlement or whether in fact it's severable from the settlement or not material.

MR. GOLBERG:  Jacob Goldberg again, your Honor.  There is no right of reversion in this settlement.  So where any remaining fund goes is a matter for the Court to decide.

I am certainly happy to consult with defendants' counsel, and I know that among our firms we can submit to the Court some suggestions if that is necessary.

But there is no right of reversion in this settlement. So the destination of any remaining funds is immaterial to the settlement, as long as we distribute as much as possible to the members of the class.

THE COURT:  Okay.  That's very helpful.  When you brief the final approval, you might just add some discussion of whether I can make the Lawyers' Committee the recipient of the cy-près fund.

As I mentioned, I have no negative view about the Lawyers' Committee for Civil Rights.  In fact, I've got a very

positive view of the Lawyers' Committee for Civil Rights.

If you tell me that the law permits it to be identified as a cy-près recipient, I'm not going to quarrel with that law.  I just want to make sure that I'm doing what I'm doing consistently with the Second Circuit law which you will all look up and make sure that what is proposed is lawful.

The last question that I've got for you, Mr. Goldberg, has to do with the language that's used to describe the effect of the settlement on the California proceeding.

Unless I'm mistaken -- you'll tell me if I'm mistaken. Unless I'm mistaken, class members who exclude themselves from this class would still be members of the California case and permitted to continue to prosecute the claim in California, subject of course to the blow provision that you have not disclosed to me.

Is that right?

MR. GOLBERG:  Your Honor, Jacob Goldberg.  My understanding is yes.  I'm sorry, your Honor.  If the Court approves this settlement, it will have ascertained that there is a class.  Any shareholder who opts out still has her or his own claim.

Our understanding is that this settlement releases all claims against the released person.  And therefore -- I'm trying to think of this in the context of *China Agritech*, your Honor.

THE COURT:  Yes.

MR. GOLBERG:  And whether any person who has not yet filed her or his own action and is not time or reposed barred may be barred from filing a new action, and this Court may consider the California case another class action.

And therefore, because of the release, the impact is that anyone who could -- not anyone.  I beg your pardon, your Honor.  Any investor who has a claim and excludes itself from this case, this settlement class, must be able to file her or his own case, individual case.  So I think the intended impact on the California case is to settle all claims that those plaintiffs have raised.

THE COURT:  If the defendants could address this.  My concern really is with the accuracy of the notice and whether a person might feel coerced to participate in this settlement by the language that you currently have that says that:  "All claims in the California action will be released as a result of this settlement," which seems to reject the theoretical possibility that somebody could participate in California on an individual basis.

MR. ROSENSWEIG:  Your Honor, this is Richard Rosensweig for Sogou and Sohu, two of the defendants in that California case.

The class, as defined in that case, is the same class as defined in this case.  So I don't see how it would be

possible for that case to go forward as a class action of the same class which would be released in this case.

But you are correct, your Honor, that if individuals excluded themselves from this settlement, they could go forward either through individual actions or they could try to organize themselves into an opt-out class. But that would be a different class from this case.

But the class action that's currently pending is on behalf of the very class that is represented by plaintiffs' counsel here. And in fact, the California court stayed the California case because of the overlap between the two cases and said that this case should go forward as New York had much more of a connection with the dispute than the California forum in which that case was filed.

Now, the plaintiffs in the California case have filed a motion to lift that stay, given the dismissal of this case and then the subsequent settlement. And that issue has been briefed. And we will appear before the California court I believe on December 9., and the California judge can decide whether she will lift that stay or not.

But at the end of the day, if class members do not exclude themselves, they would be bound by the settlement, even though they are theoretically members of the putative class as defined in the complaint in the California case.

THE COURT:  That's very helpful, Mr. Rosensweig.  You

might take a look back at some of the language in the notice. I might be mistaken on this, but I don't think it is limited to the California case proceeding as a class action.

And I would think it would be important to have some form of a qualifier that indicates that the approval of the settlement here will be dispositive of that case proceeding as a class action but then adding that people who opt out of this case would have the right to proceed on an individual basis.

My concern again is that the notice be clear. I don't have the language in front of me, but that language did raise some eyebrows with me.

MR. GOLBERG: Your Honor, this is Jacob Goldberg. May I refer the Court, if you have it before you, to document 95-3. On page 17, paragraph 32, of the notice, again which states: "To all who receive it and review it, the settlement of this action would, if approved, result in the release of all claims asserted in the California litigation. And both plaintiffs and members of the putative class in the California litigation are members of the settlement class who may either request exclusion or participate in the settlement class by objecting to the settlement and/or filing a proof of claim."

So if the Court could give us some guidance as to what additional language it might want in that paragraph, that would be helpful.

THE COURT: Mr. Goldberg, what I'm thinking about is

language to the effect that persons who exclude themselves from this class would have to proceed in the California case on an individual basis.

You all are closer to this obviously than I am. So I'm just identifying the problem. I'm not going to write the language for you of all now. But what I am asking you to do is to look at that language to ensure that it is sufficiently clear to a person who is a member of both putative classes that the impact of the settlement here, number one, will be that California will not proceed as a class; but number two, will not preclude that person from participating on an individual basis in California or elsewhere.

There may be other law that would prevent that person from proceeding in California or elsewhere, but the approval of this settlement will not prevent a member of the putative class in California from proceeding on an individualized basis.

MR. GOLBERG: Your Honor, this is Jacob Goldberg. I am happy to look at that with Messrs. Schachter and Rosensweig. I would say, your Honor, that the discomfort rattling around in my head relates to the notice coming close to giving legal advice, which I think we want to avoid. But we will consider it.

THE COURT: Mr. Goldberg, I agree. I think the language that you read to me before has the potential to be misleading when it says "will resolve all claims" because in a

way, it doesn't resolve all claims of all putative members of the California class.  It only resolves the claims of the putative class members who do not exclude themselves from this settlement.

MR. GOLBERG:  Your Honor, this is Jacob Goldberg.  My confusion relates to your segregating the two cases in the two classes.  Once the Court finally approves this settlement, all persons who purchased in or traceable to the offering, as we've described it and as we will tweak pursuant to the Court's earlier suggestion, all persons will be bound by this settlement, including, your Honor, the plaintiffs in the California action, unless they exclude themselves.

THE COURT:  Mr. Goldberg, we don't have a different view.  My point is to focus on the "unless they exclude themselves."  A person does have a right to exclude him or herself.

MR. GOLBERG:  Jacob Goldberg.  Yes, your Honor.

THE COURT:  Okay.  I think that takes me through the comments that I've got.  If you make changes with respect to the class definition or the hearing or the administrative expenses, there may be conforming changes you need to make to the notices that you've given to me.

There is actually one thing I wanted to look at on the proposed order, and then I'd like to set a date for you to submit revised papers to me.  Give me one moment.

(Pause)

THE COURT: On the proposed order, paragraph 22, that's the language that says that the administrative fees up to $250,000 can be paid without further order of the Court. And that, Mr. Goldberg, you'll take a look at and give me some alternative language.

Mr. Goldberg, I'm sure that you will want to get papers to me in advance of the hearing in California, and I'll be able to turn to it right away after you give me the revised papers.

How much time will you need to revise the papers and give me the authority that I've asked for?

MR. GOLBERG: Your Honor, Jacob Goldberg. May I ask do you want us to resubmit the entire motion package or just submit individual documents that require changes?

THE COURT: I don't think I need the entire package. I don't need you to resubmit the brief, for example. But I think what we've discussed will affect all of the things you want me to approve, other than the brief.

I think it may affect the stipulation of settlement. It's obviously going to affect the language in the notice. There's language in the order. So those documents I'm fine for you to send a letter to me that addresses each of the points that I've raised and then attaches the relevant documents, including a new proposed order.

MR. GOLBERG:  Your Honor, this is Jacob Goldberg.  We will do that.  Given the holiday tomorrow, may I suggest that we give the parties two weeks to accomplish that?

THE COURT:  Well, that puts you at December 9.

Do you really want to do that?  I would be okay with it.  But if I'm the judge in California, you're going to have a hearing in California where the parties are not going to know whether I've given preliminary approval to this settlement.  So I think you want shorter than two weeks.

MR. ROSENSWEIG:  Your Honor, Richard Rosensweig.  I agree.  I don't want to put plaintiffs' counsel under any undue stress in terms of timing.  My proposal would be to try to submit this material to you by Friday, December 4, which would allow you two working days the following week before the December 9 hearing.  That would be my proposal.

Again, if Mr. Goldberg -- if that's impossible for his schedule, I don't want to --

THE COURT:  I think December 4 is about the latest that you can get it to me and have me grant preliminary approval before December 9.

So, Mr. Goldberg, I'll set December 4, unless you want to give me even earlier than that.

MR. GOLBERG:  So, your Honor, again, Jacob Goldberg. If you would set the 4th.  I will make myself available this Friday for as much time as defendants wish to discuss the

issues the Court has raised.  And hopefully we can get them to the Court sooner, your Honor.

THE COURT:  So December 4 at 5:00 p.m. for the submission of the revised papers, but you'll try to get them to me earlier than that.

Mr. Goldberg, is there anything else we need to address today?

MR. GOLBERG:  Your Honor, I don't think so.

THE COURT:  Mr. Rosensweig, is there anything else we should address today?

MR. ROSENSWEIG:  No, your Honor.  Not from me.  Thank you.

THE COURT:  Is it Mr. Schachter?

MR. SCHACHTER:  It is, your Honor.  We have nothing else to raise with the Court.  Thank you.

THE COURT:  Thank you, all.  This has been extremely helpful.  It's interesting.  I look forward to you getting me the papers.  I think, once you make those changes, my expectation is that I will give you preliminary approval.

Just make sure, Mr. Goldberg, that with respect to the claims administrator, the numbers are not too high because I would rather not have another hearing with the claims administrator.

So go back to them and ask them to give you a number that is reasonable to do whatever they initially need to do but

not so high that it raises concerns with me about how we're spending the class' money.

All right.  Thank you, all.  Have a great Thanksgiving.  Stay safe and stay healthy.

(Adjourned)