## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIAJIA LUO, *et. al.*, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SOGOU INC, SOHU.COM, INC., TENCENT HOLDINGS LIMITED, XIAOCHUAN WANG, CHARLES (CHAOYANG) ZHANG, YUXIN REN, JOANNA (YANFENG) LU, BIN GAO, JOSEPH CHEN, JANICE LEE, JAMES (XIUFENG) DENG, CHI PING MARTIN LAU, DONALD J. PUGLISI, J. P. MORGAN SECURITIES LLC, CREDIT SUISSE (USA) LLC, GOLDMAN SACHS (ASIA) L.L.C., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LTD., <br><br> Defendants. | Case No. 1:19-cv-00230-LJL <br><br> CLASS ACTION <br><br><br> Judge:    Hon. Lewis J. Liman |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) APPROVAL OF THE PLAN OF ALLOCATION; (3) CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES; (4) AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; AND (5) AN AWARD FOR LEAD PLAINTIFFS**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................4

ARGUMENT ......................................................................................................4

I.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL ...................................................................4

     A.     Standard of Review and the Presumption of Approval ...........................4

     B.     The Settlement was Reached After Robust Arm's-Length Negotiations, is Procedurally Fair, and is Entitled to a Presumption of Reasonableness.................6

     C.     Application of the Second Circuit's Grinnell Factors Supports Approval of the Settlement as Substantively Fair, Reasonable, and Adequate ...........................7

          1.     The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement ...........................................................7

          2.     The Reaction of the Settlement Class to the Settlement ............................9

          3.     The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of Settlement.............................11

          4.     The Risks of Establishing Liability and Damages Support Settlement Approval ...........................................................12

               a.     Plaintiffs Faced Substantial Risk Their Appeal Would Be Unsuccessful....................................................12

               b.     Risks Related to Establishing Liability and Damages if the Court's Judgment were Reversed ............................13

          5.     Risks of Maintaining the Action as to Class Certification.........................15

          6.     The Ability of Defendants to Withstand a Greater Judgment...................16

          7.     The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and all the Attendant Risks of Litigation Support Approval of the Settlement ...........................................................16

          8.     Application of the Rule 23(e)(2) Factors Support Approval of the Settlement as Fair, Reasonable, and Adequate ...........................................18

               a.     Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class ......................................18

      b.  The Settlement is the Result of Arm's Length Negotiations ....................................................................19

      c.  The Relief Provided to the Settlement Class is Fair, Reasonable and Adequate ...............................................19

II. THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED.................................20

III. NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ........................................................................22

IV. LEAD PLAINTIFFS' REQUESTS FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE ............23

  A. A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ........................................23

  B. The Requested Fee Award of 25% of the Common Fund is Consistent with Fees Awarded in Comparable Cases in this District and the Second Circuit ........26

  C. The Second Circuit's Goldberger Factors Confirm that the Requested Fee is Reasonable ........................................................................27

    1. Lead Counsel has Devoted Substantial Time and Labor to the Action to Achieve a Positive Result for the Benefit of Class ................................27

    2. The Magnitude and Complexity of the Action Support the Requested Fee ........................................................................28

    3. The Risks of the Litigation Support the Requested Fee ..........................29

      d.  The Contingent Nature of Counsel's Representation ........30

    4. The Quality of Lead Counsel's Representation ..........................31

    5. The Requested Fee in Relation to the Settlement ......................32

    6. Public Policy Considerations Support the Requested Fee ........................33

  D. The Requested Attorneys' Fees are Reasonable Under the Lodestar Cross-Check ........................................................................34

  E. Lead Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained ..................................................36

  F. The Reaction of the Settlement Class to Date Supports the Requested Fee ..........36

  G. Application for Incentive Award to Lead Plaintiff ................................36

CONCLUSION.................................................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
    MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ................................. 32

*Am. Bank Note Holographics, Inc. Sec. Litig*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................. 30

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ......................................................................... 31

*Apac Teleservs., Inc. Sec. Litig.*,
    No. 97-cv-9145 (S.D.N.Y. June 29, 2001) ........................................................ 26

*Apple Comput. Sec. Litig.*,
    No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ............................. 31

*Authors Guild v. Google, Inc.*,
    770 F. Supp. 2d 666 (S.D.N.Y. 2011) ................................................................. 4

*BankAtlantic Bancorp, Inc.*,
    No. 07-cv-61542 (S.D. Fla. 2010) .................................................................... 31

*Basic Inc. v. Levinson*,
    485 U.S. 224, 230-31 (1988) ......................................................................... 33

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299, 310 (1985) ............................................................................ 33

*Bentley v. Legent Corp.*,
    849 F. Supp. 429 (E.D. Va. 1994), *aff'd, Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir.
    1995) .......................................................................................... 14, 31

*Blech Sec. Litig.*,
    No. 94 Civ. 7696, 2000 WL 661680 (S.D.N.Y. May 19, 2000) ...................................... 24

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .................................................................................. 23

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ......................................................................... 24

*Christine Asia Co. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ....................................................... 26

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..................................................................... passim

*City of Providence v. Aeropostale Inc. et al.*,
No. 11 civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015)................................................. passim

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)........................................................................ 16, 17

*Denney v. Jenkins & Gilchrist*,
230 F.R.D. 317 (S.D.N.Y. 2005) ..................................................................... 37

*Dornberger v. Metro Life Ins. Co.*,
203 F.R.D. 118, 124 (S.D.N.Y. 2001) ............................................................. 37

*Ebbert v. Nassau Cty.*,
No. CV 05-5445 AKT, 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) ........................ 15

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)............................................................................ 35

Goldberger v. Integrated Res., Inc.,
209 F.3d 43 (2d Cir. 2000)..................................................................... passim

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................... 34

*Herman v. Legent Corp.*,
50 F.3d 6 (4th Cir. 1995) ............................................................................... 31

*Hicks v. Stanley*,
No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).............................. 33

*Hi-Crush Partners L.P. Sec. Litig.*,
No. 12–cv–8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)................... 35

*IMAX Sec. Litig.*,
No. 06 Civ. 6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012) ............... 24

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)..................... 16

In re Advanced Battery Techs. Inc. Sec. Litig.,
298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................... 5

In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................... passim

*In re Canadian Superior Sec. Litig.*,
No. 09 CIV. 10087 SAS, 2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011)........................ 26

*In re China Med. Corp. Sec. Litig.*,
No. 8:11-1061 JLS (ANX), 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ..................... 30

*In re China Sunergy Sec. Litig.*,
No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...................................... 36

*In re Citigroup Inc. Sec. Litig.*,
No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ........................... 5

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)........................... 7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37
(2d Cir. 2016)............................................................................................................. 6, 7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018)............................................................................ 26

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........... passim

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................................... 21

*In re Gilat Satellite Networks*, *Ltd.*,
No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ...................................... 8

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................................... 7

*In re Heelys, Inc. Derivative Litig.*,
2009 WL 10704478 (N.D. Tex. Nov. 17, 2009)............................................................. 35

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................ 5, 20

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)............................................................................... 9

*In re Marsh & McLennan Cos. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).................... 23, 32

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................................... 21

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ................................................................ 25

*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-CV-02237 JSR, 2008 WL 9019514 (S.D.N.Y. Nov. 25, 2008) ......................... 14

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997)...................... 17, 20

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................ 18

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)........................... 16

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
    238 F. Supp. 2d 480 (E.D.N.Y. 2002) ......................................................... 35

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y.2008).......................................................... 26, 35

*In re Veeco Instruments Inc. Securities Litigation*,
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..................................................... 9

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018) ..................................................... 26, 35

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...................... 8

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515, 2009 WL 2025160 (S.D.N.Y. July 10, 2009) ................................ 10

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06CIV.11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)........................ 16

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................... 25

*In re: revolution Lighting Tech., Inc. Sec. Litig.*,
    1:19-cv-00980-JPO, Dkt. No. 72 (S.D.N.Y. July 8, 2020)....................................... 26

*Ingles v. Toro*,
    438 F. Supp. 2d 203 (S.D.N.Y. 2006)......................................................... 15

*Landy v. Amsterdam*,
    815 F.2d 925 (3d Cir. 1987)................................................................. 31

*Levin v. Resource Capital Corp.*,
　　1:15-cv-07081-LLS, Dkt. No. 95 (S.D.N.Y. Aug. 3, 2018) ............................................ 35

*Maley v. Del Global Techs. Corp.*,
　　186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................................... 11, 26

*McBean v. City of New York*,
　　233 F.R.D. 377 (S.D.N.Y. 2006) ...................................................................................... 16

*McDaniel v. County of Schenectady*,
　　595 F.3d 411 (2d Cir. 2010) .............................................................................................. 29

*Missouri v. Jenkins*,
　　491 U.S. 274 (1989) ........................................................................................................... 35

*Newman v. Caribiner Int'l Inc.*,
　　No. 99-cv-2271 (S.D.N.Y. Oct. 25, 2001) ........................................................................ 26

*Newman v. Stein*,
　　464 F.2d 689 (2d Cir. 1972) .............................................................................................. 17

*Robbins v. Koger Props., Inc.*,
　　116 F.3d 1441 (11th Cir. 1997) .................................................................................... 14, 31

*Roberts v. Texaco*,
　　979 F.Supp. 185 (S.D.N.Y. 1997) ..................................................................................... 37

*Savoie v. Merchs. Bank*,
　　166 F.3d 456, 460 (2d Cir. 1999) ...................................................................................... 25

*Schwartz v. Novo Industri A/S*,
　　119 F.R.D. 359 (S.D.N.Y. 1988) ....................................................................................... 17

*Shapiro v. JPMorgan Chase & Co.*,
　　No. 11 Civ. 8331, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014); *accord, In re NASDAQ
　　Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) .............................. 6

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
　　2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) ..................................................................... 37

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
　　258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................................. 8

*Taft v. Ackermans*,
　　No. 02-cv-7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................... 26

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
　　No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) .... 11, 29, 32

*Telik, Inc. Sec. Litig.*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................ 29

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 319 (2007)....................................................................... 33

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................... 7

*Veeco Instruments Inc. Sec. Litig,*
    No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)................................ 32

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................. passim

*Weinberger v. Kendrick*,
    91 F.R.D. 494 (S.D.N.Y. 1981) .............................................................. 17

*Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor
    Property Group, Inc.*,
    1:16-cv-2400-AT-SN, Dkt. No. 92 (S.D.N.Y. Dec. 13, 2017)........................... 26

*White v. First Am. Registry, Inc.*,
    No. 04 Civ. 1611 (LAK), 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007)...................... 7

*WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................ 33

*Yang v. Focus Media Holding Ltd.*,
    No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............. 8, 30

## RULES

Fed. R. Civ. P. 23(e)(2)............................................................ 4, 6, 19

Pursuant to Federal Rule of Civil Procedure 23(e), Court-appointed Lead Plaintiffs Lizhen Zhang, Juean Xu, Yuehua Ding, Maggie Xu, Mark S. Frater, and Ketan Patel (collectively "Lead Plaintiffs"), on behalf of themselves and the Settlement Class,[1] respectfully submit the Memorandum of Law in support of their unopposed Motion for: (i) final approval of the proposed Settlement;[2] (ii) final approval of the proposed Plan of Allocation for the distribution of the proceeds of the Settlement to eligible claimants; (iii) certification of the Settlement Class for settlement purposes only; (iv) approval of Lead Plaintiffs' request for an award of attorneys' fees and reimbursement of expenses; and (v) an award of $1,000 for each Lead Plaintiff.

## PRELIMINARY STATEMENT

After nearly two years of litigation, Lead Plaintiffs have reached a $1.45 million all cash settlement for the benefit of the Class in this securities class action. The proposed Settlement provides for the full resolution of the claims asserted by Lead Plaintiffs in this action brought under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") and alleges Defendants failed to disclose in the Offering Materials[3] that: (1) Sogou's controls over advertising content were inadequate and that Defendants failed to safeguard against the publication of content prohibited by Chinese regulations; and (2) Sogou was changing its business strategy to phase out some legacy

---

[1] Capitalized terms which are not defined in this memorandum have the same meaning as in the Stipulation and Agreement of Settlement, dated and filed on December 8, 2020 (Dkt. No. 99-1, the "Stipulation"). Reference is made to the accompanying Declaration of Jacob Goldberg (the "Goldberg Declaration").

[2] The proposed Settlement will also resolve the claims asserted in a related, pending action in San Mateo County, California Superior Court, captioned *Khayan vs Sogou Inc.*, Docket No. 18CIV06699 (Cal. Super. Ct. Dec 14, 2018) ("California Litigation"). Plaintiffs in the California Litigation, possibly Settlement Class Members in this case, opposed preliminary approval. (Dkt. No. 100). By letter dated December December 11, 2020, Plaintiffs responded to the California Litigation plaintiffs' arguments in opposition to preliminary approval. (Dkt. No. 103). In the face of that opposition, the Court preliminarily approved the Settlement. (Dkt. No. 102). To date, plaintiffs in the California Litigation have neither requested exclusion nor objected to the Settlement.

[3] The Offering Materials refers collectively to the Prospectus and the Registration Materials. The "Registration Statement" refers to the Form F-1 the Company filed with the SEC on October 13, 2017. The "Prospectus" refers to the Form 424B4 the Company filed on November 9, 2017 with the SEC.

models of one of the Company's most successful AI products, the Teemo Watch. As investors would only learn months after they acquired Sogou ADSs pursuant to the alleged misleading Offering Materials, Sogou's failure to safeguard against the publication of prohibited content led Chinese authorities to fine Sogou, causing the Company to suspend operations while it rewrote its advertising policies and audit procedures. The failure to properly safeguard against regulatory violations and Sogou's change in product strategy negatively impacted the Company's revenues and causing the price of the ADRs to significantly decline and Lead Plaintiffs and the Class to suffer financial harm.

At the time the proposed Settlement was reached, Lead Plaintiffs and Lead Counsel[4] had a well-developed understanding of the strengths and weaknesses of the Action. Their efforts included reviewing and analyzing: (i) documents the Company filed publicly with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; (v) applicable Chinese laws and regulations; and (vi) the applicable law governing the claims and potential defenses. Lead Plaintiffs and Lead Counsel also consulted with financial and industry experts. Further, in connection with prosecuting this action, Lead Plaintiffs' Counsel drafted and filed three amended complaints, opposed Defendants' Motions to Dismiss and initiated an appeal of the Court's dismissal of the Action. At the time the parties reached a settlement, Plaintiffs' Counsel had filed a notice of appeal and was in the process of preparing their opening appellate brief. Goldberg Decl. ¶¶7-8.

---

[4] Pomerantz LLP ("Pomerantz") (collectively with Lead Counsel, "Plaintiffs' Counsel") served as additional counsel.

While Lead Plaintiffs believe their case has merit, the proposed Settlement eliminates the significant risk on appeal and, if Lead Plaintiffs were successful on appeal, protracted and costly discovery in the People's Republic of China ("PRC"), additional contested motion practice, trial, post-trial motion practice, and likely ensuing appeals. As discussed below, Lead Plaintiffs faced significant hurdles to succeeding on appeal. The Settlement avoids the risk of losing on appeal and the Settlement Class receiving no recovery at all. Even if Lead Plaintiffs succeeded on appeal, the proposed Settlement avoids the extensive delays and risk of litigation while providing an immediate benefit to the Settlement Class of a $1,450,000 cash payment. In light of the recovery for the Settlement Class and the risks of continued litigation, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate and warrants final approval.

Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Settlement Class members. The Plan of Allocation, developed by Lead Counsel and their damages consultant, provides a reasonable method for allocating the Net Settlement Fund among Class Members who submit valid claims based on damages they suffered that were attributable to the alleged misstatements in the Offering Materials.

Lead Plaintiffs also request a fee equal to 25% of the Settlement Fund, or $362,500, which represents a negative lodestar "multiplier" of .46, and payment of litigation expenses in the amount of $25,412.06. The requested fee is made with the full support of the Lead Plaintiffs. *See* Goldberg Decl., Exhibits 1 through 6. As demonstrated below, the request is well within the range of attorneys' fees typically awarded in securities class actions and is well supported by both case law and the facts of this case. Finally, Lead Plaintiffs seek an award of $1,000 for each of the Lead Plaintiffs in recognition of the Lead Plaintiffs' active assistance to Lead Counsel in prosecuting this Action. Goldberg Decl. ¶¶10, 61.

For these reasons, Lead Plaintiffs respectfully submit that their motion should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The Goldberg Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to the Goldberg Declaration for a detailed description of, *inter alia*: the history of the Action, the nature of the claims asserted, the negotiations leading to the Settlement, the risks and uncertainties of continued litigation, Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses; and Lead Plaintiffs' request for a modest incentive award.

## ARGUMENT

### I.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

#### A.  Standard of Review and the Presumption of Approval

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.");[5] *Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) ("Public policy, of course, favors settlement."). This policy would be well-served by approval of the Settlement of this complex securities class action, that absent resolution, could consume years of this Court's time.

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims. A class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Second Circuit has recognized that

---

[5] All internal quotations and citations are omitted unless otherwise stated.

a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms. *See Wal-Mart Stores*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at \*2-3 (S.D.N.Y. May 20, 2014); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

In the Second Circuit, class action settlements are evaluated under the *Grinnell* factors, which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Wal-Mart Stores*, 396 F.3d at 117; *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014); *In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265-66 (S.D.N.Y. 2012).

The amendments to Rule 23(e)(2), effective December 2018, include the following four additional and somewhat overlapping factors courts should consider in evaluating a settlement:

(A) whether the class representatives and class counsel have adequately represented the class;

(B) whether the proposal was negotiated at arm's length;

(C) whether the relief provided for the class is adequate, taking into account:

    i. the costs, risks, and delay of trial and appeal;

    ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii. the terms of any proposed award of attorneys' fees, including timing of payment; and

    iv. any agreement required to be identified under Rule 23(e)(3); and

(D) whether the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). For the reasons discussed herein, the proposed Settlement meets the criteria set forth by the Second Circuit and Fed. R. Civ. P. 23.

### B. The Settlement was Reached After Robust Arm's-Length Negotiations, is Procedurally Fair, and is Entitled to a Presumption of Reasonableness

A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d Cir. 2016). The Settlement here merits such a presumption of fairness because it was achieved after thorough arm's-length negotiations between well-informed and experienced counsel and an extensive investigation into the claims and defenses asserted, including the benefit of the Court's decision on Defendants' motions to dismiss. As a result, Lead Plaintiffs and Lead Counsel had a well-informed basis for assessing the strength of the Settlement Class's claims and Defendants' defenses when they agreed to settle the Action.

The judgment of Lead Counsel—which consists of two law firms that are highly experienced in securities class action litigation—that the Settlement is in the best interests of the Settlement Class is entitled to "great weight." *City of Providence v. Aeropostale Inc.*, No. 11 civ. 7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014); *accord, In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). Additionally, as envisioned by the PSLRA, Lead Plaintiffs took an active role in supervising this

litigation and endorse the Settlement. See *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[A] settlement reached under the supervision of appropriately selected lead plaintiffs is entitled to an even greater presumption of reasonableness.").

Accordingly, the Settlement is entitled to a presumption of reasonableness.

### C. Application of the Second Circuit's Grinnell Factors Supports Approval of the Settlement as Substantively Fair, Reasonable, and Adequate

The Settlement also satisfies the criteria for approval articulated in *Grinnell*. When analyzing the *Grinnell* factors and determining if a settlement is fair, "the court should consider the totality of these factors in light of the particular circumstances." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)). Moreover, when deciding whether to approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007). As describe bellow, the well-established *Grinnell* factors support the Settlement as being fair, reasonable, and adequate.

### 1. The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement

District courts in this Circuit have long recognized that securities class actions like this one are inherently complex and "'notably difficult and notoriously uncertain' to litigate." *In re Facebook,* 2015 WL 6971424, at *3; *Bear Stearns,* 909 F. Supp. 2d at 266; *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010); *In re Gilat Satellite Networks*, *Ltd*., No. CV-02-1510, 2007 WL 1191048, at *10

(E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute."). This case was no different and involved complex issues of liability and damages. Further complicating this Action is that Lead Plaintiffs would have to obtain evidence from, and enforce a judgment against, a Chinese-based company that likely would not be enforced by Chinese courts. *See Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *6 (S.D.N.Y. Sept. 4, 2014) ("[B]ecause [the defendant] is headquartered in the People's Republic of China, litigation faces many other obstacles, such as the lack of subpoena power to compel the appearance of fact witnesses."); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *10 (E.D.N.Y. Oct. 23, 2012) ("These risks include the availability of unique defenses concerning Chinese law, the possibility of being unable to enforce a judgment, and the high costs involved in litigating where the record is in Chinese and where they is no earlier governmental action or investigation on which to piggy-back.").

Prosecution of this Action would also involve a lengthy and expensive appeal process concerning the Court's order dismissing Lead Plaintiffs' complaint likely extending this litigation for years. While reversal is unlikely, even if Lead Plaintiffs were successful on appeal, they would still need to expend significant time and resources prosecuting this case through discovery, class certification, summary judgment, trial and appeal, which would last years. The expense would also substantially increase due to the challenges in obtaining evidence in China.

Without the Settlement, the Settlement Class could have suffered an expensive trial with an uncertain outcome and years of inevitable delays. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of

money, make future recoveries less valuable than this current recovery."). Accordingly, this factor weighs in favor of approving the proposed Settlement. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable").

### 2.  The Reaction of the Settlement Class to the Settlement

The reaction of the class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 266-67; *FLAG Telecom*, 2010 WL 4537550, at *16; *In re Veeco Instruments Inc. Securities Litigation*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007). Pursuant to the Court's Order Granting Preliminary Approval of Settlement (Dkt. No. 102 the "Preliminary Approval Order"), the Court-appointed Claims Administrator, Strategic Claims Services ("Strategic"), has mailed copies of the Notice and Proof of Claim form to potential Settlement Class members and beneficial purchasers holding Sogou ADSs. *See* Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections (the "Evans Decl.") at ¶¶ 66. As of February 18, 2021, Strategic has mailed 13,477 copies of the Notice and Proof of Claim Form to potential Settlement Class members. Evans Decl. ¶¶6. In addition, one of the Nominee Account Holders informed Strategic that it emailed 8,826 customers to notify them of this settlement. *Id.*, ¶7. On January 4, 2021, Strategic published the Summary Notice on *Investor's Business Daily* and *GlobeNewswire*. *Id.* ¶9. The Notice and other documents are also posted on a website maintained by Strategic dedicated to this Action to assist potential

Settlement Class members,[6] which will continue to be maintained and updated as appropriate. *Id.* ¶¶10-11.

While the deadline set by the Court for Settlement Class Members to object or request exclusion (March 4, 2021) has not yet passed, to date, no objections have been received and only one request for exclusion from class member Jonathan Sato has been received. Evans Decl. ¶¶12-13; Goldman Decl., Exhibit 7. Plaintiffs' counsel is in the process of contacting Mr. Sato to confirm that he wishes to be excluded from the proposed Settlement and will report back to the Court in their Reply brief. A prior objection requested that the Court deny preliminary approval and was filed by Albert Y. Chang on behalf of Artak Kayan, Skyler Bishop, and Asha Lickley Dore, plaintiffs in the California Litigation. Dkt. 100. The Chang objection asserted an unsubstantiated jurisdictional claim related to Lead Plaintiffs' appeal, which is no longer pending. Those jurisdictional claims are, therefore, moot.[7] Attorney Chang also complained that the amount of the settlement was insufficient but provided no basis for his assertion. No Plaintiff from the California Litigation has formally objected to the Settlement, attorneys' fees, or reimbursement of expenses. As set forth below, the proposed Settlement is fair, reasonable, and adequate

This lack of any meaningful objection or request of exclusion further supports the granting of final approval of the proposed Settlement. *See, e.g.*, *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2009 WL 2025160, at *2 (S.D.N.Y. July 10, 2009) (no objections by class members following preliminary approval supports granting final approval). Lead Counsel will respond to any objections received in reply papers.

---

[6] https://www.strategicclaims.net/luo-v-sogou-inc-et-al-securities-litigation/

[7] Plaintiffs incorporate herein by reference their response (Dkt. No. 103) to the December 9, 2020 letter of Albert Y. Chang on behalf of Plaintiffs Artak Khayan, Skyler Bishop, and Asha Lickley Dore in the California Litigation. Plaintiffs in this Action are informed that the San Mateo Superior Court, before whom the California Litigation is pending, has stayed that case in favor of resolving this Action.

### 3. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of Settlement

In considering this factor, "the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. To satisfy this factor, parties need not have even engaged in formal or extensive discovery. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002).

Here, Lead Plaintiffs, through their counsel, conducted a robust investigation that included analyzing, among other things, publicly filed documents and records, investigative reports, applicable Chinese laws and regulations and news stories concerning Sogou and the Defendants, among other information. Lead Counsel also retained and conferred with expert consultants regarding damages and other issues in the Action requiring expert input. In addition, Lead Plaintiffs continued to monitor new developments in the case and conducted a detailed analysis of the Court's opinion on Defendants' motions to dismiss.

With this substantial base of knowledge, Lead Plaintiffs were able to weigh the Settlement amount against the continued risks and expense of litigation through appeal, discovery and trial. Accordingly, Lead Plaintiff and Lead Counsel respectfully submit that they had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial. *Teachers Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-Civ-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). Therefore, this *Grinnell* factor also supports approval.

### 4. The Risks of Establishing Liability and Damages Support Settlement Approval

In assessing the fairness, reasonableness, and adequacy of a settlement, courts consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463. The principle claims in this Action arose under Sections 11 and 15 of the Securities Act.

As discussed below, while Lead Plaintiffs believe their claims have merit, they faced significant hurdles to winning on appeal. Even if all or part of the Court's decision on Defendants' motions to dismiss were reversed, Lead Plaintiffs faced significant risks in establishing liability through summary judgment, trial, and appeal. Thus, this factor supports approval of the Settlement.

### a. Plaintiffs Faced Substantial Risk Their Appeal Would Be Unsuccessful

The parties entered into the proposed Settlement agreement days before Lead Plaintiffs were to submit their opening appellate brief seeking to overturn the Court's Final Order and Judgment granting Defendants' motions to dismiss. Lead Plaintiffs recognize that the likelihood of succeeding on appeal is low and there was a substantial risk that the Settlement Class would recover nothing if Lead Plaintiffs were unsuccessful. *See* U.S. Courts of Appeals—Decisions in Cases Terminated on the Merits, by Circuit and Nature of Proceeding During the 12-Month Period Ending September 30, 2020, https://www.uscourts.gov/statistics/table/b-5/judicial-business/2020/09/30 (indicating reversal in only 10.6% of all cases to the Second Circuit Court of Appeals, including only in 10.4% of all civil litigation between private litigants in the 12 months preceding September 30, 2020); Table B-5-U.S Court of Appeals Statistical Tables for the Federal Judiciary (as of December 31, 2019), https://www.uscourts.gov/statistics/table/b-5/statistical-tables-federaljudiciary/2019/12/31 (showing reversal in only 8.9% of cases in the 12 months preceding December 31, 2019).

On appeal, Defendants would have advanced similar arguments as those they successfully asserted in their motions to dismiss. In particular, Defendants would have likely argued that Lead Plaintiffs failed to allege an actionable misstatement because: (a) the Chinese authorities never found that Sogou's procedures prior to the IPO were in breach of any statute or law or deficient; (b) the advertisements at issue involved violation of a law that was not in existence at the time of the IPO; (c) Sogou did not state that all of its smart hardware had AI capabilities; (d) Sogou's decision to phase out older Teemo watch models was not made until after the IPO; (e) the Prospectus provided adequate risk warnings; and (f) there was no duty to disclose under Item 303 of Regulation S-K. *See* Goldberg Decl. ¶7. While Plaintiffs would have argued to the contrary and that Sogou was aware at the time of the IPO that Article 22 was going to be implemented and Sogou lacked sufficient controls to ensure compliance with PRC regulations, Plaintiffs faced a significant risk that the Second Circuit would have found Defendants' arguments more persuasive—that Sogou did not violate any regulation because Article 22 had not formally been enacted at the time of the IPO and Sogou adequately warned about the risk of non-compliance with PRC regulations, particularly given the PRC's discretion in policing online advertising.

Accordingly, there was a significant risk that the Second Circuit would have affirmed this Court's dismissal. Even if Plaintiffs were able to overcome the slim odds of the Second Circuit reversing the District Court's judgment—in whole or in part—there would still be substantial risks of non-recovery that exist for the Settlement Class, as described below.

### b. Risks Related to Establishing Liability and Damages if the Court's Judgment were Reversed

Even if Lead Plaintiffs' appeal succeeded, they would still face significant risks in developing a factual record to prove their claims at summary judgment and at trial. *See City of Providence*, 2014 WL 1883494, at *15 ("Defendants would never concede their liability and would

likely continue to press these defenses and others at summary judgment and trial."); *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-CV-02237 JSR, 2008 WL 9019514, at *2 (S.D.N.Y. Nov. 25, 2008) ("[C]ases brought under the federal securities laws are notoriously difficult and uncertain").[8] Establishing liability would have been further complicated because most, if not all, of the relevant witnesses, documents and other evidence are located in China. Goldberg Decl. ¶8.

In addition, Defendants would likely have asserted defenses that Lead Plaintiffs would have had to successfully refute. For example, Defendants would have likely asserted a negative causation defense that Lead Plaintiffs' losses were not caused by the alleged misstatements but rather by Sogou's declining sales due to a newly enacted regulation well after the IPO that imposed increased restrictions on advertising and macroeconomic factors unrelated to the issues in this case. The Underwriter Defendants would have argued that they performed reasonable due diligence and thus were not liable for any statements that turned out not to be true. In addition, Defendants would likely have argued the size of the Class and damages were much smaller than what Plaintiffs alleged because many investors could not trace their purchases to the IPO and/or the relevant time period was shorter than what Lead Plaintiffs alleged.

Even if Plaintiffs succeeded at trial, they still faced the risk that Defendants would appeal any verdict and this case would drag on for a number of years. Thus, success was far from guaranteed and Lead Plaintiffs faced the very real risk that even in the unlikely event they prevailed

---

[8] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, *Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re BankAtlantic Bancorp, Inc.*, No. 07-cv-61542 (S.D. Fla. 2010) (granted defendants' motion for judgment as a matter of law on loss causation grounds following a plaintiffs' jury verdict), *aff'd*, 688 F. 3d 713 (11th Cir. 2012).

in the Second Circuit, they may be unable to establish Defendants' liability or succeed through appeal. The Settlement provides Settlement Class members an immediate benefit.

### 5.    Risks of Maintaining the Action as to Class Certification

Defendants would undoubtedly have raised vigorous challenges to class certification, including with respect to the length of the relevant time period and Lead Plaintiffs' adequacy. Many of these disputes "could well devolve into a battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268.

Assuming *arguendo* that class certification was granted, class certification orders are reviewable and can be modified at any time by the Court before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Although Lead Counsel believes there are strong grounds for certifying this Action as a class action, as discussed in Lead Plaintiffs' motion for preliminary approval of the Settlement (Dkt. No. 94 at Point IV)—the Settlement avoids any uncertainty with respect to class certification and the risks of maintaining certification of the Class through trial and on appeal. *See* Goldberg Decl. ¶29. *See also Ebbert v. Nassau Cty.*, No. CV 05-5445 AKT, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (risk of de-certification of the certified class supported approval of Settlement); *Ingles v. Toro*, 438 F. Supp. 2d 203, 214 (S.D.N.Y. 2006).[9]

---

[9] The Court preliminarily certified the Settlement Class solely for settlement purposes in the Preliminary Approval Order (Dkt. No. 102). There have been no subsequent developments that would undermine that determination and, for all the reasons stated in the Preliminary Approval Brief, incorporated herein by reference, Lead Plaintiffs now request that the Court reiterate its prior certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes, and the appointment of Lead Plaintiffs as Class Representatives and Levi & Korsinsky, LLP, and The Rosen Law Firm, P.A. as Class Counsel.

### 6. The Ability of Defendants to Withstand a Greater Judgment

While it appears that Defendants may have resources enough to contribute more money to the Settlement Fund, in light of the risks of succeeding on appeal, class certification and establishing liability at trial, the ability of Defendants to contribute more to the settlement is not a dispositive factor. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (finding that the ability of defendants to withstand a greater judgment was not an abuse of discretion, in light of weighing the risks of establishing liability and the other *Grinnell* factors); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06CIV.11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008) (granting final approval despite defendants' ability to pay more finding this factor not dispositive); *McBean v. City of New York*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006) ("However, the ability of defendants to pay more, on its own, does not render the settlement unfair, especially where the other *Grinnell* factors favor approval."); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) (same).

This factor is neutral.

### 7. The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and all the Attendant Risks of Litigation Support Approval of the Settlement

The last two substantive factors—the range of reasonableness of the Settlement fund in light of (i) the best possible recovery and (ii) litigation risks—weigh in favor of Settlement approval. In analyzing these factors, the Settlement need not be the best possible recovery. Rather, courts evaluate the value of the Settlement in relation to the strengths and weaknesses of the case. *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987) (adequacy of settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and

weaknesses of plaintiffs' case."); *see also D'Amato*, 235 F.3d at 86 (holding that the district court did not abuse its discretion when awarding final approval of the settlement because the district court properly weighed the risks of establishing liability). Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997). Instead, "in any case there is a range of reasonableness with respect to a settlement…." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The $1,450,000 Settlement Fund is a favorable result in light of the substantial risks that Lead Plaintiffs face in succeeding on appeal and establishing liability and damages. This Court has already granted Defendants' motions to dismiss and the case was on appeal with minimal chance of success.[10] Given the significant likelihood that the Second Circuit would have affirmed this Court's Judgment and the Settlement Class would have received nothing, *see* Section I.b.4.A, *supra*, and the inherent risks of litigation even if the Second Circuit reversed the Court's Judgement, *see* Section I.b.4.B, *supra*, Lead Plaintiffs submit that the Settlement is within the range of reasonableness. *See, e.g.*, *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 363-64 (S.D.N.Y. 1988) ("Here, plaintiffs' complaint has been dismissed twice. They are not dealing from a position of great strength. There exists a real possibility that plaintiffs may receive nothing. This weighs heavily in the court's determination…. Therefore, recognizing… the heavy burdens plaintiffs would face to win their case… the proposed settlement hereby is approved"); *Weinberger v. Kendrick*, 91 F.R.D. 494, 496 (S.D.N.Y. 1981) ("Plaintiffs' position with respect to each claim

---

[10] The Court had already preliminarily approved of the Settlement in light of these risks. Dkt. No. 101; *see also* Dkt. No. 94 at 15 ("[T]he chances of [This Court's Motion to Dismiss] decision being reversed on appeal were remote. This fact supports the reasonableness of the Settlement.).

in this case is not so strong that settlement should be lightly rejected."), *modified on other grounds*, 698 F.2d 61 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).

Thus, the *Grinnell* factors support the approval of the settlement.

### 8. Application of the Rule 23(e)(2) Factors Support Approval of the Settlement as Fair, Reasonable, and Adequate

The proposed Settlement also meets the criteria set forth in the amendments to Rule 23(e)(2) effective December 2018, most of which overlap with the *Grinnell* factors.

#### a. Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class. With their counsel, Lead Plaintiffs, zealously prosecuted the claims of the Class. Thus, the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiffs and all members of the Settlement Class. *See, e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Moreover, Lead Plaintiffs have no conflicts with other members of the Settlement Class.

As discussed above (Section C.3., *supra*), Lead Counsel vigorously litigated this Action through several complaint amendments and full briefing on Defendants' motions to dismiss, carefully analyzed the Court's motion to dismiss order and applicable law, and consulted with expert consultants on complex issues of damages, traceability, and causation.

Accordingly, this factor supports final approval of the Settlement.

### b. The Settlement is the Result of Arm's Length Negotiations

As discussed above and in the (Goldberg Declaration, ¶¶22-23), the Settlement was reached after arm's-length negotiations between counsel. This factor supports approval of the Settlement.

### c. The Relief Provided to the Settlement Class is Fair, Reasonable and Adequate

As discussed above, the $1.45 million all cash Settlement is adequate, taking into account the costs, risks, and delay of trial and appeal." Moreover, as set forth below in Section II, *infra*, pursuant to the proposed Plan of Allocation, the proceeds of the Settlement will be distributed to Settlement Class members who submit valid and timely claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The claims administrator, Strategic, will calculate claimants' Recognized Loss Amounts using the transactional information provided by claimants in their Proof of Claim Forms, which can be mailed to the Claims Administrator or submitted online using the settlement website, or, for large investors, with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team. Most securities are held in "street name" by the brokers that buy them on behalf of clients. Thus, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class members' transactional data and a claims process is required.

Lead Counsel's requested fee award and the timing of payment (Rule 23(e)(2)(C)(iii)), are fair reasonable and adequate. *See* Section IV, *infra*.

Finally, Rule 23(e)(2)(C)(iv) asks the Court to consider the fairness of the proposed Settlement in light of any agreement required to be identified under Rule 23(e)(3). The only agreements made by the Parties in connection with the Settlement are the Stipulation and the confidential Supplemental Agreement concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests as set forth in the Stipulation

at ¶ 6. It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided to the Court *in camera* or under seal.

## II.    THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. To be reasonable, a plan of allocation need not need to be tailored to fit each and every class member with "mathematical precision." *PaineWebber*, 171 F.R.D. at 133. Rather, a plan of allocation, as here, that reimburses class members based on the relative strength and value of their claims is reasonable. *See IMAX*, 283 F.R.D. at 192; *FLAG Telecom*, 2010 WL 4537550, at *21; *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 497.

Here, the proposed Plan of Allocation, which was developed by Lead Counsel with the assistance of its damages' consultant, provides a fair and reasonable method to allocate the Net Settlement Fund among class members who submit valid Proof of Claim Forms consistent with Lead Plaintiffs' theory of liability. The Plan is set forth in full in the Notice. *See* Stipulation, Exhibit 1 to Exhibit A. ECF 99-7. The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants based on a function of (i) when and at what price a Settlement Class member purchased or otherwise acquired Sogou ADSs, (ii) whether the Settlement Class member held his, her or its Sogou ADS through March 14, 2018, the date non-IPO shares entered the market and traceability ceased; and (iii) the per ADS amount of artificial inflation in the price of the Company's ADSs.

Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each eligible claimant's pro rata share of the Net Settlement Fund (i.e., the "Recognized Claim") based upon each claimant's total "Recognized Loss Amount" compared to the aggregate Recognized Claims of all eligible claimants. Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made to eligible claimants in the form of checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining, and if feasible and economical, it will be redistributed among eligible claimants who have cashed their checks. *See* Stipulation ¶66 and Notice at ¶51. Any balance that still remains in the Net Settlement Fund after any reallocation, or if a reallocation is not undertaken, feasible, or economical, will be contributed to a non-sectarian, §50l(c)(3) non-profit charitable organization.[11] *Id.* Accordingly, the proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement among the Settlement Class.

For these reasons, Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (same). Moreover, Lead Plaintiffs have received no objections to the Plan of Allocation. Evans Decl., ¶13.

---

[11] In their distribution motion, Plaintiffs will seek Court approval for a designated charity.

**III.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS**

Lead Plaintiffs have provided the Settlement Class with notice of the proposed Settlement that satisfied all the requirements of Rule 23(e) and due process. Rule 23(e) require that notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114. Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfied these standards.

The Notice provided all the necessary information for Settlement Class members to make an informed decision regarding the Settlement, the Fee and Expense Application, and the Plan of Allocation. The Notice informed Settlement Class members of, among other things: (1) the amount of the Settlement; (2) the reasons the Parties are proposing the Settlement; (3) the estimated average recovery per affected ADS of Sogou; (4) the maximum amount of attorneys' fees and expenses that will be sought and the possibility that Lead Plaintiffs might seek reimbursement for their time and expenses in connection with their representation of the proposed class in accordance with the PSLRA; (5) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from Settlement Class Members concerning matters contained in the Notice; (6) the right of Settlement Class Members to object to the Settlement; (7) the binding effect of a judgment on Settlement Class Members; and (8) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. § 78u-4(a)(7). The Notice also contains the Plan of Allocation and provided Settlement Class Members with information about how to submit a Proof of Claim form in order to be eligible to receive a distribution from the Net Settlement Fund.

As of February 18, 2021, Strategic has mailed 13,477 Postcard Notices to potential Settlement Class members or their nominees. Evans Decl., ¶6. Potential Settlement Class members were identified by the Company's transfer agent as well as brokerage firms, banks, institutions and other third-party nominees holding Sogou ADS in street name. *Id.*, ¶¶4-6. The Court-approved summary notice was also published on *GlobeNewswire* and *Investors' Business Daily*, national wire services. *Id.*, ¶9. Strategic maintains a toll-free telephone number allowing Settlement Class members to call and speak with a live operator regarding the status of the Settlement and/or obtain answers to any questions they may have or to seek answers via email. *Id.*, ¶10. Finally, Strategic maintains a website dedicated to this Action (https://www.strategicclaims.net/luo-v-sogou-inc-et-al-securities-litigation/) to assist potential Settlement Class members containing the Notice, summary notice and other important documents related to the Action and the proposed Settlement. *Id.*, ¶11.

This combination of individual first-class mail to those who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmitted over a newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

## IV. LEAD PLAINTIFFS' REQUESTS FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE

### A. A Reasonable Percentage of the Fund Recovered is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the

fund as a whole");[12] *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) ("Moreover, under the equitable fund doctrine, attorneys for the successful party may petition for a portion of the fund as compensation for their efforts"); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The purpose of the common fund doctrine is to fairly and adequately compensate counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation on their behalf. *See Goldberger*, 209 F.3d at 47.

Courts have recognized that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132 (CM), 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015). Indeed, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) ("This court … continues to find that the percentage of the fund method is more appropriate than the lodestar method for determining attorney's fees in common fund cases."); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012) ("the percentage method continues to be the trend of district courts in the [Second] Circuit").

---

[12] All internal quotations and citations are omitted unless otherwise stated.

"The percentage of the fund method is a simpler calculation where the award is based on 'some percentage of the fund created for the benefit of the class.'" *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 171 (S.D.N.Y. 2007) (quoting *Savoie*, 166 F.3d at 460)); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("Because of the practical and policy advantages of the percentage method, as well as the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions, 15 U.S.C. § 78u–4(a)(6), this Opinion will apply the percentage method"). "In contrast, the lodestar method creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores*. *v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (brackets omitted). The Second Circuit has recognized that "the lodestar method proved vexing" and resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48, 49; *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that "the percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Instead, courts in the Second Circuit use the lodestar method as a cross-check of the reasonableness of the common fund percentage. *Goldberger*, 209 F.3d at 50. When using the lodestar method as a cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

In sum, the weight of authority supports application of percentage-of-recovery method in determining a reasonable attorneys' fees here.[13]

---

[13] In addition, as described in Section IV. *infra*, there is a negative lodestar multiplier, which indicates that the Settlement Class benefits from the percentage of the fund method as opposed to the lodestar method, since the lodestar method would result in higher attorneys' fees. *See In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009) ("The percentage fee requested represents a negative multiplier of 0.44 to the lodestar. Thus, not only are Lead Counsel not receiving a premium on their lodestar, their fee request amounts to a deep discount from their lodestar.").

**B. The Requested Fee Award of 25% of the Common Fund is Consistent with Fees Awarded in Comparable Cases in this District and the Second Circuit**

Courts in the Second Circuit have frequently awarded fees of 25% of the common fund in complex security class actions. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 574, 593, 595 (S.D.N.Y.2008) (awarding 25% attorneys' fees prior to ruling on motion to dismiss); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 418 (S.D.N.Y. 2018) (awarding 25% attorney fees on a $35,000,000 settlement), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *17, *20 (S.D.N.Y. Oct. 16, 2019) (collecting cases and awarding 25% attorneys' fees, in part, because "[d]istrict courts in the Second Circuit routinely award fees upwards of 25% in securities and other complex litigation settlements"); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2018 WL 6333657, at *5 (S.D.N.Y. Dec. 4, 2018) (25% attorneys' fees); *In re Canadian Superior Sec. Litig.*, No. 09 CIV. 10087 SAS, 2011 WL 5830110, at *4 (S.D.N.Y. Nov. 16, 2011) (25% attorneys' fees).

In fact, courts in this District have approved higher fees in cases in a similar procedural posture as this case. *See, e.g., In re: revolution Lighting Tech., Inc. Sec. Litig.,* 1:19-cv-00980-JPO, Dkt. No. 72 (S.D.N.Y. July 8, 2020) (awarding attorneys' fees of 33.33% of the settlement fund plus expenses where no motion to dismiss was ever filed); *Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc.*, 1:16-cv-2400-AT-SN, Dkt. No. 92, at ¶ 5 (S.D.N.Y. Dec. 13, 2017) (awarding a 30% attorneys' fee before the motion to dismiss was filed); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 360, 368 (S.D.N.Y. 2002) (awarding $33^{1}/_{3}$% of settlement and collecting cases, despite the motion to dismiss being "*sub judice.*"); *Taft v. Ackermans*, No. 02-cv-7951 (PKL), 2007 WL 414493, at *1, 11 (S.D.N.Y. Jan. 31, 2007) (awarding 30% fee where the motion to dismiss was pending when settlement was negotiated).

Accordingly, the 25% fee requested here is consistent with fee awards in similar cases in this District and nationwide.

### C. The Second Circuit's Goldberger Factors Confirm that the Requested Fee is Reasonable

The Second Circuit has set forth the following criteria that courts should consider when evaluating the reasonableness of a request for attorneys' fee award:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations (the "Goldberger Factors").

*Goldberger*, 209 F.3d at 50. As discussed below, the Goldberger Factors and the analyses herein demonstrate that Lead Counsel's requested fee is reasonable.

### 1. Lead Counsel has Devoted Substantial Time and Labor to the Action to Achieve a Positive Result for the Benefit of Class

The time and effort expended by Lead Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Goldberg Decl. at ¶¶6, 46; Exhibits 11-13, Lead Plaintiffs' Counsel diligently investigated the claims, defenses, and the underlying events and transactions that are the subject of the Action. Lead Counsel in connection with this case reviewed and analyzed: (i) documents the Company filed publicly with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) applicable Chinese regulations and laws; and (v) the applicable law governing the claims and potential defenses. Lead Counsel also consulted with financial experts in connection with this claim. In prosecuting this action, Lead Counsel also filed three amended complaints and opposed multiple motions to dismiss filed by Defendants. Lead Counsel was drafting the opening appellate brief at the time the Parties

reached agreement to resolve this Action. Lead Counsel also negotiated the Settlement on the Class's behalf.

In addition, Lead Counsel will supervise the administration and distribution of the Settlement Fund. This administration and distribution authority will be additional time that will not be accounted for in the lodestar determination, since distribution of the Settlement Fund will occur after this brief is filed and, subject to the Court's approval, the case settles.

In connection with this work, Lead Counsel expended 1,048.88 hours with a lodestar value of $782,661.00. *See* Goldberg Decl. ¶47. At all times, Lead Counsel took care to staff the matter efficiently and avoided unnecessary duplication of effort.

Accordingly, the time and labor dedicated to this litigation support the fee request.

### 2.  The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the requested fee. Courts routinely recognize that securities class action litigation, such as this, is "notably difficult and notoriously uncertain." *City of Providence,* 2014 WL 1883494, at *5; *In re FLAG Telecom Holdings, Ltd.* No. 02-cv 3400, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (same). This case was no different.

As discussed above and in the accompanying Goldberg Declaration, this Action involved and would have involved difficult, hotly disputed issues of fact and law related to, among other things, Sogou's compliance with Chinese laws and regulations relating to the publication of advertising content, disclosure requirements under the federal securities laws, cross-border issues relating to obtaining evidence in China, and expert issues relating to damages and causation. *See* Section C.4, *supra*.

Prosecuting the claims of the Class required skill and dedication of experienced class action attorneys. Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 3. The Risks of the Litigation Support the Requested Fee

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). "Courts have repeatedly recognized that 'the risk of litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions." *In re Telik*, *Inc. Sec. Litig.* 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008). The Second Circuit has said that "[t]he level of risk associated with litigation . . . is 'perhaps the foremost factor' to be considered in assessing the propriety of the multiplier." *McDaniel v. County of Schenectady*, 595 F.3d 411, 424 (2d Cir. 2010) (quoting *Goldberger*, 209 F.3d at 54).

While Lead Counsel believe this case has merit, it recognizes that the chances of a successful appeal were low and subsequently proving liability and recovering damages for the Class was far from certain. The likelihood of a recovery was further complicated because the Company's primary operations, assets, documents, and witnesses are located in China. By settling now, the Settling Class will avoid these risks and delays and receive an immediate cash payment.

Even if successful through trial, Lead Plaintiffs faced the substantial risk of being able to enforce and collect a judgment in China. Sogou and its parent company, Sohu, are based and operate in entirely in China. Collecting a U.S. judgment in China would carry substantial expenses and may require domesticating the judgment in China, which in turn would require retaining

29

Chinese counsel and create further uncertain delay, with a likely chance of not recovering at all. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *3 (C.D. Cal. Jan. 7, 2014) (the defendant "is a Chinese company with its assets in China, and even if Plaintiff were to prevail at trial, enforcing any judgment in China may be impossible to do."); *Focus Media Holding Ltd.*, 2014 WL 4401280, at *9, n.9 ("Moreover, the proposed Settlement provides the certainty of a present recovery for the shareholders against foreign defendants who would be, for all practical purposes, immune from a judgment entered by a court in the United States.").

### d.  The Contingent Nature of Counsel's Representation

Despite the uncertainties concerning the outcome of the case, Lead Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave Lead Counsel uncompensated for its significant investment of time and expenses. Courts within the Second Circuit have consistently recognized that the risk associated with contingent representation is an important factor favoring an award of attorneys' fees. *See, e.g.*, *In re Am. Bank Note Holographics, Inc. Sec. Litig*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award").

Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses as incurred, Lead Counsel has not been compensated for any time or expenses incurred in connection with this litigation and would have received no compensation if this case did not achieve a recovery for the Settlement Class. From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy endeavor with no guarantee of ever being compensated. In undertaking that responsibility, Lead Counsel was obligated to ensure that

sufficient attorney and professional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the costs entailed. Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingent basis, expended thousands of hours and millions of dollars in expenses and time and received nothing for their efforts.[14] As discussed above, the Second Circuit could have affirmed the judgment of this Court, or reversed and only for Lead Plaintiffs to be dismissed on summary judgment, trial, or on appeal, leading to absolutely no recovery for the Settlement Class and no fee for Lead Counsel. Accordingly, the contingency risk supports the requested attorneys' fee.

### 4. The Quality of Lead Counsel's Representation

Lead Counsel devoted considerable time and effort to this case, thereby bringing to bear many years of collective experience, including thoroughly investigating the claims, defenses, and underlying events that are the subject of the Action. Lead Plaintiffs' efforts included reviewing and analyzing: (i) documents the Company filed publicly with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses. Lead Counsel also consulted with financial and industry experts. At the time the parties reached a settlement,

---

[14] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, *Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re BankAtlantic Bancorp, Inc.*, No. 07-cv-61542 (S.D. Fla. 2010) (granted defendants' motion for judgment as a matter of law on loss causation grounds following a plaintiffs' jury verdict), *aff'd*, 688 F. 3d 713 (11th Cir. 2012).

Plaintiffs' Counsel had filed a notice of appeal and was in the process of preparing their opening appellate brief.

Since the passage of the PSLRA, Co-Lead Counsel, Levi & Korsinsky and Rosen, and Additional Counsel, Pomerantz—have been appointed by courts to serve as lead counsel in dozens of notable securities class actions throughout the United States and has achieved substantial recoveries on behalf of shareholders. *See* Exhibits 8-10 to the Goldberg Decl. (law firm resumes).

The quality of opposing counsel is also important in evaluating the quality of Lead Counsels' work. *See Flag Telecom*, 2010 WL 4537550, at \*28; *Teachers Ret. Sys.*, 2004 WL 1087261, at \*20. Defendants are represented by Goulston & Storrs PC, and Morgan, Lewis & Bockius LLP. These firms are respected as highly skilled and experienced securities lawyers and have significant resources. Faced with this formidable opposition, Counsel was nevertheless able to develop Plaintiffs' case so as to resolve the Action on terms favorable to the Class. *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at \*3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

### 5.  The Requested Fee in Relation to the Settlement

"In determining whether the Fee Application is reasonable in relation to the settlement amount, the Court compares the Fee Application to fees awarded in similar securities class-action settlements of comparable value." *In re Marsh & McLennan*, *Co. Sec. Litig*. No. 04-8144, 2009 WL 5178546, at \*19 (S.D.N.Y. Dec. 23, 2009); *see also In re Veeco Instruments Inc. Sec. Litig,* No. 05-1695, 2007 WL 4115808, at \*4 (S.D.N.Y. Nov. 7, 2007) (noting that the fee awarded is "consistent with fees awarded in a similar class actions settlements of comparable value"). As

discussed above, the attorneys' fees requested here are well within the range of percentage fee awards in comparable securities class action cases within this District. *See* Section II, *supra.*

### 6. Public Policy Considerations Support the Requested Fee

The federal securities laws are remedial in nature and, to effectuate their purpose of protecting investors, it is respectfully submitted that courts should encourage meritorious private lawsuits such as this one. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). The Supreme Court has emphasized that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (the court has long recognized that meritorious private actions to enforce federal securities laws are an essential supplement to civil enforcement actions).

Courts in the Second Circuit reason that if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. "In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." (quoting *In re WorldCom*, 388 F. Supp. 2d at 359); *see also Hicks v. Stanley*, No. 01-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

It is respectfully submitted that lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable

and adequate compensation for such services where successful results are achieved. Public policy therefore supports awarding Lead Counsel's attorneys' fee request.

### D. The Requested Attorneys' Fees are Reasonable Under the Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage method, the Second Circuit encourages a "crosscheck" against counsel's lodestar. *Goldberger*, 209 F.3d at 50. Under the lodestar method, a court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each timekeeper spent on the case by each person's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work. *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagements, the skill of the attorneys, and other factors"). Performing the lodestar cross-check here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Lead Counsel and Additional Counsel, collectively, have expended 1,048.88 hours in the prosecution of this case. Goldberg Decl. ¶47. The resulting lodestar at their current hourly rates is $782,661.00. *Id.* Thus, the amount of attorneys' fees requested by Lead Counsel of $362,500 represents a negative multiplier of .46 of Plaintiffs' Counsel's collective lodestar. Such a multiplier is actually beneath the parameters used throughout district courts in the Second Circuit and is "a strong indication of the reasonableness of the proposed fee." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012); *see also Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("Courts have repeatedly recognized that the reasonableness of the fee request under the percentage method is

reinforced where, as here, the percentage fee would represent a negative multiplier of the lodestar."); *In re Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) ("In addition, the fact that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the spectrum."); *In re Heelys, Inc. Derivative Litig.*, 2009 WL 10704478, at *11 (N.D. Tex. Nov. 17, 2009) ("Because the Fees and Expenses Award results in a negative multiplier as compared to the actual time and labor undertaken by Derivative Plaintiffs' Counsel in the Derivative Action, the Fees and Expenses Award is demonstrably reasonable."); *Virtus Inv. Partners, Inc. Sec. Litig.*, 2018 WL 6333657, at *5 (negative "lodestar multipliers are well below multipliers previously approved by this Court.").

Plaintiffs' Counsel's hourly rates range from $700.00 to $1,100.00 for partners, $400.00 to $700.00 for associates, and $110.00 to $375.00 for law clerks and professional staff. Goldberg Decl. ¶48. Plaintiffs' Counsel's *hourly* rates are consistent with those charged by attorneys in the New York Metropolitan area. *See, e.g., Levin v. Resource Capital Corp.*, 1:15-cv-07081-LLS, Dkt. No. 95 (S.D.N.Y. Aug. 3, 2018) (approving fee awards for Levi & Korsinsky using current billing rates); *Gormley v. Magicjack Vocaltec Ltd.*, 1:16-cv-01869-VM, Dkt. No 70 (S.D.N.Y. Jan. 19, 2018 (same).

Accordingly, Lead Plaintiffs submit that the hourly rates charged by counsel for attorneys and professional staff are reasonable and customary within the securities class action bar and the lodestar cross-check supports approval of the requested fee award.[15]

---

[15] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12–cv–8557 (CM), 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *see also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (similar); *Telik*, 576 F. Supp. 2d at 589 n.10 (similar).

### E. Lead Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel's fee application includes a request for payment of litigation expenses, which were reasonably incurred and necessary to prosecute the Action. Plaintiffs' Counsel collectively incurred $25,412.06 in litigation expenses as set forth and itemized in the Goldberg Decl., ¶¶58-59. This amount is below the $30,000 maximum expenses that the Notice informed potential Settlement Class Members that Lead Counsel may apply for.

The expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in securities class action litigation, principally investigative services (38%), financial experts (7%), press releases and notice to potential class members (45%), and filing and service fees (4%). Goldberg Decl. ¶59. These expenses are properly recoverable by counsel. *See In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation…'").

To date there have been no objections to the requested fee and expense award.

### F. The Reaction of the Settlement Class to Date Supports the Requested Fee

While the time to object to the fee and expense application does not expire until March 4, 2021, to date there have been no objections to the requested fee and expense award. Evans Decl., ¶13; Goldberg Decl., ¶60. As discussed above, the reaction of the Settlement Class to date also supports the fee and expense request.

### G. Application for Incentive Award to Lead Plaintiff

Lead Counsel moves for a modest $1,000 incentive award for each of the Lead Plaintiffs. "Such awards are not uncommon and can serve an important function in promoting class action

settlements." *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002). **"**An incentive award is meant to compensate the named plaintiff for… any additional effort expended by the individual for the benefit of the lawsuit." *Dornberger v. Metro Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001). *See also Roberts v. Texaco*, 979 F. Supp. 185, 187-188 (S.D.N.Y. 1997) (approving incentive award for class plaintiff who "provided valuable assistance to counsel in prosecuting the litigation); *Denney v. Jenkins & Gilchrist*, 230 F.R.D. 317, 355 (S.D.N.Y. 2005) (incentive awards serve an important function for plaintiff to actively participate in the litigation).

Here, Lead Plaintiffs actively participated in the litigation by, among other things, (i) routinely communicating with Lead Counsel concerning this Action; (ii) remaining fully informed about case developments; (iii) reviewing the various pleadings and motions filed in this Action; and (iv) closely monitoring and actively participating in settlement discussions. Goldberg Decl., Exhibits 1-3. (lead plaintiff declarations)

In light of the foregoing, Lead Counsel respectfully submits that a $1,000 incentive award to each Lead Plaintiff is reasonable. *See Roberts*, 979 F. Supp. at 188 (incentive award of between $2,500 and $85,000 depending on participation in the action).

<u>**CONCLUSION**</u>

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (1) approve the proposed Settlement as fair, reasonable, and adequate; (2) approve the Plan of Allocation as fair, reasonable, and adequate; (3) certification of the Settlement Class for Settlement purposes; (4) award attorneys' fees in the amount of 25% of the Settlement Fund, or $25,412.06; (5) award Plaintiffs' Counsel $362,500 in litigation expenses; (6) award an incentive award in the amount of $1,000 to each of Lead Plaintiffs, for a total of $6,000; and (7) grant such other and further relief

as the Court deems just and proper. The proposed Final Judgment and Order of Dismissal with

Prejudice is attached to the Stipulation as Exhibit B thereto, ECF 95-7.

Dated: New York, New York
       February 18, 2021

**LEVI & KORSINSKY, LLP**

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com

and

Donald J. Enright
1101 30th Street NW, Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: denright@zlk.com

**THE ROSEN LAW FIRM, P.A.**
*/s/ Jacob A. Goldberg*
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 686-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com

and

Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 34th Floor
New York, New York, 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
       lrosen@rosenlegal.com

*Co-Lead Counsel for Lead Plaintiffs
and the Settlement Class*

38

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Cara David
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
cdavid@pomlaw.com

*Additional Counsel for Lead Plaintiffs*