**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIAJIA LUO, *et. al.*, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:19-cv-00230-LJL |
| Plaintiff, | CLASS ACTION |
| v. | |
| | Judge:    Hon. Lewis J. Liman |
| SOGOU INC, SOHU.COM, INC., TENCENT HOLDINGS LIMITED, XIAOCHUAN WANG, CHARLES (CHAOYANG) ZHANG, YUXIN REN, JOANNA (YANFENG) LU, BIN GAO, JOSEPH CHEN, JANICE LEE, JAMES (XIUFENG) DENG, CHI PING MARTIN LAU, DONALD J. PUGLISI, J. P. MORGAN SECURITIES LLC, CREDIT SUISSE (USA) LLC, GOLDMAN SACHS (ASIA) L.L.C., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LTD., | |
| Defendants. | |

**DECLARATION OF JACOB GOLDBERG IN SUPPORT OF UNOPPOSED MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) APPROVAL OF THE PLAN OF ALLOCATION; (3) CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES; (4) AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; AND (5) AWARDS FOR LEAD PLAINTIFFS**

I, Jacob A. Goldberg, hereby declare as follows:

1. I am a partner of The Rosen Law Firm ("Rosen") and Co-Lead Counsel in this securities class action ("Action"). I am admitted to practice law before this Court and have personal knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Action.

2. I submit this Declaration in support of Lead Plaintiffs Lizhen Zhang, Juean Xu, Yuehua Ding, Maggie Xu, Mark S. Frater, and Ketan Patel ("Lead Plaintiffs") Unopposed Motion

for: (1) Final Approval of Class Action Settlement; (2) Approval of the Plan of Allocation; (3) Certification of the Class for Settlement Purposes; (4) an Award of Attorneys' Fees and Reimbursement of Expenses; and (5) Awards for Lead Plaintiffs.

3.     As set forth in their accompanying declarations, Lead Plaintiffs fully support the Settlement. Exs. 1-6 attached hereto (Declarations of Lizhen Zhang, Juean Xu, Yuehua Ding, Maggie Xu, Mark S. Frater, and Ketan Patel).

4.     Unless otherwise defined, capitalized terms in this Declaration have the same meaning as in the Stipulation of Settlement (as amended) entered into on December 8, 2020 (ECF 99-1, the "Stipulation"). I respectfully refer the Court to my previous Declaration in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement dated and filed on November 16, 2020, which I affirm and incorporate by reference.

### Preliminary Statement

5.     The proposed Settlement provides for the full resolution of Lead Plaintiffs' claims arising from the alleged violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") by Defendants in this Action, in exchange for an all cash payment of $1,450,000. As detailed herein, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement represents a fair, adequate, and reasonable result for the Settlement Class in light of the significant risks of continuing to litigate this Action.

6.     Lead Plaintiffs and Lead Counsel are well informed of the strengths and weaknesses of the claims and the defenses asserted in this Action. In choosing to settle, Lead Plaintiffs and Lead Counsel took into consideration the substantial risks associated with advancing the claims alleged in the Action, as well as the duration and complexity of the legal proceedings that remained ahead. As discussed in detail below, had the Settlement not been reached, there were considerable barriers to a greater recovery, or any recovery at all.

7. Specifically, on appeal, Defendants would have likely argued that Lead Plaintiffs failed to state a claim under the Securities Act. On appeal, Defendants would have advanced similar arguments as those they successfully asserted in their motions to dismiss. In particular, Defendants would have likely argued that Lead Plaintiffs failed to allege an actionable misstatement because: (a) the Chinese authorities never found that Sogou's procedures prior to the IPO were in breach of any statute or law or deficient; (b) the advertisements at issue involved violation of a law that was not in existence at the time of the IPO; (c) Sogou did not state that all of its smart hardware had AI capabilities; (d) the Prospectus provided adequate risk warnings; and (e) there was no duty to disclose under Item 303 of Regulation S-K..

8. Even if Lead Plaintiffs overcame these substantial hurdles on appealing this Court's opinion in the Second Circuit, prosecuting this Action through discovery would have been unusually challenging, expensive and time consuming because most, if not all, of the relevant witnesses, documents and other evidence would be in China. There are well known difficulties in compelling testimony and cooperation from witnesses in those countries. Accordingly, in the absence of a settlement, there was a very real risk that the Settlement Class could have recovered nothing or an amount significantly less than the negotiated Settlement of $1.45 million.

9. In addition to seeking approval of the Settlement, Lead Plaintiffs seeks approval of the proposed Plan of Allocation governing the calculation of claims and the distribution of the Settlement proceeds. As discussed below, the proposed Plan of Allocation was developed with the assistance of Lead Counsel's financial consultant and the claims administrator and provides for the distribution of the Net Settlement Fund to Settlement Class members who submit Proof of Claim forms that are approved for payment based on a function of (i) when a Settlement Class

Member purchased the Company's ADSs, and (ii) the daily per share amount of artificial inflation in the price of the Company's ADSs.

10.     With respect to the Fee and Expense Application, as discussed in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs (the "Fee Brief"), the requested fee of 25% ($362,500) of the Settlement Fund is fair and reasonable. This fee request is on par with fee percentages frequently awarded in this type of action and, under the facts of this case, is justified in light of the benefits that Lead Counsel conferred on the Settlement Class, the risks it undertook, the quality of the representation, the nature and extent of the legal services provided, and the fact that Lead Counsel pursued the case at its sole financial risk. Lead Counsel also seeks $25,412.06 in litigation expenses incurred in connection with its work, as well as a $1,000 award to each of the Lead Plaintiffs in recognition of his significant assistance in prosecuting the Action.

## History of the Action

11.     On January 9, 2019, Jiajia Luo filed a securities class action lawsuit Sogou, Inc., Sohu, Inc., Tencent Holdings Limited, Xiaochuan Wang, Charles (Chaoyang) Zhang, Yuxin Rne, Joanna (Yangeng) Lu, Bin Gao, Joseph Chen, Janis Lee and James (Xiufeng) Deng, on behalf of himself and all persons or entities who purchased or otherwise acquired Sogou ADSs pursuant and/or traceable to Sogou's alleged false and misleading Registration Statement and Prospectus issued in connection with Sogou's November 9, 2017 Initial Public Offering ("IPO"). The Action alleged violations of 15 U.S.C. §§ 77k and 77o ("Section 11" and "Section 15," respectively) of the Securities Act of 1933 ("Securities Act"). (Dkt. No. 1).

12.    On January 9, 2019, pursuant to the Private Securities Litigation Reform Act of 1995, counsel for plaintiff Luo published notice on *Globe Newswire* informing other potential class members of their right to move for appointment as lead plaintiff for the putative Class.

13.    On April 2, 2019, the Court appointed Lizhen Zhang, Juean Xu, Yuehua Ding, Maggie Xu, Mark S. Frater, and Ketan Patel as Lead Plaintiffs and Levi & Korsinsky, LLP ("LK") and Rosen as Co-Lead Counsel (Dkt. No. 20).

14.    From April 2, 2019 to August 8, 2019, Lead Plaintiffs, through counsel, diligently investigated the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included analyzing, among other things: (i) documents the Company filed publicly with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; (v) applicable Chinese laws and regulations; and (vi) the applicable law governing the claims and potential defenses. In addition, Lead Counsel consulted with certain experts regarding issues of market efficiency and damages suffered by Lead Plaintiffs and the Class resulting from the claims in the Action.

15.    On August 8, 2019, based on an extensive investigation, Lead Plaintiffs filed a 44-page Amended Complaint alleging claims pursuant to §§ 11 and 15 of the Securities Act, against Sogou Inc.com, Sohu, Inc, Tencent Holdings Limited, Xiaochuan Wang, Charles (Chaoyang) Zhang, Yuxin Rne, Joanna (Yangeng) Lu, Bin Gao, Joseph Chen, Janis Lee and James (Xiufeng) Deng, Chi Ping Martin Lau, Donald Puglisi, J.P. Morgan Securities LLC, Credit Suisse (USA) LLC, Goldman Sachs (Asia) L.L.C., China International Capital Corporation Hong Kong Securities LTD, and China Renaissance Securities (Hong Kong), LTD (collectively, the

5

"Defendants"). (Dkt. No. 37).

16.    On September 12, 2019, Lead Plaintiffs filed their Second Amended Complaint against the Defendants to change the name of Sogou Inc.com to Sogou Inc. and Sohu, Inc. to Sohu.com Inc. (Dkt. No. 45 or "SAC").

17.    On September 17, 2019, Defendants moved to dismiss the Second Amended Complaint. (Dkt. Nos. 48-54)

18.    On October 22, 2019, Lead Plaintiffs filed their Third Amended Complaint (Dkt. No. 60 or "TAC").

19.    On November 26, 2019, Defendants filed three Motion to Dismiss the Third Amended Complaint (Dkt. Nos. 65-71), which was fully briefed by the parties. (*see* Dkt. Nos. 66, 69, 71, 74-77).

20.    On June 8, 2020, this Court granted Defendants' Motions to Dismiss (the "Order"), with prejudice. (Dkt. No. 85).

21.    Lead Plaintiff filed a timely notice of appeal on July 9, 2020. (Dkt. No. 89).

## The Settlement

22.    During the period following this Court's motion to dismiss Order and while Lead Plaintiffs' appeal was pending, the Parties participated in vigorous arm's-length negotiations concerning whether an early-stage resolution was possible considering the risks perceived by both sides. Lead Counsel and Defendants' Counsel discussed the procedural posture of the Action, forthcoming pleadings, and the Parties' initial positions concerning the merits and strength of Lead Plaintiffs' allegations and potential defenses. During the weeks that followed, counsel for the Parties continued to undertake meaningful discussions of their views of the merits, strength, and risks concerning this Action.

23.     On November 13, 2020, the Parties agreed to settle all claims in the Action for $1.45 million as set forth in the Stipulation, which sets forth the final terms and conditions of the Settlement, includes, among other things, a release of all claims asserted against Defendants in this Action and a related state court case pending in San Mateo County, California[1] in return for a cash payment by Defendants in the amount of $1.45 million into a Settlement Fund for the benefit of the Settlement Class.

24.     In light of the significant risks of proceeding with further litigation, including the risks that Defendants would be successful on appeal, the continuing uncertainty of securities litigation, and establishing liability, Lead Plaintiffs and Lead Counsel determined that the proposed Settlement represents the best possible result for the Settlement Class. Accordingly, Lead Plaintiffs moved for preliminary approval of the contemplated Settlement on November 16, 2020 (ECF 93 – 95) and the Court subsequently issued its Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date For Hearing on Final Approval of Settlement on March 25, 2021 (Dkt. No. 102, the "Preliminary Approval Order").

## Risks of Continued Litigation

25.     Based on their experience and close knowledge of the facts of the case and law governing the claims, Lead Counsel determined that settlement at this juncture is in the best interests of the Settlement Class. As described herein, at the time the Settlement was reached, there were sizable risks facing Lead Plaintiffs with respect to establishing liability on appeal to the Second Circuit. Further, there were significant concerns relating to the complexity of the debate inherent in a securities action, rendering explanation to a potential jury difficult. There

---

[1] The *Khayan vs Sogou Inc.*, Docket No. 18CIV06699 (Cal. Super. Ct. Dec 14, 2018) (the "California Litigation").

**A.      Risks Related to Liability**

26.      Lead Plaintiffs anticipated that on appeal in the Second Circuit, and during continued litigation, Defendants would have likely argued that Lead Plaintiffs failed to allege an actionable misstatement because: (a) the Chinese authorities never found that Sogou's procedures prior to the IPO were in breach of any statute or law or deficient; (b) the advertisements at issue involved violation of a law that was not in existence at the time of the IPO; (c) Sogou did not state that all of its smart hardware had AI capabilities; (d) the Prospectus provided adequate risk warnings; and (e) there was no duty to disclose under Item 303 of Regulation S-K.

27.      If reversed, Defendants would likely have asserted defenses that Lead Plaintiffs would have had to successfully refute. For example, Defendants would have argued that they performed substantial due diligence and thus were not liable for any statements that turned out not to be true. Defendants would have likely also asserted a negative causation defense that Lead Plaintiffs' losses were not caused by the alleged misstatements but, rather by Sogou's declining sales due to a newly enacted regulation well after the IPO that imposed increased restrictions on advertising. In addition, Defendants would likely have argued the size of the Class and damages were much smaller than what Plaintiffs alleged because many investors could not trace their purchases to the IPO and/or the relevant time period was shorter than what Lead Plaintiffs alleged.

28.      If Defendants were successful on any of these grounds, the case could have been dismissed outright or the claims ultimately presented to a jury could have been substantially narrowed. Lengthy appeals, even if Lead Plaintiffs were to have prevailed on their current appeal and through summary judgment and trial, could have ensued, with no certainty of any recovery for the Settlement Class.

**B.      Risks in Maintaining Class Certification**

29.      Although class certification had not yet been briefed in this case, and class certification is sought at this juncture for the purposes of settlement only, Defendants would undoubtedly have raised vigorous challenges to class certification, and such disputes could well devolve into yet another battle of the experts. Additionally, class certification can be reviewed and modified at any time by the Court before final judgment. Although Lead Counsel believes there are strong grounds for certifying a litigation class, discussed in the Memorandum of Law in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (Dkt. No. 94) at Point III.B.1.b.iv., the Settlement avoids any uncertainty with respect to class certification and risks of maintaining certification of the Settlement Class through trial and on appeal. Specifically, class certification faced the reliance and causation defenses discussed herein.

**Lead Plaintiffs' Compliance with Preliminary Approval Order
and Reaction of the Settlement Class to Date**

30.      Pursuant to the Preliminary Approval Order, the Court approved the appointment of Strategic Claims Services ("Strategic") as Claims Administrator in the Action and instructed Strategic to disseminate to potential class members copies of the Postcard Notice by first class mail or copies of the Long Form Notice and Claim form via email; to publish the Summary Notice on *GlobeNewswire* and *Investors' Business Daily*, national wire services; and to post the Stipulation, Notice, Postcard Notice and Proof of Claim form on the Claim Administrator's website.

31.      The Notice and Postcard Notice (respectively attached to the Stipulation as Exhibits 1 to Exhibit A and Exhibit 3 to Exhibit A to the Stipulation, thereto, *see* Dkt. No. 99-5, 99-7) provide potential Settlement Class members with information about the terms of the Settlement

and contains, among other things: (i) a description of the Action and the Settlement; (ii) the terms of the proposed Plan of Allocation for calculating claims; (iii) an explanation of Settlement Class members' right to participate in the Settlement; (iv) an explanation of Settlement Class members' rights to object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, or exclude themselves from the Settlement Class; and (v) the manner for submitting a Proof of Claim form in order to be eligible for a payment from the net proceeds of the Settlement. The Notice also informs Settlement Class members of Lead Counsel's intention to apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and for payment of litigation expenses in an amount not to exceed $30,000. The Notice also informs the Settlement Class that Lead Plaintiffs may each seek an award for their time and expenses incurred in representing the Class of $1,000 each.

32.    As set forth in the accompanying Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections (the "**Evans Decl.**"), Strategic has complied with its obligations pursuant to the Preliminary Approval Order by mailing the Postcard Notice to the Company's stockholders of record as well as persons identified by the Company's transfer agent as well as banks, brokerage firms and other third-party nominees as possible Settlement Class members. Evans Decl. ¶¶4-8. As set forth in the Evans Declaration, ¶¶6, 9, as of February 18, 2021, Strategic has mailed these materials to 13,477 potential Settlement Class members and published the Summary Notice via *GlobeNewswire* and *Investors' Business Daily*, national wire services. In addition, one of the Nominee Account Holders notified Strategic that it had emailed 8,826 of its customers to notify them of the proposed settlement. *Id.*, ¶7.

33.    Strategic also maintains and posts information regarding the Settlement on its

website, https://www.strategicclaims.net/luo-v-sogou-inc-et-al-securities-litigation/, to provide Settlement Class members with information concerning the Settlement, as well as downloadable copies of the Notice, Proof of Claim, the Stipulation, among other important documents. *Id.* ¶11.

34.     The Court is aware that a parallel proceeding exists in California Superior Court. On December 9, 2020, the plaintiffs in *In re Sogou Inc. Sec. Litig.*, Lead Case No. 18CIV06699 (Cal. Supr. Court, San Mateo Cty.) ("San Mateo plaintiffs") filed a letter with this Court, seeking denial of preliminary approval. (Dkt. No. 100). Plaintiffs responded to that letter on December 11, 2020 (Dkt. No. 103), asking the Court to reject the entreaty of the San Mateo plaintiffs and grant preliminary approval. To date the San Mateo plaintiffs have neither requested exclusion nor objected to the Settlement.

35.     Pursuant to ¶¶ 16-17 of the Preliminary Approval Order, the deadline for Settlement Class members to submit objections to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, or to request exclusion from the Settlement Class is March 4, 2021. As set forth in the Evans Declaration at ¶¶12-13, only one request for exclusion was received on February 17, 2020 from Jonathan Sato who asserts that he purchased 200 Sogou ADSs on November 9, 2017 and sold those ADSs on January 31, 2018. *See* Exhibit 7, attached hereto. Plaintiffs' Counsel are in the process of trying to contact Mr. Sato to confirm that he wishes to be excluded from the proposed settlement and will report back to the Court in Plaintiffs' Reply brief.

36.     To date, no objections to the Settlement, the Plan of Allocation, or the Fee and Expense Application have been received. Should any objections or requests for exclusion be received, Lead Counsel will address them in reply papers.

### The Plan of Allocation for Distribution of Settlement Payments

37.     Pursuant to ¶14(a) of the Preliminary Approval Order, and as set forth in the Notice,

all Settlement Class members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Claims form, including all required information, postmarked no later than March 20, 2021. As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, notice and administration costs, and all applicable taxes, the balance of the Settlement Fund (the "Net Settlement Fund") will be distributed according to the plan of allocation approved by the Court (the "Plan of Allocation").

38.    The proposed Plan of Allocation, which is set forth in full in the Notice (Exhibit 1 to Exhibit A of the Stipulation, ECF 99-5), was designed to achieve an equitable and rational distribution of the Net Settlement Fund. Lead Counsel developed the Plan of Allocation with the assistance of its financial consultant and the Claims Administrator and believes that the plan provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants.

39.    The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants based on a function of (i) when and at what price a Settlement Class member purchased or otherwise acquired Sogou ADSs, (ii) whether the Settlement Class member held his, her or its Sogou ADS through March 14, 2018, the date non-IPO shares entered the market and traceability ceased; and (iii) the per ADS amount of artificial inflation in the price of the Company's ADSs.

40.    The Claims Administrator will determine each eligible claimant's pro rata share of the Net Settlement Fund (i.e., the "Recognized Claim") based upon each claimant's total "Recognized Loss Amount" compared to the aggregate Recognized Claims of all eligible claimants. Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions

will be made to eligible claimants in the form of checks. After an initial distribution of the Net Settlement Fund, if there is any balance remaining, and if feasible and economical, it will be redistributed among eligible claimants who have cashed their checks. *See* Stipulation ¶66 and Notice at ¶51. Any balance that still remains in the Net Settlement Fund after any reallocation, or if a reallocation is not undertaken, feasible, or economical, will be contributed to a non-sectarian, §50l(c)(3) non-profit charitable organization. *Id.*

41. There have been no objections to the Plan of Allocation to date. Evans Decl. ¶13.

42. In sum, the proposed Plan of Allocation, developed in consultation with Lead Counsel's financial consultant and the Claims Administrator, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Lead Counsel respectfully submits that the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved.

### Lead Counsel's Application for Attorneys' Fees and Expenses

43. Consistent with the Notice to the Settlement Class, Lead Counsel, on behalf of itself, seeks a fee award of 25% of the Settlement Fund, or $362,500. No other attorneys will share the awarded attorneys' fees. Lead Counsel also requests payment of litigation expenses in connection with the prosecution of the Action from the Settlement Fund in the amount of $25,412.06. Lead Counsel submits that, for the reasons discussed below and in the accompanying Brief, such awards would be reasonable and appropriate under the circumstances before the Court.

**A.    Lead Plaintiffs Support the Fee and Expense Application**

44. As set forth in the accompanying Declarations of the Lead Plaintiffs, Lead Plaintiffs has evaluated and fully supports the fee and expense application. In coming to this conclusion, Lead Plaintiffs – who was involved throughout the prosecution of the Action and negotiation of the Settlement – considered the recovery obtained as well as Lead Counsel's efficient prosecution

13

of the claims to obtain a favorable recovery. Exhibits. 1-6.

**B.      The Time and Labor of Lead Counsel**

45.      The investigation, prosecution, and settlement of the claims asserted in the Action required diligent efforts on the part of Lead Counsel. The many tasks undertaken by Lead Counsel in this case are detailed above.

46.      Among other efforts, Lead Counsel conducted a comprehensive investigation in connection with the preparation of the operative Amended Complaint and engaged in a vigorous settlement process with experienced defense counsel. At all times throughout the pendency of the Action, Lead Counsel's efforts were driven and focused on advancing the litigation to bring about the most successful outcome for the Settlement Class, whether through settlement or trial.

47.      The following table summarizes Lead Counsel's time records. The table reports the amount of time spent by Lead Plaintiffs' attorneys and professional support staff and the "lodestar" calculations, *i.e.*, their hours multiplied by their current hourly rates. These figures were prepared from daily time records regularly prepared and maintained by Lead Counsel, which are available at the request of the Court, and reflect time from inception of this action through and including briefing the motion for preliminary approval, and <u>excluding</u> time spent on the motion for final approval, the fee application, responding to any objections, preparing for and appearing at the final Settlement Fairness Hearing, and other miscellaneous tasks subsequent to the briefing of the motion for preliminary approval:

| Law Firm Name | Hours | Lodestar |
|---|---|---|
| The Rosen Law Firm P.A. | 319.40 | $285,533 |
| Levi & Korsinsky, LLP | 554.90 | $383,700 |
| Pomerantz LLP | 174.58 | $113,428 |
| **TOTAL** | **1,048.88** | **$782,661** |

14

48.     The hourly rates of Lead Counsel here range from $770.00 to $1,100.00 for partners, $400.00 to $700.00 for associates, and $110.00 to $375.00 for law clerks and professional staff. I respectfully submit that the hourly rates for attorneys and professional support staff included in this table are reasonable and customary within the securities class action bar.

49.     Lead Counsel and Additional Counsel, collectively, have expended over 1,000 hours prosecuting the Action resulting in collective lodestar of $782,661. The requested fee of 25% of the Settlement Fund ($362,500) results in a negative .46 multiplier.

## C.     The Standing and Expertise of Lead Counsel

50.     The experience and expertise of Rosen, Levi & Korsinsky and Pomerantz's attorneys is described in their firm resumes attached as Exhibits 8-10 hereto. As set forth therein, the firm has served as lead counsel in a number of high-profile matters and is highly experienced and skilled in securities litigation.

## D.     Standing and Caliber of Opposing Counsel

51.     The quality of the work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel. Here, Defendants were represented by Goulston & Storrs PC, and Morgan, Lewis & Bockius LLP. These firms are highly skilled and experienced securities attorneys with significant resources. In the face of this knowledgeable and formidable defense, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that are favorable to the Settlement Class.

## E.     The Contingency Risk Faced by Lead Counsel

52.     From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead

Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable costs that a case such as this requires. With an average time of several years for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Lead Counsel and Additional Counsel received no compensation during the course of the Action but incurred more than 1,000 hours of time for a total lodestar of $782,661 and incurred $25,412.06 in out-of-pocket expenses in prosecuting the Action for the benefit of the Settlement Class.

53.    Lead Counsel knows from experience that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to convince sophisticated defendants to engage in serious settlement negotiations at meaningful levels. Lead Counsel is aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel.

54.    For example, in a theoretical motion to dismiss, federal circuit court cases include numerous opinions affirming dismissals with prejudice in securities cases. The many appellate decisions affirming summary judgments dismissals show that even surviving a motion to dismiss is not a guarantee of recovery. Successfully opposing a motion for summary judgment is also not a guarantee that plaintiffs will prevail at trial. While only a few securities class actions have been tried before a jury, several have been lost in their entirety. Even plaintiffs who succeed at trial may find their verdict overturned by a post-trial motion for a directed verdict or on appeal. And the path

to maintaining a favorable jury verdict can be arduous and time consuming.

55.    As discussed in greater detail above, Lead Plaintiffs' success was by no means assured. Defendants would have disputed whether Lead Plaintiffs could establish falsity, damages, and causation. In addition, Defendants would no doubt have contended, as the case proceeded to summary judgment, that even if liability existed, the amount of damages was substantially lower than Lead Plaintiffs alleged due to issues of traceability and negative causation. Were this Settlement not achieved, Lead Plaintiffs and Lead Counsel, in the unlikely event they were successful on appeal, still faced potentially years of costly and risky trial and appellate litigation against Defendants, with ultimate success far from certain and the significant prospect of no recovery. Further, prolonged litigation would likely quickly result in the wasting of insurance coverage for the claims.

## F.    Request for Litigation Expenses

56.    Lead Counsel seeks payment from the Settlement Fund of litigation expenses reasonably and necessarily incurred in connection with commencing and prosecuting the claims against Defendants.

57.    From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses, and, at the very least, would not recover anything until the Action was successfully resolved. Thus, Lead Counsel was motivated to take steps to manage expenses without jeopardizing the vigorous and efficient prosecution of the case.

58.     The following summary table reflects the collective litigation expenses incurred by Lead Counsel and Additional Counsel totaling $25,412.06. Further detail of each firm's expenses can be obtained from the accompany affidavits from each firm, attached hereto as Exhibits 11-13:

| Category | Total Amount |
|---|---|
| The Rosen Law Firm, P.A. | $8,492.79 |
| Levi & Korsinsky, LLP | $10,132.76 |
| Pomerantz LLP | $6,786.51 |
| **TOTAL:** | **$25,412.06** |

59.     Of the total amount of expenses, $9,650.00, or approximately 38% was expended on investigative services, $11,336.21, or 45% was spent on press releases and class notice, $1,685.00 or 7% was expended on financial experts, $937.15, or 4% was spent on filing and service fees and $1,803.70, or 7% was spent on other expenses. The other expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in securities class action litigation, principally photocopying, electronic research and translation fees.

**G.     The Reaction of the Settlement Class to the Fee and Expense Application**

60.     As mentioned above, consistent with the Preliminary Approval Order, a total of 13,477 Notices have been mailed to potential Settlement Class members, in addition to the publication of the Notice on the Claim Administrator's website. Evans Decl. ¶¶6, 9. Consistent with the Preliminary Approval Order, the Postcard Notice has been published on a national news wire. *Id.* ¶9. These materials inform potential Settlement Class members that Lead Counsel would seek an award of attorneys' fees not to exceed 25% of the Settlement Fund, and payment of expenses in an amount of approximately $30,000, and that Lead Plaintiffs may seek an award for

his time and expenses incurred in representing the Class (*i.e.,* an award).[2] While the deadline set by the Court for Settlement Class members to object to the requested fees and expenses has not yet passed, to date no objections have been received, and only one class member has opted out. *Id.* ¶¶12-13. Lead Counsel is attempting to contact Mr. Sato to confirm he intends to opt out of the proposed settlement and will report back to the Court in Plaintiffs' reply papers.

### Conclusion

61.    In view of the favorable recovery for the Settlement Class and the substantial risks of this litigation, as described above and in the accompanying memorandum of law, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should likewise be approved as fair, reasonable, and adequate. In view of the recovery in the face of substantial risks, the quality of work performed, the contingent nature of the fee, and the standing and experience of Lead Counsel, as described above and in the accompanying memorandum of law, Lead Counsel respectfully submit that a fee in the amount of 25% of the Settlement Fund, or $362,500, should be awarded and that litigation expenses in the amount of $25,412.06 be reimbursed in full. In light of Lead Plaintiffs' significant assistance in the prosecution of this Action, I respectfully submit that a $1,000 award to each of the Lead Plaintiffs' should be approved.

62.    Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Co-Lead Plaintiff Lizhen Zhang in Support of Final Approval of class Action Settlement.

63.    Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Co-Lead Plaintiff Juean Xu in Support of Final Approval of class Action Settlement.

---

[2] Lead Counsel's motion for approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and expenses will also be posted on the Settlement website.

64.     Attached hereto as Exhibit 3 is a true and correct copy of the Declaration of Co-Lead Plaintiff Yuehua Ding in Support of Final Approval of class Action Settlement.

65.     Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Co-Lead Plaintiff Maggie Xu in Support of Final Approval of class Action Settlement.

66.     Attached hereto as Exhibit 5 is a true and correct copy of the Declaration of Co-Lead Plaintiff Mark S. Frater in Support of Final Approval of class Action Settlement.

67.     Attached hereto as Exhibit 6 is a true and correct copy of the Declaration of Co-Lead Plaintiff Ketan Patel in Support of Final Approval of class Action Settlement.

68.     Attached hereto as Exhibit 7 is a true and correct copy of the request for exclusion received from Jonathan Sato.

69.     Attached hereto as Exhibit 8 is a true and correct copy of the firm resume of Levi & Korsinsky, LLP.

70.     Attached hereto as Exhibit 9 is a true and correct copy of the firm resume of The Rosen Law Firm, P.A.

71.     Attached hereto as Exhibit 10 is a true and correct copy of the firm resume of Pomerantz LLP.

72.     Attached hereto as Exhibit 11 is a true and correct copy of the Declaration of Shannon L. Hopkins on Behalf of Levi & Korsinsky, LLP in Support of Application for an Award of Attorneys' Fees and Expenses.

73.     Attached hereto as Exhibit 12 is a true and correct copy of the Declaration of Jacob A. Goldberg on Behalf of The Rosen Law Firm, P.A. in Support of Application for an Award of Attorneys' Fees and Expenses.

74.     Attached hereto as Exhibit 13 is a true and correct copy of the Declaration of Cara

David on Behalf of Pomerantz LLP in Support of Application for an Award of Attorneys' Fees and Expenses.

I declare under penalty of perjury that the foregoing is true and correct.

Executed February 18, 2021, at Jenkintown PA.

/s/ *Jacob A. Goldberg*
Jacob A. Goldberg