**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIAJIA LUO, *et. al.*, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>SOGOU INC, SOHU.COM, INC., TENCENT HOLDINGS LIMITED, XIAOCHUAN WANG, CHARLES (CHAOYANG) ZHANG, YUXIN REN, JOANNA (YANFENG) LU, BIN GAO, JOSEPH CHEN, JANICE LEE, JAMES (XIUFENG) DENG, CHI PING MARTIN LAU, DONALD J. PUGLISI, J. P. MORGAN SECURITIES LLC, CREDIT SUISSE (USA) LLC, GOLDMAN SACHS (ASIA) L.L.C., and CHINA INTERNATIONAL CAPITAL CORPORATION HONG KONG SECURITIES LTD.,<br><br>          Defendants. | Case No. 1:19-cv-00230-LJL<br><br>CLASS ACTION<br><br>Judge:    Hon. Lewis J. Liman |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR DISTRIBUTION OF THE NET SETTLEMENT FUND**

Court-appointed Lead Plaintiffs Lizhen Zhang, Juean Xu, Yuehua Ding, Maggie Xu, Mark S. Frater, and Ketan Patel (collectively "Lead Plaintiffs"), on behalf of themselves and the Settlement Class,[1] respectfully move for entry of an order granting Lead Plaintiffs' Unopposed Motion for Distribution of Net Settlement Fund ("Distribution Order"), to distribute the proceeds of the approved Settlement in the above-captioned action (the "Action").    The proposed Distribution Plan is set forth in the Declaration of Sarah Evans Concerning the Results of the Claims Administration Process ("Evans Declaration"), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("SCS"), and filed herewith.

If entered by the Court, the Distribution Order would, among other things: (i) approve SCS's administrative recommendations accepting and rejecting Claims submitted in the Action; and (ii) direct the initial distribution of the Net Settlement Fund to Authorized Claimants whose Claims are accepted by SCS as valid and approved by the Court.

## I.    INTRODUCTION

On December 10, 2020, this Court granted preliminary approval of the Settlement (the "Preliminary Approval Order") (ECF No. 102).  On May 21, 2021, this Court entered an Order granting: (1) final approval of the proposed Settlement; (2) final approval of the proposed Plan of Allocation for the distribution of the proceeds of the Settlement to eligible claimants; (3) certification of the Settlement Class for settlement purposes; and (4) an award of $1,000 for each lead plaintiff (see May 21, 2021 Minute Entry, reflected in May 22, 2021 Order) (the "May 22 Order") (ECF No. 124), and on June 28, 2021, this Court entered the Final Order and Judgment

---

[1] Capitalized terms which are not defined in this memorandum have the same meaning as in the Stipulation and Agreement of Settlement, dated and filed on December 8, 2020 (Dkt. No. 99-1, the "Stipulation"), or in the accompanying Evans Declaration (defined below).

(the "Final Judgment") (ECF No. 127), granting, *nunc pro tunc*, final approval of the Settlement, and clarifying certain aspects of the May 22 Order.

The Court-appointed Claims Administrator, SCS, has completed all analyses and accounting procedures in connection with the proofs of claim submitted by those persons who responded to the Notice, and has determined which of those persons are Authorized Claimants. *See* Evans Declaration, ¶¶8-9.  All that remains to complete the Settlement process is to pay the administration costs incurred in administering the Settlement and the initial distribution of the Net Settlement Fund, and to distribute the Net Settlement Fund to the Authorized Claimants.  *See* Stipulation at ¶¶9, 49, 62.  Lead Plaintiffs request that the Court authorize payment to SCS of $4,943.73 in additional administration costs incurred in administering the Settlement and the initial distribution of the Net Settlement Fund, and also authorize the distribution of the Net Settlement Fund no later than 30 days from the date of an order for distribution.

Accordingly, this Motion seeks an Order: (i) approving the administrative determinations of SCS, as set forth in the Evans Declaration, in accepting or rejecting submitted claims; (ii) directing payment of SCS's administrative costs and fees incurred (including for distribution services yet to be incurred) in connection with the services performed, and to be performed, by SCS in reviewing claims and distributing the Settlement Fund; (iii) directing distribution of the Net Settlement Fund to Settlement Class Members whose Proofs of Claim have been received by SCS no later than June 30, 2021; (iv) authorizing, if feasible and economically practicable, (a) the redistribution (as part of a second distribution) of any remaining funds in the Net Settlement Fund (due to, *e.g.*, uncashed checks) six months after the date of the initial distribution to Authorized Claimants who have cashed their checks and who would receive at least $10.00 from such redistribution, or (b) if there is any remaining balance that is not feasible and economically

practicable to redistribute, the contribution of any such balance to The Lawyers' Committee for Civil Rights Under Law, as provided in the Stipulation, ¶66 (incorporated by the Court in its Final Judgment, ¶1) (ECF No. 127) (or other non-profit that the Court, in its discretion, approves under the *cy pres* doctrine); (v) barring any further claims against the Settlement Fund and releasing and discharging all persons involved in the administration of the Settlement from any and all claims arising out of such involvement; and (vi) authorizing destruction of paper copies of Proof of Claim forms one year after distribution of the Net Settlement Fund, and destruction of electronic copies of claim records three years after distribution of the Net Settlement Fund.

## II.   THE COURT SHOULD APPROVE THE CLAIMS ADMINISTRATOR'S DETERMINATIONS

Pursuant to the Stipulation, and as set forth in the Notice, disseminated in connection with the Settlement, all Settlement Class Members wishing to participate in the Net Settlement Fund were required to submit valid and timely Proof of Claim forms by March 20, 2021; and pursuant to the Court's March 23, 2021 Order (ECF No.119), certain potential Settlement Class Members whose contact information was provided late by their brokerage intermediary to SCS were sent Postcard Notices stating they would have until April 30, 2021 to file their claims. Evans Declaration ¶ 5.

To date, after implementing the Court-approved notice program and diligent follow-up, SCS has received and reviewed a total of 2,568 claims. *See* Evans Declaration at ¶ 8. If a claim was deficient in any regard, SCS notified the claimant of the deficiency and advised the claimant as to possible ways to cure it (if a cure was possible). *Id.* at ¶ 9a.-b. The claims administration process (other than distribution of actual checks) is now complete, and SCS has determined that:

(a) 1,520 claims should be accepted,[2] and (b) 1,048 claims should be rejected as deficient, a duplicate, or as involving no recognized loss under the Plan of Allocation. *Id*. at ¶ 9b., c. No claim was rejected by SCS solely because it was received slightly after the claim submission deadline, and no delay has resulted from the acceptance of slightly late claims which were considered and accepted. *Id*. at ¶¶8-9 & nn.3-4. The Court has discretion to accept Claims received after the filing deadline. *See In re Authentidate Holding Corp. Sec. Litig.*, 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013) ("[A] district court overseeing [a] settlement distribution has inherent power to accept late claims[.]"); *Middlesex Ret. Sys. v. Quest Software, Inc.*, 2012 WL 12973223, at *3 (C.D. Cal. June 25, 2012) (permitting certain late claims to share in the Net Settlement Fund); *In re Gilat Satellite Networks, Ltd.*, 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) (same). Lead Plaintiffs and SCS believe that, when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted slightly after the cut-off date, but while claims were still being processed. *See In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) ("[T]here is an implicit recognition that late claims should ordinarily be considered in the administration of a settlement."). Accordingly, it is respectfully requested that this Court approve SCS's administrative determination not to reject claims submitted after the deadline solely because of lateness.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted, so that a proportional distribution of the Net Settlement Fund can be made. Acceptance of any claims received after June 30, 2021, or any responses to deficiency and/or rejection notices received after October 20, 2021, would

---

[2] Of these 1,520 claims, 47 were received slightly late but were otherwise valid, and 59 were initially deemed deficient but were subsequently successfully cured and deemed valid. ¶9a.-b. & n.4; *see also infra*.

require a delay in the distribution. Lead Plaintiffs therefore request that this Court enter an Order directing that no claim received after June 30, 2021, or any responses to deficiency and/or rejection notices received after October 20, 2021, be accepted for any reason whatsoever. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig*., 246 F.3d 315, 329 (3d Cir. 2001) (same). For the reasons set forth above and in the Evans Declaration, Lead Plaintiffs request that the Court approve SCS's administrative determinations accepting and rejecting claims.[3]

## III.    THE COURT SHOULD AUTHORIZE THE DISTRBUTION OF THE SETTLEMENT FUND TO APPROVED CLAIMANTS

Lead Plaintiffs also request that the Court authorize distribution of the Net Settlement Fund to Settlement Class Members whose claims have been accepted as set forth in the accompanying Evans Declaration and discussed above. Lead Plaintiffs further respectfully request that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein or otherwise involved in the administration of the Settlement Fund or the Net Settlement Fund, and including Lead Counsel and SCS (collectively, "Released Persons"), be released and discharged from any and all claims arising out of such involvement, and that each Class.

### A.    Deficient and Ineligible Claims

Pursuant to the Preliminary Approval Order, all claims were to be submitted to the Claims Administrator postmarked no later than March 20, 2021. *See* Preliminary Approval Order (ECF

---

[3] A list of the Proofs of Claim submitted and their ultimate disposition is contained in the Exhibits to the Evans Declaration.

No. 102) at ¶¶ 5, 14(a). The Claims Administrator has finalized its determination of which claims are authorized and which are ineligible. *See* Evans Declaration at ¶ 9.

SCS initially identified 173 inadequately documented claims. *See* Evans Declaration at ¶ 9b. When claims were inadequately documented, SCS sent claimants deficiency notices advising them of the deficiency, and they were given the opportunity to cure the deficiency. *Id.* Of the 173 claims initially identified as deficient, 59 have been successfully rectified and are now considered valid. *Id.* Each of the remaining 114 deficient claimants either did not respond to the deficiency notice, or responded with insufficient documentation. *Id.* These claimants were sent a rejection notice explaining the reason(s) for their rejection. *Id.* To date, none of these 114 rejected claimants has objected to or contested SCS's determination. *Id.; see also* Ex. D to Evans Declaration (listing the 114 uncured claims receiving deficiency notices).

In addition, SCS identified 934 claims which it has recommended for complete rejection for various reasons. *See* Evans Declaration at ¶ 9c. SCS has communicated with these 934 claimants and advised them of this determination. To date, none of these ineligible claimants has contested their determination. *Id.; see also* Ex. E to Evans Declaration (listing the 934 ineligible claims and the reason for rejection).

Lead Plaintiffs thus request that this Court approve the Claims Administrator's administrative determinations and reject the uncured deficient and ineligible claims set forth in Exhibits D and E of the Evans Declaration.

**B.    Properly Documented Claims**

The Court-approved Plan of Allocation, which was included in the Notice, is the method the Claims Administrator used to guide the acceptance, rejection and calculation of potential claims. *See* Evans Declaration at ¶¶ 9, 11. Based on this criteria, SCS identified 1,520 properly

document valid claims. *Id*.  These claims represent total Recognized Losses of $53,341,506.83. *Id*.  As noted above, SCS and Lead Counsel accepted late but otherwise valid claims postmarked after March 20, 2021 but before and including June 30, 2021, because the untimely filed claims have not caused significant delay of the distribution of the Net Settlement Fund to the Settlement Class, or otherwise prejudiced any Authorized Claimant.  *Id*. at ¶¶8-9 & nn.3-6.  *See In re Authentidate Holding Corp. Sec. Litig.*, 2013 WL 324153, at *1 (district court overseeing settlement distribution "has inherent power to accept late claims[.]"); *see also In re "Agent Orange" Product Liability Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *In re Crazy Eddie Securities Litigation*, 906 F. Supp. at 845 (court allowed late claims postmarked within one month and four days of original deadline to participate in the distribution of settlement funds).

Lead Plaintiffs thus respectfully request that the Court approve the 1,520 properly documented claims as listed in Exhibits B-1 and B-2 of the Evans Declaration.

**IV.    THE COURT SHOULD AUTHORIZE THE DISTRBUTION AND/OR DISPOSITION OF ANY UNCLAIMED OR UNCASHED PORTIONS OF THE SETTLEMENT FUND AS PROVIDED FOR IN THE STIPULATION**

Some payments to be distributed to Settlement Class Members may not be cashed promptly.  To encourage Settlement Class Members to promptly cash their distribution checks, and to avoid or reduce future expense relating to unpaid distributions, Lead Plaintiffs and SCS propose that all distribution checks bear the notation "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION 180 DAYS AFTER ISSUE DATE." Evans Declaration, ¶11c.

Invariably, however, some Settlement Class Members will still not cash their checks, leading to a residual balance in the Net Settlement Fund.  The Court-approved Stipulation provides that if any balance remains in the Settlement Fund at least six months after the date of distribution of the Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), (i) any such balance shall be reallocated among Authorized Claimants in an equitable fashion, if logistically feasible and economically justifiable, and (ii) after any such reallocation, any remaining balance be donated to The Lawyers' Committee for Civil Rights Under Law (a non-sectarian, non-partisan 501(c)(3) nonprofit organization), as provided in the Stipulation, ¶66.[4]   The accompanying Distribution Order confirms the appropriateness of, and authorizes the implementation of, this method for distributing any residual amounts that may be left after the initial distribution to Settlement Class Members.

## V.    THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED RECORDS RETENTION AND DESTRUCTION PLAN, AND THE CLAIMS ADMINISTRATOR'S PROPOSED ADMINISTRATIVE COSTS

The Final Judgment provides that "this Court hereby retains continuing jurisdiction over: (i) implementation of the Settlement; (ii) the allowance, disallowance or adjustment of any Settlement Class Member's claim on equitable grounds and any award or distribution of the Settlement Fund; (iii) disposition of the Settlement Fund; (iv) all Parties for the purpose of construing, enforcing and administering the Settlement and the Judgment as clarified herein; and (v) other matters related or ancillary to the foregoing." Final Judgment at ¶ 15.

The Stipulation contemplates that the Distribution Order, *inter alia*, "approv[e] the Claims

---

[4] As noted above, the Stipulation also provides that said remaining balance may be contributed to another non-profit that the Court, in its discretion, approves under the *cy pres* doctrine.  Stipulation, ¶66.

Administrator's determinations concerning the acceptance and rejection of the claims submitted and approving any fees and expenses not previously paid, including the fees and expenses of the Claims Administrator, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants" (Stipulation, ¶9), and defines the "Net Settlement Fund" as "the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses; (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other fees or expenses approved by the Court." (*id.*, ¶ 18).   Thus, distribution of the Net Settlement Fund to Authorized Claimants can only occur once "Notice and Administration Expenses" have been paid." *See id.*

The Preliminary Approval Order provided that Lead Counsel may authorize the Escrow Agent to pay the Claims Administrator reasonable fees and costs of notice and administration not to exceed $100,0000 without need for further approval; and "[f]or all administration expenses in excess of $100,000, Plaintiffs shall apply to the Court for approval."  Preliminary Approval Order (ECF No. 102), ¶22. Since preliminary approval, the Court has approved an additional $4,800 in expenses. Since the final approval hearing, SCS has incurred $4,943.74 in additional fees and expenses for services rendered to the Settlement Class. Evans Declaration, ¶12. Therefore, Lead Plaintiffs request that the Court authorize the additional payment of $4,943.73 from the Settlement Fund to cover the costs of administering the Settlement, bringing total costs of administration to $109,743.73.

Additionally, and in connection to the Claims Administrator's record-keeping, Lead Plaintiffs request that the Court authorize the Claims Administrator's destruction of paper copies of Proof of Claim forms one year after distribution of the Net Settlement Fund, and destruction of electronic copies of claim records three years after distribution of the Net Settlement Fund. This time frame is more than adequate to resolve the pending claims in this Action and Settlement.

9

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their

unopposed Motion, and that it enter the Distribution Order submitted herewith.

Dated: New York, New York
           October 27, 2021                          **LEVI & KORSINSKY, LLP**

                                                       */s/ Shannon L. Hopkins*
                                                     Shannon L. Hopkins
                                                     1111 Summer Street, Suite 403
                                                     Stamford, CT 06905
                                                     Tel: (203) 992-4523
                                                     Fax: (212) 363-7171
                                                     Email: shopkins@zlk.com

                                                     and

                                                     Donald J. Enright
                                                     1101 30th Street NW, Suite 115
                                                     Washington, D.C. 20007
                                                     Tel: (202) 524-4290
                                                     Fax: (202) 333-2121
                                                     Email: denright@zlk.com

                                                     **THE ROSEN LAW FIRM, P.A.**

                                                     */s/ Jacob A. Goldberg*
                                                     Jacob A. Goldberg
                                                     101 Greenwood Avenue, Suite 440
                                                     Jenkintown, PA 19046
                                                     Tel: (215) 686-2817
                                                     Fax: (212) 202-3827
                                                     Email: jgoldberg@rosenlegal.com

                                                     and

                                                     Phillip Kim
                                                     Laurence M. Rosen
                                                     275 Madison Avenue, 34th Floor
                                                     New York, New York, 10016
                                                     Tel: (212) 686-1060
                                                     Fax: (212) 202-3827
                                                     Email: pkim@rosenlegal.com
                                                               lrosen@rosenlegal.com

10

*Co-Lead Counsel for Lead Plaintiffs
and the Settlement Class*

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Cara David
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        cdavid@pomlaw.com

*Additional Counsel for Lead Plaintiffs*